**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

KAYLA M. BRADY, et al.    *

           *  Civil Case No.: 8:21-cv-01412-CBD

   Plaintiffs,    *

           *

   v.       *

           *

WALMART INC., et al.    *

           *

   Defendants.   *

**DEFENDANTS' AMENDED ANSWER AND DEFENSES TO
PLAINTIFFS' COMPLAINT AND REQUEST FOR JURY TRIAL**

   Defendants Walmart Inc. and Wal-Mart Stores East, L.P. (collectively, "Walmart"), by counsel, for their Amended Answer and Defenses to Plaintiffs Kayla M. Brady, individually and as the personal representative of the Estate of Jacob C. Mace, C.C., by and through his mother and next friend Nicole Clark, G.M., by and through his mother and next friend Kayla Brady, Debra McCreary, and Mark Mace's (collectively, "Plaintiffs") Complaint and Request for Jury Trial ("Complaint"), state as follows:

**INTRODUCTION**

   1.  This case is about Defendants WALMART INC.'s and WAL-MART STORES EAST, LP'S (together, "WALMART") decision on November 15, 2019, to place profit over human life by negligently and/or unlawfully selling a Hatfield shotgun (the "Shotgun"), to Plaintiffs' decedent, JACOB MACE (a WALMART employee), despite WALMART's knowledge of his mental illness, suicidal ideation, state of intoxication, and one or more prior suicide attempts.

   **ANSWER:**  Walmart avers that Plaintiffs have represented their allegations in paragraph 1. Walmart denies any other allegations in paragraph 1. Walmart also denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

2.      JACOB MACE foreseeably used the Shotgun a few hours later to take his own life.

**ANSWER:**   Walmart denies the allegations in paragraph 2.

3.      WALMART, when it chose to become a Federal Firearms Licensee ("FFL") engaged in the business of selling firearms, voluntarily assumed a duty to not only comply with all relevant federal and state firearms laws, but also to exercise the highest degree of care in selling guns.

**ANSWER:**   Walmart admits that it is a Federal Firearms Licensee and sells firearms in some of its stores and admits that there are federal and state firearms laws, some of which are applicable to Walmart. Walmart further avers that the remaining allegations contained in paragraph 3 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

4.      One of the important laws that WALMART agreed to follow included, but is not limited to, Maryland's prohibition on the possession of a shotgun by an individual suffering from a mental disorder who has a history of violence directed at himself or others. *See* Md. Code Ann., Pub. Safety § 5-205(b)(6).

**ANSWER:**   Walmart avers that the allegations contained in paragraph 4 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

5.      In addition to this specific statutory duty, the common law duty of reasonable care required WALMART, among other things, to train and supervise all employees to recognize signs of mental or emotional distress in prospective buyers and to avoid entrusting firearms to individuals displaying indications that they are a danger to themselves or others.

**ANSWER:**   Walmart avers that the allegations contained in paragraph 5 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

6.      But for WALMART's knowing violation of one or more relevant laws applicable to the sale or marketing of firearms and its breach of relevant standards of care, JACOB MACE would not have had access to the Shotgun and could not have harmed himself with the Shotgun.

**ANSWER:**   Walmart denies the allegations in paragraph 6.

7.      WALMART knew that it was a foreseeable risk that if it sold firearms in violation of the statutes and standards it was required to follow, that its firearms would be used in suicides.

**ANSWER:**   Walmart denies the allegations in paragraph 7.

8.      Exactly such a tragedy was both the direct and proximate result of WALMART's negligent and/or unlawful misconduct in selling the Shotgun to JACOB MACE.

**ANSWER:**   Walmart denies the allegations in paragraph 8.

9.      This lawsuit does not seek to impose liability on firearms retailers who sell guns legally and responsibly. Instead, Plaintiffs seek to hold WALMART accountable for the foreseeable consequences of selling a gun illegally and irresponsibly that caused and contributed to the death by suicide of JACOB MACE.

**ANSWER:**     Walmart denies the allegations in paragraph 9 and Walmart also denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

## PARTIES

10.     At all times relevant to the cause of action asserted herein, the Decedent, JACOB MACE, was an employee of WALMART in Supercenter #1981 located in St. Mary's County, Maryland.

**ANSWER:**     Walmart admits the allegations in paragraph 10.

11.     Plaintiff KAYLA BRADY is an adult resident of St. Mary's County, Maryland, the surviving spouse of JACOB MACE, and the duly appointed Personal Representative of the Estate of JACOB MACE, deceased.

**ANSWER:**     Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 11 and therefore denies the allegations.

12.     Plaintiff G.M. is a surviving son of JACOB MACE and a minor resident of St. Mary's County, Maryland, who brings this action by and through his mother and next friend, KAYLA BRADY.

**ANSWER:**     Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 12 and therefore denies the allegations.

13.     Plaintiff C.C. is a surviving son of JACOB MACE and a minor resident of Calvert County, Maryland, who brings this action by and through his mother and next friend, NICOLE CLARK.

**ANSWER:**   Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 13 and therefore denies the allegations.

14.   Plaintiff DEBRA MCCREAVY is an adult resident of St. Mary's County, Maryland, and surviving mother of JACOB MACE.

**ANSWER:**   Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 14 and therefore denies the allegations.

15.   Plaintiff MARK MACE is an adult resident of King George County, Virginia, and surviving father of JACOB MACE.

**ANSWER:**   Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 15 and therefore denies the allegations.

16.   The Defendants, WALMART INC. and WAL-MART STORES EAST, LP, are American multinational corporations incorporated under the laws of the State of Delaware and headquartered in Bentonville, Arkansas.

**ANSWER:**   Walmart admits that Defendant Walmart Inc. is corporation that is incorporated in the State of Delaware and has its principal place of business in the State of Arkansas. Walmart avers that Defendant Wal-Mart Stores East, L.P., is a Delaware limited partnership and has its principal place of business in the State of Arkansas.

17.   The Defendants, WALMART INC. and WAL-MART STORES EAST, LP, are registered to do business in the State of Maryland and are marked as businesses in good standing.

**ANSWER:**   Walmart admits the allegations in paragraph 17.

18.   WALMART INC. owns and operates at least forty-eight stores in the State of Maryland including Prince George's County.

**ANSWER:**     Walmart admits that it owns and operate stores in the State of Maryland, including Prince George's County, Maryland. Walmart denies that the ownership or operation of any stores in Prince George's County, Maryland is indicative that the Circuit Court for Prince George's County, Maryland is the appropriate jurisdiction or venue for this action.

19.     At all times relevant, WALMART INC. and WAL-MART STORES EAST, LP maintained a Federal Firearms License and held themselves out as marketers and sellers of firearms.

**ANSWER:**     Walmart admits that it maintains a Federal Firearms License and sells firearms in some of its stores. As to any remaining allegations in paragraph 19 of the Complaint, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever

20.     At all times relevant, WALMART INC. and WAL-MART STORES EAST, LP carry on regular businesses in Prince George's County, Maryland and holds themselves out to the Prince George's County community as a holder of a Federal Firearms License.

**ANSWER:**     Walmart admits that it owns and operate stores in the State of Maryland, including Prince George's County, Maryland and admits that it maintains a Federal Firearms License. Walmart denies that the ownership or operation of any stores in Prince George's County, Maryland and any corresponding maintenance of a Federal Firearms License is indicative that the Circuit Court for Prince George's County, Maryland is the appropriate jurisdiction or venue for this action.

## JURISDICTION & VENUE

21.     Jurisdiction is proper because the Defendants, WALMART INC. and WAL-MART STORES EAST, LP, carry on regular businesses in Prince George's County, Maryland. Md. Code Ann., Cts. & Jud. Proc. § 6-201.

**ANSWER:**   Walmart denies that jurisdiction is proper in the Circuit Court of Prince George's County, Maryland. Walmart admits that the United States District Court for the District of Maryland has jurisdiction, but denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

22.     The amount in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs.

**ANSWER:**   Walmart understands that the Plaintiffs have represented that the amount in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs and Plaintiffs are seeking damages in excess of the jurisdictional limits of United States District Court for the District of Maryland, but denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

23.     Plaintiffs are, and at all times relevant to this action have been, residents of Maryland and Virginia.

**ANSWER:**   Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 23 and therefore denies the allegations.

24.     Defendants are, and at all times relevant to this action have been, transacting and carrying on a regular business in Prince George's County, Maryland. In the course of this business, Defendants have caused tortious injury in the State by an act and/or omission.

**ANSWER:**     Walmart admits that it owns and operate stores in the State of Maryland, including Prince George's County, Maryland. Walmart denies that the ownership or operation of any stores in Prince George's County, Maryland or the transacting and carrying on a regular business in Prince George's County, Maryland is indicative that the Circuit Court for Prince George's County, Maryland is the appropriate jurisdiction or venue for this action. As to any remaining allegations in paragraph 24 of the Complaint, Walmart denies the allegations. Walmart also denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

25.     Venue is proper in Prince George's County, Maryland.

**ANSWER:**     Walmart denies the allegations in paragraph 25.

## FACTUAL ALLEGATIONS

**I.     WALMART Had a Duty to Sell Firearms in a Safe, Lawful, and Responsible Manner**

26.     When WALMART applied for and received the privilege of acting as an FFL, it accepted the "responsibility to ensure that, in the course of sales or other dispositions . . ., weapons are not obtained by individuals whose possession of them would be contrary to the public interest." *Abramski v. United States*, 573 U.S. 169, 190 (2014) (internal quotation and alteration omitted).

**ANSWER:**     Walmart avers that the allegations contained in paragraph 26 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

27.     WALMART's duty to act as a gatekeeper is not limited to running a federally-required Brady background check (*see* 18 U.S.C. § 922(t)); indeed, a dealer such as WALMART

8

cannot and must not make sales where, independent of the results of any background check, the dealer has actual or constructive knowledge that a potential purchaser is legally disqualified from owning a weapon. See § 922(d).

**ANSWER:**   Walmart avers that the allegations contained in paragraph 27 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

28.   WALMART has a responsibility to learn and carefully follow all relevant laws at all times.

**ANSWER:**   Walmart avers that the allegations contained in paragraph 28 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart avers that "relevant laws" is vague and, therefore, Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 28 and therefore denies the allegations.

29.   In Maryland, individuals who are "suffer-[ing] from a mental disorder as defined in § 10-101(i)(2) of the Health—General Article and ha[ve] a history of violent behavior against the[mselves] or another" may not lawfully possess a shotgun. Md. Code Ann., Pub. Safety § 5-205(b)(6).

**ANSWER:**   Walmart avers that the allegations contained in paragraph 29 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it

breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

30.     The relevant definition of "mental disorder" incorporates a "mental illness that so substantially impairs the mental or emotional functioning of an individual as to make care or treatment necessary or advisable for the welfare of the individual or for the safety of the person or property of another." Md. Code Ann., Health-General § 10-101(i)(2).

**ANSWER:**   Walmart avers that the allegations contained in paragraph 30 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

31.     An individual who aids and abets another's unlawful possession of a firearm with actual or constructive knowledge that such an individual is disqualified is equally responsible, as an accessory, for any direct statutory violations by the disqualified possessor. *See* Md. Code Ann., Crim. Pro. § 4-204.

**ANSWER:**   Walmart avers that the allegations contained in paragraph 31 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

29.     [sic] Prior to and during the sale of shotgun to JACOB MACE, WALMART had actual or constructive knowledge of its statutory duty not to provide a shotgun to individuals barred under, *inter alia*, Md. Code Ann., Pub. Safety § 5-205(b)(6).

10

**ANSWER:**    Walmart avers that the allegations contained in paragraph 29 [sic] of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

30.    [sic] A FFL's duty to act as a gatekeeper who keeps guns from dangerous individuals extends beyond solely complying with relevant statutes.

**ANSWER:**    Walmart avers that the allegations contained in paragraph 30 [sic] of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

31.    [sic] A dealer has the discretion to deny a sale even upon successful completion of a background check and compliance with other statutory requirements.

**ANSWER:**    Walmart avers that the allegations contained in paragraph 31 [sic] of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

32.    A dealer should exercise its discretion to deny a gun sale in the event it has knowledge that a potential purchaser may be a danger to himself or others, including knowledge gained from observing erratic or suspicious behavior indicative of potential mental disturbance or criminality.

**ANSWER:**   Walmart avers that the allegations contained in paragraph 32 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

33.    A responsible FFL must not place its desire for profits over public safety.

**ANSWER:**    Walmart avers that FFL have certain legal obligations. As to any remaining allegations in paragraph 33 of the Complaint, Walmart denies the allegations and denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

34.    A responsible FFL should refuse to provide a gun to anyone who displays clear indicators he may harm himself or others regardless of whether a sale is prohibited by statute.

**ANSWER:**    Walmart avers that FFL have certain legal obligations. As to any remaining allegations in paragraph 34 of the Complaint, Walmart denies the allegations and denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

35.    This duty incorporates an obligation for firearms retailers to carefully select, train, and monitor their employees in order to make sure that their employees have internalized and are following both the law and all relevant safety protocols.

**ANSWER:**   Walmart avers that the allegations contained in paragraph 35 of the Complaint relate to contentions and allegations of law which require no response. Walmart further

avers that FFL have certain legal obligations. As to any remaining allegations in paragraph 35 of the Complaint, Walmart denies the allegations and denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

36.     Firearms industry actors and others have repeatedly recognized that reasonable care requires that firearms sellers employ safeguards to mitigate against the risk of firearms suicide.

**ANSWER:**     Walmart avers that the allegations contained in paragraph 36 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

37.     Firearms are the most frequent means by which individuals attempt to commit suicide; indeed, suicide by firearm is more common than suicide by all other means combined.

**ANSWER:**     This paragraph states a broad conclusion without regard to the specific facts of this case or citation to any source. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

38.     A suicide attempt utilizing a firearm is also more likely to result in death than an attempt by any other means.

**ANSWER:**     This paragraph states a broad conclusion without regard to the specific facts of this case or citation to any source. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in

any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

39.     A suicide committed with a firearm is a foreseeable consequence of failure to follow relevant laws and safety protocols.

**ANSWER:**   Walmart avers that the allegations contained in paragraph 39 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

40.     Upon information and belief, WALMART was well aware, prior to and during the sale of the Shotgun to MACE, that suicide by firearm is a large contributor to our nation's epidemic of gun violence and that gun dealers have a duty to implement measures to prevent their firearms from being obtained for use in suicides.

**ANSWER:**   Walmart avers that the allegations contained in paragraph 40 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

41.     Actors both within and outside of the firearms industry have recognized the importance of implementing and enforcing reasonable safeguards at the point of sale to minimize the significant risk of firearm suicide.

**ANSWER:**   This paragraph states a broad conclusion without regard to the specific facts of this case or citation to any source. To the extent a response is deemed necessary, Walmart denies

it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

42.     These safeguards are in addition to any statutory duties imposed on FFL's.

**ANSWER:**     Walmart avers that FFL have certain legal obligations. As to any remaining allegations in paragraph 42 of the Complaint, Walmart denies the allegations and denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

43.     For example, the National Shooting Sports Foundation ("NSSF")—the firearms industry's trade association—partnered with the American Foundation for Suicide Prevention to develop a Suicide Prevention Toolkit for firearms retailers like WALMART to utilize in order to help prevent customers from using their guns in suicides.

**ANSWER:**     This paragraph states a broad conclusion without regard to the specific facts of this case and the Suicide Prevention Toolkit speaks for itself. To the extent a response is deemed necessary, Walmart denies that the Suicide Prevention Toolkit created any legal obligation or duty upon Walmart and denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

44.     This toolkit lists a number of "[s]uicide [w]arning [s]igns" that should be taken "[s]eriously" including, *inter alia*, an individual talking about killing him or herself and/or increasing use of alcohol or narcotics.

**ANSWER:**    This paragraph states a broad conclusion without regard to the specific facts of this case and the Suicide Prevention Toolkit speaks for itself. To the extent a response is deemed necessary, Walmart denies that the Suicide Prevention Toolkit created any legal obligation or duty upon Walmart and denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

45.    Recognizing the intersection between firearms access and actual suicide attempts, this toolkit recommends various practices to limit a suicidal individual's ability to access firearms.

**ANSWER:**    This paragraph states a broad conclusion without regard to the specific facts of this case and the Suicide Prevention Toolkit speaks for itself. To the extent a response is deemed necessary, Walmart denies that the Suicide Prevention Toolkit created any legal obligation or duty upon Walmart and denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

46.    Similarly, multiple states where WALMART conducts business have guidance for gun dealers on screening customers for suicidal ideation.

**ANSWER:**    This paragraph states a broad conclusion without regard to the specific facts of this case or citation to any source. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

47.    The New Hampshire Firearm Safety Coalition has noted that almost one in ten suicides in New Hampshire occur with a recently purchased firearm—often within hours of the purchase—and produced a tip sheet to help combat this problem.

**ANSWER:**    This paragraph states a broad conclusion without regard to the specific facts of this case and the New Hampshire Firearm Safety Coalition tip sheet speaks for itself. To the extent a response is deemed necessary, Walmart denies that the New Hampshire Firearm Safety Coalition tip sheet created any legal obligation or duty upon Walmart and denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

48.    This tip sheet, produced in collaboration with firearms dealers in New Hampshire, recommends that a dealer who observes a visibly distraught customer ask screening questions including, *inter alia*, an individual's intended use of the firearm and, in appropriate circumstances, whether the individual is suicidal.

**ANSWER:**    This paragraph states a broad conclusion without regard to the specific facts of this case and the New Hampshire Firearm Safety Coalition tip sheet speaks for itself. To the extent a response is deemed necessary, Walmart denies that the New Hampshire Firearm Safety Coalition tip sheet created any legal obligation or duty upon Walmart and denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

49.    The tip sheet further encourages dealers who identify a potentially suicidal customer to contemplate a variety of steps including asking the customer to consider delaying his or her purchase, directing him or her to other self-defense products (like pepper-spray) which are less easily used in a suicide attempt and denying the sale of the product even where it might be

allowed by statute. The sheet reminds FFLs that "you are under no obligation to sell a gun to anyone."

**ANSWER:**    This paragraph states a broad conclusion without regard to the specific facts of this case and the New Hampshire Firearm Safety Coalition tip sheet speaks for itself. To the extent a response is deemed necessary, Walmart denies that the New Hampshire Firearm Safety Coalition tip sheet created any legal obligation or duty upon Walmart and denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

50.    The Safer Homes Collaborative—a joint project between gun owners and the mental health community—adapted the New Hampshire Firearm Safety Coalition tip sheet to produce a similar resource for Missouri firearms retailers.

**ANSWER:**    This paragraph states a broad conclusion without regard to the specific facts of this case and the Safer Homes Collaborative speaks for itself. To the extent a response is deemed necessary, Walmart denies that the Safer Homes Collaborative created any legal obligation or duty upon Walmart and denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

51.    WALMART has, itself, upon information and belief, joined the above consensus by recognizing and accepting that its duty of reasonable care requires it to implement protocols to prevent firearms from being diverted into the hands of individuals showing a propensity to harm themselves or others but who may not necessarily be disqualified under relevant federal or state laws.

**ANSWER:**   This paragraph states a broad conclusion without regard to the specific facts of this case. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

52.   Specifically, upon information and belief, WALMART has a formal or informal policy of "blacklisting" whereby an individual, including one suffering from a dangerous mental issue, can be reported to the management of a relevant store and the store management will decline to sell a firearm to that individual regardless of whether he is prohibited from possessing a firearm.

**ANSWER:**   This paragraph states a broad conclusion without regard to the specific facts of this case. To the extent a response is deemed necessary, Walmart denies that it has a formal or an informal policy of "blacklisting" where an individual can be reported to the management of a relevant store and the store management will decline to sell a firearm to that individual regardless of whether he or she is prohibited from possessing a firearm. Walmart further avers that it has policies and procedures regarding the sale of firearms. As to any remaining allegations in paragraph 52, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

## II.   WALMART Had Actual and/or Constructive Knowledge that JACOB MACE was a Disqualified Possessor Undergoing a Mental Crisis

53.   JACOB MACE began working for WALMART in Supercenter #1981 part-time in February 2018 and continued to work for about nine months before a hiatus.

**ANSWER:**   Walmart admits that Jacob Mace began working for Walmart at Store No. 1981 part-time in March 2018, was classified as a full-time employee in July 2018, and left

Walmart's employ in May 2019. As to any remaining allegations in paragraph 53 of the Complaint, Walmart denies the allegations.

54.      He returned to WALMART for part-time employment from February 2019 until his death in November 2019.

**ANSWER:**      Walmart admits that Jacob Mace returned to Walmart's employ as a part-time employee in September 2019 and was a Walmart employee at the time of his death in November 2019. As to any remaining allegations in paragraph 54 of the Complaint, Walmart denies the allegations.

55.      JACOB MACE worked in WALMART's maintenance department.

**ANSWER:**      Walmart admits the allegations in paragraph 55.

56.      JACOB MACE's direct supervisor at Walmart was BRENAN JONES.

**ANSWER:**      Walmart admits that all times relevant in the Complaint, Brennan Jones was considered a supervisor-level employee at Walmart Store No. 1981. As to any remaining allegations in paragraph 56 of the Complaint, Walmart denies the allegations.

57.      Over the course of JACOB MACE's two periods of employment, WALMART had substantial opportunity to observe JACOB MACE and recognize his psychological and mental health issues.

**ANSWER:**      Walmart admits that Jacob Mace was a Walmart employee. As to any remaining allegations in paragraph 57 of the Complaint, Walmart denies the allegations.

58.      JACOB MACE was formally diagnosed with major depressive disorders and borderline personality disorder while working at WALMART INC. in June 2019, but had battled with mental health issues including depression and suicidal ideation since childhood.

**ANSWER:**   Walmart denies that Jacob Mace was employed by Walmart in June 2019. As to any remaining allegations in paragraph 58, Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 58 and therefore denies the allegations.

59.     Many of JACOB MACE's coworkers at WALMART, including, but not limited to, JENNIFER KREBS, CHRISTINA O'SHEA, and HANNAH WERNER were aware that JACOB MACE had an extensive history of mental health issues including depression and suicidal ideation.

**ANSWER:**   Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 59 and therefore denies the allegations.

60.     Beginning on October 31, 2019, JACOB MACE began experiencing an acute mental health crisis that lasted for sixteen days until his death on November 15, 2019.

**ANSWER:**   Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 60 and therefore denies the allegations.

61.     During this period, JACOB MACE's family removed the gun that WALMART had previously sold him so he would not have access to a firearm to act on his suicidal ideation.

**ANSWER:**   Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 61 and therefore denies the allegations.

62.     During this period, JACOB MACE repeatedly sought mental health treatment or evaluation at one or more hospitals and was taking one or more prescription anti-depressants.

**ANSWER:**   Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 62 and therefore denies the allegations.

63.     As a consequence of multiple hospital visits, JACOB MACE missed work at WALMART several times.

**ANSWER:**   Walmart admits that Mace did not work several days during the period of October 31, 2019 to November 15, 2019. As to any remaining allegations in paragraph 63, Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 63 and therefore denies the allegations.

64.   After missing work, JACOB MACE presented letters documenting his hospital visits to his WALMART supervisor JONES.

**ANSWER:**   Walmart denies the allegations in paragraph 64.

65.   Although these letters did not specify why JACOB MACE was admitted to the hospital, he explained the mental health crisis motivating these visits in discussions with JONES.

**ANSWER:**   Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 65 and therefore denies the allegations.

66.   JONES was specifically aware that JACOB MACE had engaged in suicidal ideation and on at least one occasion instructed JACOB MACE to call a suicide hotline while JACOB MACE was at work at Supercenter #1981.

**ANSWER:**   Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 66 and therefore denies the allegations.

67.   On November 9, 2019, before entering the hospital for three days, JACOB MACE exchanged several text messages with his WALMART coworker and friend, O'SHEA.

**ANSWER:**   Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 67 and therefore denies the allegations.

68.   JACOB MACE told O'SHEA about his "crippling" depression and that he had attempted suicide earlier in the week.

**ANSWER:**     Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 68 and therefore denies the allegations.

69.     O'SHEA asked JACOB MACE how he planned to kill himself to which he responded, "[s]lit wrists. Buy a gun."

**ANSWER:**     Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 69 and therefore denies the allegations.

70.     O'SHEA took a screenshot of her text conversation with JACOB MACE and sent it to JONES—JACOB MACE's supervisor.

**ANSWER:**     Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 70 and therefore denies the allegations.

71.     This screenshot included JACOB MACE's plan to "[s]lit wrists. Buy a gun."

**ANSWER:**     Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 71 and therefore denies the allegations.

72.     Upon information and belief, WALMART has an informal policy of "blacklisting" of individuals who should not be sold firearms even if they are not prohibited under relevant state or federal laws.

**ANSWER:**     Walmart denies that is has an informal policy of "blacklisting" of individuals who should not be sold firearms even if they are not prohibited under relevant state or federal laws. Walmart further avers that it has policies and procedures regarding the sale of firearms. As to any remaining allegations in paragraph 72, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

73.     About a half hour after O'SHEA sent JONES the screenshot of her text messages with JACOB MACE, the two met to discuss placing JACOB MACE on this "blacklist."

**ANSWER:**     Walmart denies that it has a formal or an informal "blacklist." As to any remaining allegations in paragraph 73, Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 73 and therefore denies the allegations.

74.     O'SHEA explained she was worried for JACOB MACE's safety and did not want him to be able to purchase a firearm.

**ANSWER:**     Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 74 and therefore denies the allegations.

75.     JONES told O'SHEA that he would "take care of it."

**ANSWER:**     Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 75 and therefore denies the allegations.

76.     Upon information and belief, JONES never followed through on this promise despite both this specific warning and his awareness of JACOB MACE's general mental instability.

**ANSWER:**     Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 76 and therefore denies the allegations.

77.     WALMART did not utilize its own "blacklist" during the sale to their own employee, JACOB MACE.

**ANSWER:**     Walmart denies that it has a formal or an informal blacklist. Walmart further avers that it has policies and procedures regarding the sale of firearms. As to any remaining allegations in paragraph 77, Walmart denies it violated any federal or state law, denies it breached

any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

78.    On November 12, 2019, JACOB MACE sent a Facebook message to his WALMART coworker ERIC MCLAUGHLIN.

**ANSWER:**    Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 78 and therefore denies the allegations.

79.    MCLAUGHLIN worked behind the firearm counter at Walmart Supercenter #1981 in the Sports & Outdoors department.

**ANSWER:**    Walmart admits that Eric McLaughlin worked as the Sporting Goods Department Manager at Store No. 1981 and that the Sporting Goods Department where McLaughlin worked sold firearms. As to any remaining allegations in paragraph 79, those allegations are vague and, therefore, Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 79 and therefore denies the allegations.

80.    JACOB MACE asked MCLAUGHLIN if WALMART sold single shot shotguns and which one was the cheapest.

**ANSWER:**    Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 80 and therefore denies the allegations.

**III.    WALMART's Knowingly Violated Statutory Duties and its Duty to Use Reasonable Care in Providing the Shotgun to JACOB MACE, Thereby Foreseeably Causing JACOB MACE's Suicide**

81.    On the morning of November 15, 2019, JACOB MACE showed up for work at Supercenter #1981 at approximately 7:00 a.m. and clocked out for his "lunch" break at approximately 9:30 a.m.

**ANSWER:**    Walmart admits that on November 15, 2019, Jacob Mace reported for his shift at Store No. 1981 at approximately 6:57 a.m. and took a break at approximately 9:30 a.m.

82.    JACOB MACE's WALMART co-worker, KREBS, was able to perceive that JACOB MACE had been drinking that morning.

**ANSWER:**    Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 82 and therefore denies the allegations.

83.    KREBS identified the fact that JACOB MACE had been drinking as unusual because he did not normally drink and had been sober for several months.

**ANSWER:**    Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 83 and therefore denies the allegations.

84.    JACOB MACE texted O'SHEA and indicated that something was troubling him.

**ANSWER:**    Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 84 and therefore denies the allegations.

85.    At approximately 9:40 a.m. that morning, JACOB MACE approached WALMART employee MCLAUGHLIN, who was working at the firearms counter in the Sports & Outdoors department.

**ANSWER:**    Walmart admits that sometime after 9:30 a.m. on November 15, 2019, Jacob Mace approached McLaughlin, who was working in the Sporting Goods Department. As to any remaining allegations in paragraph 85 of the Complaint, Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 85 and therefore denies the allegations.

86.    JACOB MACE then began the process of purchasing the Shotgun during his "lunch" break.

**ANSWER:**     Walmart admits that sometime after 9:30 a.m. on November 15, 2019, Jacob Mace began the process of purchasing a firearm. As to any remaining allegations in paragraph 86 of the Complaint, Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 86 and therefore denies the allegations.

87.     MCLAUGHLIN entered information into the computer's purchasing system for federal and/or state background checks.

**ANSWER:**     Walmart admits that McLaughlin completed Section B and Section C of the National Instant Criminal Background Check System form. As to any remaining allegations in paragraph 87 of the Complaint, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

88.     WALMART's asset manager, IDA RANDALL arrived at the counter at 9:53 a.m. and approved the purchase as well as JACOB MACE's purchase of a box of ammunition.

**ANSWER:** Walmart admits that sometime after 9:30 a.m. on November 15, 2019 the Store No. 1981's Asset Protection Manager Ida Randall verified the information entered into the computer terminal at the firearms counter by Mace and McLaughlin. As to any remaining allegations in paragraph 88 of the Complaint, Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 88 and therefore denies the allegations.

89.     As WALMART was aware, among other things, of information from JACOB MACE's conversations with JONES regarding his repeated mental health hospitalizations and suicidal ideation, his disclosure to O'SHEA of a recent suicide attempt, and his plans to buy a gun to kill himself.

**ANSWER:**   Walmart denies the allegations in paragraph 89.

90.   As a result, WALMART had actual or constructive knowledge that JACOB MACE was "suffer[ing] from a mental disorder" and had a "history of violent behavior against [himself]" and, thus, could not lawfully possess a shotgun. Md. Pub. Safety Code § 5-205(b)(6).

**ANSWER:**   Walmart denies the allegations in paragraph 90.

91.   WALMART, however, chose to act as a culpable accessory and assist JACOB MACE in his unlawful possession of the Shotgun.

**ANSWER:**   Walmart denies the allegations in paragraph 91.

92.   WALMART knowingly violated, either directly or as an accomplice and/or co-conspiracy laws applicable to the sale and marketing of firearms, including but not limited to unlawfully providing a shotgun to an individual barred under Md. Code Ann., Pub. Safety § 5-205(b)(6).

**ANSWER:**   Walmart denies the allegations in paragraph 92.

93.   WALMART's knowing violation of laws caused JACOB MACE's untimely and preventable death.

**ANSWER:**   Walmart denies the allegations in paragraph 93.

94.   WALMART's violation of Md. Code Ann., Pub. Safety § 5-205(b)(6) and potentially other relevant laws constitutes evidence of negligence sufficient to demonstrate that Plaintiff has a prima facie claim for relief.

**ANSWER:**   Walmart denies the allegations in paragraph 94.

95.   WALMART's unlawful sale to JACOB MACE was caused by WALMART's failure to appropriately train its employees regarding relevant firearms laws.

**ANSWER:**   Walmart denies the allegations in paragraph 95.

96.     Upon information and belief, MCLAUGHLIN and RANDALL also violated their common law duty of reasonable care by willfully ignoring clear indications that JACOB MACE was inebriated and/or distraught at the time of the purchase.

**ANSWER:**     Walmart denies the allegations in paragraph 96.

97.     Upon information and belief, MCLAUGHLIN and RANDALL did not ask JACOB MACE any screening questions regarding, for example, his mental state, his intended use for the Shotgun, his desire to buy a "cheap" gun, or his drinking.

**ANSWER:**     Walmart avers that it complied with all federal and state laws and regulations concerning the sale of the subject firearm to Jacob Mace. As to any remaining allegations in paragraph 97 of the Complaint, Walmart denies the allegations and denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

98.     Upon information and belief, this lack of screening was a direct and foreseeable result of WALMART's negligent failure to appropriately select, train, and monitor its employees to make sure that they were following critical safety practices designed to prevent the provision of firearms to emotionally unstable individuals.

**ANSWER:**     Walmart denies the allegations in paragraph 98.

99.     Upon information and belief, JACOB MACE would not have been able to provide satisfactory answers to screening inquiries like those above and, therefore, a responsible dealer would have declined the sale of the Shotgun.

**ANSWER:**     Walmart denies the allegations in paragraph 99.

100.     Upon information and belief, if JACOB MACE had been placed on the "blacklist," or the "blacklist" was utilized properly, no WALMART employee would have processed the sale to JACOB MACE.

**ANSWER:**     Walmart denies the allegations in paragraph 100.

101.     Thus, had WALMART followed all relevant laws, complied with its duty of reasonable care by following widely accepted safety guidelines, properly trained its employees and/or applied by its own self-constructed safety protocols, JACOB MACE would not have had the Shotgun on November 15, 2019, and could not have used it to harm himself.

**ANSWER:**     Walmart denies the allegations in paragraph 101.

102.     Instead, as a result of WALMART's knowing violation of one or more firearms laws, applicable standard of care and its callous refusal to follow the law or to consider safety of the public—or its own employees—in selling firearms, WALMART placed the Shotgun in JACOB MACE's hands and provided him a receipt time-stamped at 9:58 a.m.

**ANSWER:**     Walmart admits that Jacob Mace purchased a firearm from Walmart Store No. 1981 at approximately 9:58 a.m. on November 15, 2019. As to the remaining allegations in paragraph 102 of the Complaint, Walmart denies the allegations and denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

103.     JACOB MACE never returned from his break after leaving with the Shotgun.

**ANSWER:**     Walmart avers that "returned from his break" is vague and, therefore, Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 103 and therefore denies the allegations.

104.     This led his friends and family to call 911 for assistance locating him.

**ANSWER:**   Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 104 and therefore denies the allegations.

105.   Shortly after 12:00 p.m., officers from St. Mary's County Sheriffs Office located JACOB MACE, deceased, inside his truck in a nearby parking lot.

**ANSWER:**   Walmart admits only that the St. Mary's County Sheriff's Office Incident Report notes that after 12:00 p.m. on November 15, 2019, officers located Jacob Mace, deceased, inside his truck in a parking lot. As to any remaining allegations in paragraph 105 in the Complaint, Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 105 and therefore denies the allegations.

106.   He was pronounced dead at 12:07 p.m. as a result of a single gunshot wound inflicted with the Shotgun and ammunition sold to him by WALMART.

**ANSWER:**   Walmart admits only that the St. Mary's County Sheriff's Office Incident Report notes that after 12:00 p.m. on November 15, 2019, officers located Jacob Mace and observed that he had "injuries that were inconsistent with life from an apparent self inflicted gunshot wound." As to any remaining allegations in paragraph 106 in the Complaint, Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 106 and therefore denies the allegations.

107.   Consistent with KREBS' observation that JACOB MACE had been drinking, his body was found next to partially consumed bottle of Fireball whiskey.

**ANSWER:**   Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 107 and therefore denies the allegations.

108.   JACOB MACE's death was the foreseeable consequence of WALMART choosing to violate one or more relevant firearms laws, failing to train and supervise its employees to

31

institute relevant safeguards and, ultimately, choosing to entrust a lethal firearm to a person known to be suffering from a mental crisis and operating under the influence of alcohol.

**ANSWER:**   Walmart denies the allegations in paragraph 108.

109.   Upon information and belief, WALMART has not made any changes to its negligent and/or unlawful training and sales practices, which would reduce the likelihood of similar negligent and/or unlawful transfers of firearms to other individuals.

**ANSWER:**   Walmart avers that pursuant to Rule 407 of the Federal Rules of Evidence any subsequent remedial measures are not admissible to prove negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction and incorporates Rules 407 of the Federal Rule of Evidence in its response to paragraph 109. As to any remaining allegations in paragraph 109, Walmart avers that "changes to its negligent and/or unlawful training and sales practices" and "similar negligent and/or unlawful transfers of firearms" is vague and, therefore, Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 109 and therefore denies the allegations. Walmart also denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

110.   Upon information and belief, WALMART's continuation of reckless, unsafe and/or unlawful business practices continues to threaten rights of peace, health and safety common to all members of the public and, thus, constitutes an actionable and ongoing public nuisance under Maryland law.

**ANSWER:**   Walmart denies the allegations in paragraph 110.

## COUNT I
### Negligence – Wrongful Death

111.   Plaintiffs adopt and incorporate the allegations in Paragraphs 1 through 110 above.

**ANSWER:**   Walmart incorporates its Answers set forth above as though fully restated in their entirety herein.

112.   WALMART had a duty to train and supervise its employees to follow all relevant state and federal firearms statutes including, but not limited to, Md. Pub. Safety Code § 5-205(b)(6).

**ANSWER:**   Walmart avers that the allegations contained in paragraph 112 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

113.   WALMART also had a duty to train and supervise its employees to carefully follow safety protocols designed to screen out potential firearms purchasers showing a risk of harming themselves or others.

**ANSWER:**   Walmart avers that the allegations contained in paragraph 113 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

114.   Upon information and belief, WALMART failed to appropriately train and supervise employees including, but not necessarily limited to, MCLAUGHLIN, RANDALL and JONES.

**ANSWER:**     Walmart denies the allegations in paragraph 114.

115.     But for WALMART's negligent training and supervision, these individuals would have refused to supply the Shotgun to JACOB MACE so as not to aid in this violation of Md. Pub. Safety Code § 5-205(b)(6).

**ANSWER:**     Walmart denies the allegations in paragraph 115.

116.     WALMART's violation of laws including but not limited to Md. Code Ann., Pub. Safety § 5-205(b)(6) constitutes evidence of negligence sufficient to demonstrate that Plaintiffs have a prima facie case.

**ANSWER:**     Walmart denies the allegations in paragraph 116.

117.     Similarly, but for WALMART's negligent training and supervision, these individuals would appropriately applied relevant safety protocols in response to the clear indicators of danger presented by JACOB MACE and would have denied the sale under these protocols.

**ANSWER:**     Walmart denies the allegations in paragraph 117.

118.     For example, but for WALMART's negligent training and supervision, WALMART employees would have asked various screening questions of JACOB MACE which he would not have been able to provide satisfactory answers.

**ANSWER:**     Walmart denies the allegations in paragraph 118.

119.     WALMART's knowing breach of one or more firearms laws and its common law duty of care directly and foreseeably led to JACOB MACE' s suicide by putting a lethal tool in the hands of a distraught and inebriated individual openly threatening self-harm.

**ANSWER:**     Walmart denies the allegations in paragraph 119.

120.     Plaintiffs are entitled to damages for the harm that proximately resulted from WALMART's negligent and/or unlawful misconduct.

**ANSWER:**   Walmart denies the allegations in paragraph 120 and Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

**COUNT II**
**Negligence – Survival Action**

121.   Plaintiffs adopt and incorporate the allegations in Paragraphs 1 through 120 above.

**ANSWER:**   Walmart incorporates its Answers set forth above as though fully restated in their entirety herein.

122.   The Estate of JACOB MACE was opened on or about December 9, 2019, in St. Mary's County, Maryland and KAYLA BRADY was appointed as personal representative of the estate.

**ANSWER:**   Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 122 and therefore denies the allegations.

123.   KAYLA BRADY as the personal representative of the estate brings this claim for the conscious pain and suffering, physical injuries, and other damages that the late JACOB MACE experienced on November 15, 2019, as a direct and proximate result of the negligence and breaches of duty by Defendants, by and through its employees.

**ANSWER:**   Walmart avers that Kayla Brady has represented that she is the personal representative of the estate and brings this claim for the conscious pain and suffering, physical injuries, and other damages that the late Jacob Mace experienced on November 15, 2019. As to any remaining allegations in paragraph 123 of the Complaint, Walmart denies the allegations and denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent

in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

### COUNT III
### Negligence – Wrongful Death

124.    Plaintiffs adopt and incorporate the allegations in Paragraphs 1 through 123 above.

**ANSWER:**    Walmart incorporates its Answers set forth above as though fully restated in their entirety herein.

125.    All FFLs have a duty not to provide firearms to a class of individuals deemed by Congress or a state legislature as presenting an excessive risk of misusing firearms to harm themselves or others.

**ANSWER:**    Walmart avers that the allegations contained in paragraph 125 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

126.    This would include not providing firearms to any purchaser disqualified under Md. Code Aim., Pub. Safety § 5-205(b)(6).

**ANSWER:**    Walmart avers that the allegations contained in paragraph 126 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

127.    All persons are subject to a similar, common law duty to exercise reasonable care by not entrusting a dangerous instrument to a person they know or reasonably should know is

displaying a high propensity to use the product in a manner involving unreasonable risk of physical injury to himself or others.

**ANSWER:**    Walmart avers that the allegations contained in paragraph 127 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

128.    WALMART knowingly breached one or more relevant statutes including, but not limited to, § 5-205(b)(6) and a related duty of reasonable care by entrusting the Shotgun to JACOB MACE.

**ANSWER:**    Walmart denies the allegations in paragraph 128.

129.    WALMART also had actual and/or constructive knowledge that JACOB MACE was a prohibited purchaser under § 5-205(b)(6) and inebriated at the time he sought to purchase the Shotgun.

**ANSWER:**    Walmart denies the allegations in paragraph 129.

130.    WALMART also had actual knowledge that JACOB MACE was likely to use the Shotgun to harm himself or another due to both a specific warning provided by O'SHEA about JACOB MACE's plan to use a firearm to commit suicide and general awareness of his mental instability.

**ANSWER:**    Walmart denies the allegations in paragraph 130.

131.    But for WALMART's breach of one or more statutes and its duty of reasonable care by entrusting the Shotgun to JACOB MACE in defiance of clear "red flags" indicating a high

likelihood JACOB MACE would use the gun to harm himself or others, JACOB MACE would not have had access to a firearm November 15, 2019.

   **ANSWER:**   Walmart denies the allegations in paragraph 131.

   132.   WALMART's negligent and/or unlawful actions in entrusting the Shotgun to JACOB MACE directly and foreseeably led to JACOB MACE committing suicide with the Shotgun.

   **ANSWER:**   Walmart denies the allegations in paragraph 132.

   133.   Plaintiffs are entitled to damages for the harm that proximately resulted from WALMART's negligent and/or unlawful misconduct.

   **ANSWER:**   Walmart denies the allegations in paragraph 133 and Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

**COUNT IV**
**Nuisance – Wrongful Death**

   134.   Plaintiffs adopt and incorporate the allegations in Paragraphs 1 through 133 above.

   **ANSWER:**   Walmart incorporates its Answers set forth above as though fully restated in their entirety herein.

   135.   All parties have a duty to refrain from any actions, which will interfere with or undermine rights held in common by the general public.

   **ANSWER:**   Walmart avers that the allegations contained in paragraph 135 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it

breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

136.    A breach of this duty constitutes a public nuisance.

**ANSWER:**    Walmart avers that the allegations contained in paragraph 136 of the Complaint relate to contentions and allegations of law which require no response. To the extent a response is deemed necessary, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

137.    WALMART breached this duty by adopting business practices guaranteeing that it would channel firearms like the Shotgun into the hands of vulnerable individuals like JACOB MACE and, thereby, contribute to avoidable firearms suicides.

**ANSWER:**    Walmart denies the allegations in paragraph 137.

138.    Sales channeling firearms like the Shotgun into the hands of vulnerable individuals like JACOB MACE are not only negligent but may also constitute direct or indirect violations of one or more relevant state or federal firearms statutes.

**ANSWER:**    Walmart denies the allegations in paragraph 138.

139.    As a direct and foreseeable consequence of WALMART's creation of a public nuisance, Plaintiffs have suffered a unique harm that is different not only in degree but also in kind from other members of the public.

**ANSWER:**    Walmart denies the allegations in paragraph 139.

140.    Whereas WALMART's practices impose a general threat to public safety and public convenience by diverting law enforcement and medical resources to respond to avoidable

suicides and away from competing crises, Plaintiffs have suffered categorically different emotional deprivation in that they have lost a cherished family member.

**ANSWER:**   Walmart denies the allegations in paragraph 140.

141.   Upon information and belief, WALMART has not changed or modified its sales practices regarding firearms in any significant way since JACOB MACE's death, thereby rendering further, similar tragedies likely and continuing the relevant nuisance.

**ANSWER:**   Walmart avers that pursuant to Rule 407 of the Federal Rules of Evidence any subsequent remedial measures are not admissible to prove negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction and incorporates Rules 407 of the Federal Rule of Evidence in its response to paragraph 141. As to any remaining allegations in paragraph 141, Walmart avers that "changed or modified its sales practices regarding firearms in any significant way" is vague and, therefore, Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 141 and therefore denies the allegations. Walmart also denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever

142.   Plaintiffs are entitled to both damages for the harm already caused by this nuisance and injunctive relief to abate the ongoing nuisance.

**ANSWER:**   Walmart denies the allegations in paragraph 142 and Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant judgement in their favor and against Defendants as follows:

1.      For actual damages, in an amount to be determined at trial, relating to Plaintiffs' causes of action;

2.      Requiring the Defendants to pay interest, costs, and reasonable attorney's fees incurred by Plaintiffs;

3.      For injunctive relief to abate the nuisance created by Defendants' unsafe practices;

4.      For any other and further relief the Court deems appropriate.

**ANSWER:**   Answering the "WHEREFORE" paragraph of Plaintiffs' Complaint, Walmart denies it violated any federal or state law, denies it breached any legal duty, denies it was negligent in any way, denies it is in any way liable to Plaintiffs, and denies that Plaintiffs are entitled to any relief whatsoever.

## ELECTION FOR JURY TRIAL

Plaintiffs demands a jury trial as to all claims.

**ANSWER:**   Walmart admits that Plaintiffs demand trial by jury on all issues so triable. Walmart demands trial by jury on all issues so triable.

## DEFENDANTS WALMART INC. AND WAL-MART STORES EAST L.P.'S DEFENSES

Defendants Walmart Inc. and Wal-Mart Stores East, L.P. (collectively, "Walmart"), by counsel, sets forth the following defenses:

1.      Walmart denies the allegations in the Complaint that are not specifically admitted above.

2.      Plaintiffs' Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

3.      The Court lacks subject matter jurisdiction over Plaintiffs' claims.

4.      The Complaint is barred by the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901-7903 (2021).

5.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' claims constitute a qualified civil liability action as that term is defined in 15 U.S.C. § 7903(5)(A) and, therefore, such claims are prohibited pursuant to 15 U.S.C. § 7902(a).

6.      Some or all of Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations.

7.      Some or all of the Plaintiffs lack standing to bring a claim.

8.      Any alleged injuries sustained by the Plaintiffs were caused by the sole, concurring, and/or contributory negligence of the Plaintiffs.

9.      Walmart did not owe Plaintiffs and Decedent Jacob Mace a duty as a matter of law.

10.     Plaintiffs and Decedent Jacob Mace assumed the risk of their injuries.

11.     Plaintiffs' Complaint fails to join a party in whose absence complete relief cannot be accorded among those already partied.

12.     Any action or lack of action by a Walmart employee found to be negligent was outside the course and scope of said employee's employment with Walmart.

13.     Walmart's alleged acts or failures to act were not the cause or proximate cause of Plaintiffs' alleged damages

14.     Walmart's alleged acts or failures to act were not the cause or proximate cause of Plaintiffs' alleged damages, but the Plaintiffs' alleged injuries were a result of superseding and/or intervening causes.

15.     Walmart's alleged acts or failures to act were not the cause or proximate cause of Plaintiffs' alleged damages, but the Plaintiffs' alleged injuries were a result of prior and/or subsequent conditions or occurrences for which Walmart is not responsible.

16.     Walmart's alleged acts or failures to act were not the cause or proximate cause of Jacob Mace's suicide.

17.     Assuming negligence or other wrongdoing on the part of Walmart, which Walmart expressly denies, Walmart did not bring about Jacob Mace's delirium or insanity as to make Walmart liable for Jacob Mace's delirium or insanity.

18.     Plaintiffs' claims are barred by the doctrines of estoppel, release, *res judicata*, laches, waiver, justification, fraud, and/or Plaintiffs'/Decedent's own actions, inactions, or omissions, such doctrines are pled as defenses to Plaintiffs' action.

19.     To the extent that Plaintiffs have received or do receive payments for the alleged injuries and damages, any such payments constitute satisfaction and must be set-off against any recoveries made in this litigation.

20.     Plaintiffs' recovery, if any, on any personal injury or wrongful death claim is limited pursuant to MD. CTS. & JUD. PROC. § 11-108 (2021).

21.     Plaintiffs failed to mitigate their damages, which would constitute fault, or alternatively, their damages are reduced.

22.     Plaintiffs have not suffered any damages for which they are entitled to relief.

23.     Walmart is entitled to any statutory and common law immunity applicable to Plaintiffs' claims under federal and state law.

24.     Walmart complied with all federal and state laws and regulations applicable to the sale of firearms and ammunition.

25.     Walmart complied with all federal and state laws and regulations applicable to employee privacy.

26.     Walmart is continuing its investigation and study of all facts and circumstances of the subject matter of the Complaint, and accordingly, reserves the right to amend, modify, revise or supplement its Answer, and to plead such further defenses and take such further actions as it may deem proper and necessary in its defense upon the completion of such investigation and study.

Respectfully submitted,

By: */s/ Kevin C. Schiferl*
        Kevin C. Schiferl, IN Atty #14138-49
        Stephanie V. McGowan, IN Atty #30759-49
        Adam S. Ira, IN Atty #32017-49
        FROST BROWN TODD LLC
        201 North Illinois Street, Suite 1900
        PO Box 44961
        Indianapolis, IN 46244-0961
        Telephone: (317) 237-3819
        Fax: (317) 237-3900
        kschiferl@fbtlaw.com
        smcgowan@fbtlaw.com
        aira@fbtlaw.com

Christopher R. Dunn, #8712010168
DeCARO, DORAN, SICILIANO,
GALLAGHER & DeBLASIS, LLP
17251 Melford Boulevard, Suite 200
Bowie, Maryland 20715
Telephone: (301) 352-4950
Fax: (301) 352-8691
cdunn@decarodoran.com
*Counsel for Defendants Walmart Inc. and*
*Wal-Mart Stores East, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September, 2021, a copy of the foregoing document was filed electronically with this Court's ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Kevin C. Schiferl*

FROST BROWN TODD LLC
201 North Illinois Street, Suite 1900
PO Box 44961
Indianapolis, IN  46244-0961
317-237-3800
Fax: 317-237-3900
kschiferl@fbtlaw.com
smcgowan@fbtlaw.com
aira@fbtlaw.com

LR08000.0745228   4844-3593-3945v1