# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KAYLA M. BRADY, *et al.*

    Plaintiffs,

    v.

WALMART INC. *et al.*,

    Defendants.

Civil Case No.: 8:21-cv-01412-CBD

## **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# **Table of Contents**

Table of Authorities..................................................................................i

Introduction....................................................................................p. 1

Standard of Review.............................................................................p. 2

Summary of the Facts..........................................................................p. 3

Argument.....................................................................................p. 4

    I.  This Case is Not Barred by PLCAA Because It Falls Outside the General
       Definition of a Prohibited "Qualified Civil Liability Action" Under 15
       U.S.C. § 7903(5)(A).......................................................................p. 4

          A.  This Case Does Not "Result[] From" the "Criminal or Unlawful
             Misuse" of the Shotgun By a Third Party Because It Was Not
             Directly Caused by Third-Party Criminal Misuse............................p. 4

          B.  This Case Does Not "Result[] From" the "Criminal or Unlawful
             Misuse" of the Gun By a Third Party Because It Was Not Solely
             Caused by Third-Party Criminal Misuse.....................................p. 5

          C.  Supreme Court Federalism Precedent Requires A Narrow
             Construction of "Resulting From" in § 7903(5)(A) as Including
             Both Direct and Sole Causation Requirements..............................p. 7

    II.  Even if The General Definition Were Met, All Claims Survive Under
       PLCAA Exceptions........................................................................p. 9

          A.  PLCAA's Predicate Exception in 15 U.S.C. § 7903(5)(A)(iii) is
             Satisfied, Thereby Permitting All Claims....................................p. 10

             1.  Md. Code Ann., Pub. Safety § 5-205(b)(6) is "Applicable
                 to the Sale or Marketing" of Firearms Within the Meaning
                 of 15 U.S.C. § 7903(5)(A)(iii)............................................p. 11

             2.  Walmart "Knowingly" Violated Md. Code. Ann., Pub.
                 Safety § 5-205(b)(6), Within the Meaning of 15 U.S.C.
                 § 7903(5)(A)(iii)........................................................p. 13

          B.  PLCAA's Negligent Entrustment/Negligence *Per Se* Exception is
             Satisfied, Thereby Permitting All Claims....................................p. 15

             1.  This Case is a Permitted "[A]ction. . . for "[N]egligent

[E]ntrustment.".................................................................p. 15

2. This Case is Permitted Under the Negligence Per Se Exception....p. 20

C. The Doctrine of Constitutional Avoidance Supports Plaintiffs'
Constructions of PLCAA...........................................................p. 20

III. All Claims Are Valid Under Maryland Law............................................p. 20

A. The Allegations in the Complaint Are Sufficient to Preclude
Judgment as to the Absence of Proximate Cause or Duty as a
Matter of Law.................................................................p. 21

1. Mace's Suicide Can (And Should) Reasonably Be Viewed a
Foreseeable Intervening Act Rather than a Superseding Cause
that Defeats a Finding of Proximate Cause...........................p. 21

2. Walmart Had a Duty to Avoid Affirmative Conduct
Exacerbating the Risk the Shotgun Would Be Misused
Independent of a Special Relationship.............................p. 24

3. Even If a Special Relationship Is Required For a Duty
to Prevent a Suicide, the Cmpl. Alleges Such a Special
Relationship and Such a Duty........................................p. 26

IV. If Read to Bar All of Plaintiffs' Claims Otherwise Permitted Under
Maryland Law, PLCAA is Unconstitutional...........................................p. 28

A. PLCAA Exceeds Congress's Commerce Clause Authority.................p. 28

B. PLCAA Violates the Tenth Amendment.....................................p. 30

C. PLCAA Violates Due Process.................................................p. 32

D. PLCAA Violates Equal Protection...........................................p. 33

Conclusion.................................................................................p. 34

# Table of Authorities

## Cases

*Absolon v. Dollahite*, 831 A.2d 6 (Md. 2003) ......................................................................... 20

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991) ................................ 6, 16

*Bailey v. United States*, 516 U.S. 137 (1995) ............................................................................... 5

*Bolling v. Sharpe*, 347 U.S. 497 (1954) ..................................................................................... 34

*Bond v. United States*, 134 S. Ct. 2077 (2014) ........................................................................ 7, 8

*Broadwater v. Dorsey*, 688 A.2d 436 (Md. 1997) ............................................................ 16, 17, 18

*Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401 (4th Cir. 2002) ...................... 2

*Chiapperini v. Gander Mountain Co., Inc.*, 13 N.Y.S.3d 777 (N.Y. Sup. Ct. 2014) ............ 10, 12, 18

*Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Oh. 2002) ............................................. 25

*Cipollone v. Liggett Group*, 505 U.S. 504 (1992) ....................................................................... 7

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) ................................................. 34

*City of Gary v. Smith & Wesson*, 801 N.E.2d 1222 (Ind. 2003) ........................................... 21, 33

*City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008) ................................... 13

*Clark v. Martinez*, 543 U.S. 371 (2005) ..................................................................................... 20

*Commonwealth v. Springfield Terminal Ry. Co.*, 951 N.E.2d 696 (Mass. App. Ct. 2011) ......... 14

*Conroy v. Aniskoff*, 507 U.S. 511 (1993) ..................................................................................... 5

*Coxie v. Academy, Ltd.*, No. 2018-CP-42-04297 (S.C. Ct. Cmmn. Pl. Jul. 29, 2019) .......... 10, 18

*Crown v. Raymond*, 764 P.2d 1146 (Az. Ct. App. 1988) ........................................................... 22

*Delana, v. CED Sales, Inc.*, 486 S.W.3d 316 (Mo. 2016) ..................................................... 18, 19

*Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59 (1978) ......................................... 32

*Eisel v. Board of Educ.*, 597 A.2d 447 (Md. 1990) ............................................................... 26, 27

*Englund v. World Pawn Exch.*, 2017 Ore. Cir. LEXIS 3 (Jun. 30, 2017) ............................ 10, 12

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) ..................................................................31, 32

*Estate of Kim v. Coxe*, 295 P.3d 380 (Ak. 2013) ..................................................................18

*Fox v. L&J Supply, LLC*, No. 2014-24619 (Pa. Ct. Cmmn. Pl. Nov. 26, 2018) ..........................10

*Gilmore v. State*, 2016 Md. App. LEXIS 575 (Md. Ct. Spec. App. Jun. 10, 2016) ..............11, 12

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ..................................................................7, 8

*Gustafson v. Springfield Arms*, 207 WDA 2019 (Pa. Super. Ct. Sep. 28, 2020)..................29, 32

*Hoffman v. United Iron & Metal Co.*, 671 A.2d 55 (Md. Ct. Spec. App. 1996).........................20

*Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003) ..................................................................25

*In re Academy*, 625 S.W.3d 19 (Tex. 2021)..................................................................19

*Kelley v. R.G. Industries, Inc.* 497 A.2d 1143 (Md. 1985) ............................................................6

*Kiriakos v. Phillips*, 139 A.3d 1006 (Md. 2016)..................................................19, 21, 24

*Lopez v. Badger Guns, Inc.*, No. 10-cv-18530 (Wis. Cir. Ct. Mar. 24, 2014) ..........................33

*Marbury v. Madison*, 5 U.S. 137 (1803) ..................................................................32

*Martinez v. Cal.*, 444 U.S. 277 (1980) ..................................................................9

*Maryland Trust Co. v. National Mechanics' Bank*, 63 A. 70 (Md. 1906)..............................13, 14

*Mays v. Sprinkle*, 992 F.3d 295 (4th Cir. 2021) ..................................................................2

*McBride v. General Motors Corp.*, 737 F. Supp. 1563 (M.D. Ga. 1990) ..................................34

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996)..................................................................7

*Minn. v. Clover Leaf Creamery Co.*, 449 U.S. 456 (1981) ..........................................................31

*Murphy v. NCAA*, 138 S. Ct. 1461 (2018)..................................................................29, 31

*National Cas. Co. v. Lockheed Martin Corp.*, 415 F. Supp. 2d 596 (D. Md 2006) .......................3

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ......................................................29

*New York v. United States*, 505 U.S. 144 (1992)..................................................29, 30

*Norberg v. Badger Guns, Inc.*, Case No. 10-cv-20655 (Wis. Cir. Ct. Jun. 9, 2011)....................10

*Pittway Corp. v. Collins*, 973 A.2d 771 (Md. 2009) .................................................................21

*Prescott v. Slide Fire Solutions, LP*, 410 F.Supp.3d 1123 (D. Nev. 2019).....................11, 12, 25

*Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74 (1980) .........................................................32

*Remington Arms Co., LLC v. Soto*, 140 S. Ct. 513 (2019)..........................................................8

*Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008) .......................................................................30

*Rodgers v. United States*, 185 U.S. 83 (1902)............................................................................5

*Ryan v. Hughes-Ortiz*, 959 N.E.2d 1000 (Mass. App. Ct. 2012) ................................................9

*Sindler v. Litman*, 887 A.2d 97 (Md. 2005) .............................................................................23

*Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422 (Ind. Ct. App. 2007).........................9, 10, 12, 13

*Smith v. Bryco Arms*, 33 P.3d 638 (N.M. Ct. App. 2001) .........................................................25

*Sogo v. Garcia's Nat'l Gun, Inc.*, 615 So. 2d 184 (Fl. Dist. Ct. App. 1993) .............................22

*Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262 (Conn. 2019)............................7, 9, 12

*Splawnik v. Di Caprio*, 146 A.D.2d 333 (N.Y. App. Div. 1989) ..........................................22, 23

*Tibbs v. Williams*, 263 F. Supp. 2d 39 (D.D.C. 2003)...............................................................32

*Truax v. Corrigan*, 257 U.S. 312 (1921)..................................................................................32

*United States v. Bank of New England*, N.A., 821 F.2d 844 (1st Cir. 1987) .......................14, 15

*Valentine v. On Target, Inc.*, 727 A.2d 947 (1999)........................................................17, 21, 28

*Williams v. Beemiller, Inc.*, 100 A.D.3d 143 (N.Y. App. Div. 2012) ........................................10

*Young v. Swiney*, 23 F. Supp. 3d 596 (D. Md. 2014) ................................................................23

## Statutes

Md. Ann. Code art. 27 § 36- I(h) ................................................................................................6

Md. Code Ann., Crim. Law § 3-101.1(a) ....................................................................................5

Md. Code Ann., Pub. 5-207(c)(6), (c)(14), (d) (eff. Oct. 2020)................................................19

Md. Code Ann., Pub. Safety § 5-205(b)(6)..........................................................................passim

## Other Authorities

151 Cong. Rec. S9061 (Jul. 27, 2005) ...................................................................................6

Antonin Scalia & Bryan A. Gardner, *Reading The Law: The Interpretation Of Legal Texts* (2012) ("*Reading the Law*") ...................................................................................................................5

*Matter of Application of Cesar Adrian Vargas for Admission to the Bar of the State of New York*, 131 A.D.3d 4 (N.Y. App. Div. 2015)............................................................................................31

Patricia Foster, *Good Guns (and Good Business Practices) Provide All the Protection They Need: Why Legislation to Immunize the Gun Industry from Civil Liability is Unconstitutional*, 72 U. Cin. L. Rev. 1739, 1750-56 (Summer 2004) ..................................................................................................33

Restatement (Second) of Torts, § 390 ............................................................................18, 19

S. 1805, 108th Cong. (2003) ......................................................................................................6

S. 397, 109th Cong. (2005) .......................................................................................................6

September 11th Victim Compensation Fund of 2001 (Pub. L. 107-42, Title IV)........................33

## Federal Statutes

15 U.S.C. § 7901 .............................................................................................1, 5, 6, 9, 30

15 U.S.C. § 7903 ...................................................................................................passim

18 U.S.C. § 2(a).........................................................................................................12

18 U.S.C. § 922(g) .....................................................................................................12

42 U.S.C. §§ 300aa-1 ..................................................................................................33

## Introduction

Jacob Mace was an employee of the Walmart store in Leonardtown, Maryland. Mace was suffering through a mental health crisis at all times relevant to this case. Complaint ("Cmpl.") at 10-15 ¶¶ 53-108. He had disclosed to Walmart co-workers his mental health issues, at least one past suicide attempt and current suicidal ideation. *Id.* at 10-15 ¶¶ 53-108. In addition, on November 15, 2019, Mace was clearly intoxicated when he sought to buy a firearm from the Leonardtown store. *Id.* at 1 ¶ 1, 10-15 ¶¶ 53-108. Defendants Walmart Inc. and Walmart Stores, LP (collectively "Walmart") knew the significant dangers created by selling a firearm to someone at risk of suicide and who was intoxicated. *See id.* at 7-8 ¶¶ 36-40. Walmart sold Mace a shotgun nonetheless. *Id.* at 10-15 ¶¶ 53-108. By selling a lethal firearm to Mace, Walmart knowingly violated one or more state and/or federal firearms laws and its duty of reasonable care to not negligently entrust a dangerous instrument to a party showing a propensity to misuse it. *Id.* Not surprisingly, Mace shot and killed himself with the shotgun within hours of the sale. *Id.*

In its Motion for Judgment on the Pleadings (the "Motion"), Walmart contends that this Court may not subject it to liability – regardless of whether the alleged facts are true and regardless of what discovery may reveal. Walmart claims that Congress, in the Protection of Lawful Commerce in Arms Act ("PLCAA," 15 U.S.C. §§ 7901-7903), commanded this Court to dismiss the case even if it is supported by Maryland law. Walmart also alleges that Maryland law does not support Plaintiffs' claims. Walmart is wrong on both fronts.

This case is not prohibited by PLCAA. First, this case does not fall within the general definition of a barred "qualified civil liability action" in § 7903(5)(A) because this case does not "result[] from" a third-party "criminal or unlawful misuse" of a firearm. Suicide is not a crime in

1

Maryland and, in any event, both Walmart's misconduct directly contributed to Mace's death. Supreme Court federalism precedent, relevant canons of statutory construction and PLCAA's text and legislative history further support reading PLCAA's restrictions on state law narrowly.

Second, even if this case fell within the scope of PLCAA's general definition, Plaintiffs' allegations trigger several PLCAA exceptions – specifically, the "predicate exception" for a case involving a knowing violation of a relevant statute and the negligent entrustment/negligence *per se* exception. § 7903(5)(A)(ii-iii). For these additional reasons, PLCAA does not shield Walmart from liability.

Additionally, Plaintiffs claims are valid under Maryland law. The allegations in the Cmpl. preclude a ruling, as a matter of law, that Plaintiffs' negligence-based claims fail due to the absence of proximate cause and a relevant duty.

If this Court finds that PLCAA commands dismissal of Plaintiffs' valid claims, PLCAA is unconstitutional because it exceeds Congress's Commerce Clause authority, impermissibly infringes on the sovereignty reserved to Maryland by the Tenth Amendment and violates the due process and equal protection components of the Fifth Amendment.

## **Standard of Review**

A motion for judgment on the pleadings pursuant to Rule 12(c) is subject to the same standards as a Rule 12(b)(6) motion to dismiss. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.,* 278 F.3d 401, 405–06 (4th Cir. 2002). This Court "must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle,* 992 F.3d 295, 299 (4th Cir. 2021). "[A]n action may be dismissed . . . only if the complaint lacks a cognizable legal theory or if it alleges insufficient facts to support a cognizable legal theory."

*National Cas. Co. v. Lockheed Martin Corp.*, 415 F. Supp. 2d 596, 601 (D. Md 2006) (emphasis omitted).

## Summary of the Facts

When it became a federally licensed firearms dealer, Walmart accepted a duty to follow all relevant federal and state firearms statutes and a duty to not entrust firearms to an individual showing a propensity to misuse it to harm himself or others. *Id*. at 6-10 ¶¶ 26-52. Walmart recognized this duty when it developed a "blacklisting" policy whereby individuals showing a risk of misusing a firearm to harm themselves or others could be reported to management and barred from obtaining firearms, even if they were not legally disqualified. *Id*. at 9-10 ¶¶ 51-52, 11 ¶ 72. Walmart's duties require it to carefully train and supervise its employees to make sure they follow all relevant laws and safety protocols, and Walmart knew that failure to do so would foreseeably result in Walmart firearms being used in suicides. *See id*. at 7-8 ¶¶ 35-40. One such law is Md. Code Ann., Pub. Safety § 5-205(b)(6) – which prohibits the possession of a shotgun by an individual "suffer[ing] from a mental disorder as defined in § 10-101(i)(2) of the Health - General Article and [who] has a history of violent behavior against [himself] or another." § 5-205(b)(6). Cmpl. at 6-7 ¶¶ 29-32.[1]

Walmart knowingly violated statutory law and its common law duties. Mace told multiple Walmart coworkers he had a history of struggling with depression and suicidal ideation. *Id*. at 10 ¶ 59. On October 31, 2019, Mace began to experience an acute mental health crisis which led to him missing work due to visits to the hospital. *Id*. at 10-11 ¶¶ 60-65. He told his supervisor that a mental health crisis occasioned these absences. *See id*. at 10 ¶ 56; *id*. at 10-11

---

[1] There appears to be an error in the numbering of the paragraphs in the Cmpl. such that what should be ¶ 32 is actually ¶ 29 for a second time. With the exception of this cite replacing this second ¶ 29 with ¶ 32, all cites are to the paragraph numbers as they appear in the Cmpl.

¶¶ 60-65. Mace's Walmart supervisor, at one point either before or during this time period, instructed Mace to call a suicide prevention hotline while he was at work. *Id.* at 11 ¶¶ 66. On November 9, 2019, Mace texted a Walmart coworker regarding a recent suicide attempt, as well as a plan to kill himself after "[b]uy[ing] a gun." *Id.* at 11 ¶¶ 67-69. The Walmart coworker shared this text with Mace's Walmart supervisor and asked for Mace to be placed on Walmart's no-firearm-sale blacklist. *Id.* at 11-12 ¶¶ 67-74. Despite the supervisor representing that he would address the issue, Mace was never placed on the blacklist. *Id.* at 12 ¶¶ 75-77.

Walmart knew that Mace was "suffer[ing] from a mental disorder as defined in § 10-101(i)(2) of the Health - General Article and ha[d] a history of violent behavior against [himself] or another" (Md. Code. Ann., Pub. Safety § 5-205(b)(6); Cmpl. at 10-12 ¶¶ 53-80), but nevertheless knowingly chose to aid and abet Mace's unlawful possession of a firearm by completing the transfer of the shotgun to Mace on November 15, 2019. *Id.* at 12-16 ¶¶ 81-110. Walmart also negligently transferred the shotgun to Mace despite knowing that he would likely harm himself and that he was intoxicated at the time of the sale. *Id.* at 1 ¶ 1, 12-16 ¶¶ 81-110. As a direct and foreseeable consequence of Walmart's unlawful and negligent sale of the shotgun, Mace committed suicide with the gun on November 15, 2019. *Id.* at 15-16 ¶¶ 102-110.

## **Argument**

I.  <u>This Case is Not Barred by PLCAA Because It Falls Outside the General Definition of a Prohibited "Qualified Civil Liability Action" Under 15 U.S.C. § 7903(5)(A).</u>

PLCAA only prohibits "qualified civil liability actions" that meet both the general definition in 15 U.S.C. § 7903(5)(A) and do not fall under any exception in §7903(5)(A)(i) – (vi). Plaintiffs' case does not meet the general definition and falls within multiple exceptions.

A.  This Case Does Not "Result[] From" the "Criminal or Unlawful Misuse" of the Shotgun By a Third Party Because It Was Not Directly Caused by Third-Party Criminal Misuse.

In order to fall within § 7903(5)(A), Plaintiffs' harm must have "result[ed] from" a "criminal or unlawful misuse" of a firearm by a third party. Plaintiffs' injury resulted, most directly, from Mace's use of the shotgun to commit suicide. A gun suicide is neither a "criminal [n]or unlawful misuse" of a firearm. § 7903(5)(A). In fact, Maryland has decriminalized even attempted suicide. Md. Code Ann., Crim. Law § 3-101.1(a). For this reason alone, this action is not a "qualified civil liability action."

The only "criminal or unlawful" third-party action that arguably contributed to Mace's suicide was his possession of the shotgun in violation of Md. Code Ann., Pub. Safety § 5-205(b)(6) – a crime to which Walmart acted as an accomplice. Mace's unlawful possession of the shotgun, however, does not satisfy PLCAA's requirement that a prohibited case must "result[] from" a "criminal or unlawful *misuse*" of a firearm. 15 U.S.C. § 7903(5)(A) (emphasis added). As the Supreme Court has recognized in interpreting another federal statute, "'use' must connote more than mere possession of a firearm." *Bailey v. United States*, 516 U.S. 137, 143-50 (1995) ("use" requires a "show[ing] of active employment").

**B. This Case Does Not "Result[] From" the "Criminal or Unlawful Misuse" of the Gun By a Third Party Because It Was Not Solely Caused by Third-Party Criminal Misuse.**

"The primary rule of statutory construction" is "to give effect to the intention of the legislature." *Rodgers v. United States,* 185 U.S. 83, 86 (1902). PLCAA also must "be read as a whole." *Conroy v. Aniskoff,* 507 U.S. 511, 515 (1993) (internal quotation omitted); Antonin Scalia & Bryan A. Gardner, *Reading The Law: The Interpretation Of Legal Texts* (2012) ("*Reading the Law*") at 167-170 (same). These principles require reading "resulting from" in § 7903(5)(A) consistently with the language in PLCAA's Purposes and Findings section, which indicate Congress's intent to only "prohibit causes of action … for the harm *solely caused* by the criminal or unlawful misuse of firearm products" by third-parties. 15 U.S.C. § 7901(b)(1)

(emphasis added); *see also* § 7901(a)(6) (also including "solely caused"). Thus, a "qualified civil liability action" is one where a third-party misuse of a firearm is the "sole cause" of a plaintiff's harm, and negligent or unlawful conduct by a gun industry actor was not a contributing factor. Here, Walmart's unlawful sale and negligent entrustment of the shotgun were significant contributing factors of Mace's suicide.

PLCAA was only intended to prohibit causes of action like that in *Kelley v. R.G. Industries, Inc.* 497 A.2d 1143 (Md. 1985) *superseded by statute*, Md. Ann. Code art. 27 § 36-I(h) – which allowed for strict liability for manufacturing and selling certain guns favored by criminals even *without a showing of negligent or unlawful misconduct* by a gun industry actor. This interpretation is reinforced by Congress's announced concern in PLCAA regarding "theories without foundation in hundreds of years of the common law." 15 U.S.C. § 7901(a)(7). Negligence actions involving multiple causes of harm (like this case) are not such novel cases.

This construction is also consistent with PLCAA's legislative history. "Solely" was added to PLCAA's first Purpose as one of the few changes made to an earlier version of PLCAA that failed to pass. *Compare* S. 1805, 108th Cong. (2003) (attached as **Ex. 1**) *with* S. 397, 109th Cong. (2005) (attached as **Ex. 2**). No statutory word should be read as "superfluous" (*see Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991); *Reading the Law* at 174-80 (same)) and especially not one that appears to have been critical to PLCAA's passage. Consistent with Plaintiffs' position, PLCAA's chief sponsor, Senator Larry Craig, emphasized that PLCAA does not shield negligent or unlawful conduct by a gun industry actor that plays a role in causing the ultimate harm. *See* 151 Cong. Rec. S9061 (Jul. 27, 2005) (emphasis added) (attached as **Ex. 3**) (PLCAA "is not a gun industry immunity bill because it does not protect firearms [industry actors] from . . . lawsuits based on their own negligence or criminal

conduct."). Walmart, in advancing its sweeping interpretation of PLCAA, *totally ignores*

PLCAA's Purposes and Findings, PLCAA's legislative history and relevant canons of statutory

construction in order to rob PLCAA's "solely caused" language of any effect.

C. Supreme Court Federalism Precedent Requires A Narrow Construction of "Resulting
From" in § 7903(5)(A) as Including Both Direct and Sole Causation Requirements.

The Supreme Court has made clear that any ambiguity as to the scope of a federal statute

like PLCAA should be resolved by minimizing the statute's intrusion on state sovereignty – here,

by allowing Maryland courts to apply and enforce Maryland common law. *See Gregory v.*

*Ashcroft*, 501 U.S. 452 (1991); *Bond v. United States,* 134 S. Ct. 2077 (2014); *Cipollone v.*

*Liggett Group*, 505 U.S. 504 (1992). This Court must "not [be] looking for a plain statement

that [common law claims like Plaintiffs'] are excluded" from PLCAA's definition of a "qualified

civil liability action" but instead should "not read [PLCAA] to [bar common law claims like

Plaintiffs' under this definition] unless Congress has made it clear that [they] are included."

*Gregory,* 501 U.S. at 467 (emphasis in original). Even when a statute's "express language"

mandates some preemption, the "presumption [against preemption] reinforces the

appropriateness of a narrow reading" of the "scope" of the preemption. *See Cipollone*, 505 U.S.

at 516-18; *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485-87 (1996) (emphasis omitted).

These rules mandate a narrow reading of PLCAA's bar of state tort actions. The

Supreme Court of Connecticut cited *Bond* and *Cipollone* in support of its finding that "in the

absence of a clear statement in the statutory text or legislative history [of PLCAA] that Congress

intended to supersede the states' traditional authority . . . we are compelled to resolve any textual

ambiguities in favor of the plaintiffs" and broadly interpreted PLCAA's predicate exception to

allow a claim. *Soto v. Bushmaster Firearms Int'l, LLC,* 202 A.3d 262, 312-13, 313 n. 58 (Conn.

2019) *cert denied sub nom. Remington Arms Co., LLC v. Soto*, 140 S. Ct. 513 (2019). A similar result is compelled here.

PLCAA fails to make the required, unambiguous statement of intent to include claims like the Plaintiffs within the general definition of a "qualified civil liability action." PLCAA states that a prohibited case must "result[] from" a third-party "criminal or unlawful misuse" of a firearm without clarifying the ambiguous term "resulting from." 15 U.S.C. § 7903(5)(A). One plausible reading of "resulting from" is "directly and solely caused by." This construction is not only plausible but the most reasonable reading of PLCAA. Because this narrow, reasonable reading minimizes the extent to which PLCAA infringes on state sovereignty, it must prevail.

The federalism protective lens required under *Bond*, *Gregory* and *Cipollone* may require courts to adopt even strained constructions of statutory language to minimize the reach of a federal law. In *Gregory*, the Court held that a federal law broadly barring age discrimination did not prohibit a state age limit on judges by finding that judges fell within an exception for "appointee[s] at the policymaking level." 501 U.S. at 466-67 (internal quotation omitted). The Court conceded that was "an odd way for Congress to exclude judges" (*id.* at 467), but felt this reading was required because it could not be "absolutely certain" that Congress had intended to infringe on Missouri's sovereign right to regulate its judiciary. *See id.* at 464.

In *Bond*, the Court found that a federal statute that criminalized use of chemical weapons did not apply to a local crime that clearly violated the law's plain language. 134 S. Ct. at 2094 (Scalia, J., concurring). The Court nonetheless found that "ambiguity derives from the improbably broad reach of the key statutory definition." *See id.* at 2090. The Court refused to read the law's broad language to cover the offense absent a "clear indication" that Congress

intended to "alter sensitive federal-state relationships" and "intrude[] on the police power of the States." *See id.* at 2090-91 (internal quotation omitted).

PLCAA's "solely caused" language in § 7901(a)(6), (b)(1) and its legislative history provide a far stronger foundation for a limiting construction of "resulting from" than the readings the Court adopted in *Bond* and *Gregory*. *Soto* emphasized PLCAA's "'solely caused'" language in support of its narrowing interpretation of PLCAA so as to permit at least one claim. *See* 202 A.3d at 309 (quoting 15 U.S.C. § 7901(a)(6), (b)(1) (emphasis omitted); *cf. Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422, 433 (Ind. Ct. App. 2007) (where there are allegations that a gun industry actor aided and abetted unlawful downstream conduct "we cannot say that the harm 'is solely caused by others.'") (quoting 15 U.S.C. § 7901(a)(6)). A narrowing construction of PLCAA to protect state sovereignty is particularly appropriate here because "[t]he State's interest in fashioning its own rules of tort law is [generally] paramount to any discernible federal interest." *Martinez v. Cal.*, 444 U.S. 277, 282 (1980).

Plaintiffs are aware of only one case which has directly addressed whether PLCAA's definition of a "qualified civil liability action" applies to cases involving the unlawful possession of a gun – *Ryan v. Hughes-Ortiz,* 959 N.E.2d 1000 (Mass. App. Ct. 2012). *Ryan* found that a products liability case against Glock *was* a prohibited "qualified civil liability action" where a felon unlawfully possessed a gun and unintentionally shot himself because the unlawful "possession of the . . . pistol . . . constituted 'criminal or unlawful misuse.'" *Id.* at 1008. *Ryan*, however, in addition to being non-controlling, is fatally flawed as it did not follow or even address the above Supreme Court federalism precedent. Further, it assumed that "misuse" could include possession without considering the plain meaning of "use" as discussed in *Bailey*.

II.   Even if The General Definition Were Met, All Claims Survive Under PLCAA Exceptions.

A. PLCAA's Predicate Exception in 15 U.S.C. § 7903(5)(A)(iii) is Satisfied, Thereby Permitting All Claims.

Under PLCAA's predicate exception, if a gun industry defendant "knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm" then this case is not a "qualified civil liability action" and the entire "action" survives. § 7903(5)(A)(iii). An overwhelming consensus of courts across the country have recognized that this broad language allows all individual claims within a case where the predicate exception is satisfied – including negligence and public nuisance claims. *See, e.g., Englund v. World Pawn Exch.*, 2017 Ore. Cir. LEXIS 3, *11-12 (Jun. 30, 2017) ("the predicate exception's broad language provides that an entire 'action' survives – including all alleged claims") (denying motion to dismiss claims including negligence and public nuisance) (**Ex. 4**); *Fox v. L&J Supply, LLC*, No. 2014-24619, 1 n.1 (Pa. Ct. Cmmn. Pl. Nov. 26, 2018) ("This Court concludes that the 'predicate exception'… applies… thereby removing the entire action out from under [PLCAA] . . .") (denying summary judgment on claims including negligence and public nuisance) (**Ex. 5**); *Coxie v. Academy, Ltd.*, No. 2018-CP-42-04297 (S.C. Ct. Cmmn. Pl. Jul. 29, 2019) (denying motion to dismiss claims including negligence where predicate exception was satisfied) (**Ex. 6**); *Chiapperini v. Gander Mountain Co., Inc.*, 13 N.Y.S.3d 777 (N.Y. Sup. Ct. 2014) (denying motion to dismiss including on negligence and public nuisance claims where predicate exception and negligent entrustment exception were satisfied); *City of Gary*, 875 N.E.2d 422 (affirming refusal to dismiss nuisance claim where predicate exception was satisfied); *Norberg v. Badger Guns, Inc.*, Case No. 10-cv-20655 (Wis. Cir. Ct. Jun. 9, 2011) (denying motion to dismiss including as to negligence claim where predicate exception was satisfied) (**Ex. 7**); *Williams v. Beemiller, Inc.*, 100 A.D.3d 143 (N.Y. App. Div. 2012) *amended by* 103 A.D.3d 1191 (N.Y. App. Div. 2013) (reversing dismissal of

claims including negligence and public nuisance where predicate exception was satisfied). In fact, one of the cases Walmart incorrectly cites as supporting the proposition that PLCAA categorically bars common law negligence and nuisance claims – *Prescott v. Slide Fire Solutions, LP*, 410 F.Supp.3d 1123 (D. Nev. 2019) (cited in MTD at 6-7) –joined the above judicial consensus by *allowing* a negligence claim to proceed past a motion to dismiss where the predicate exception was satisfied. All of Walmart's other cited cases dealt with a situation where the predicate exception *was not satisfied*; none addressed what claims survive where the predicate exception *is* satisfied.

The allegations in the Cmpl. establish that the predicate exception is satisfied because Walmart knowingly violated one or more statutes applicable to the sale or marketing of firearms, including, but not limited to, Md. Code Ann., Pub. Safety § 5-205(b)(6), either directly or as an accomplice. Cmpl. at 10-15 ¶¶ 53-108. Walmart argues that Md. Code Ann., Pub. Safety § 5-205(b)(6) does not satisfy 15 U.S.C. § 7903(5)(A)(iii) because it does not specifically mention the "sale or marketing of" of a firearm and unless the specific employees who sold the shotgun "kn[e]w" of Mace's disqualifying mental health issues and history of self-harm. *See* MTD at 9-12. Walmart is wrong on both points.

1. Md. Code Ann., Pub. Safety § 5-205(b)(6) is "Applicable to the Sale or Marketing" of Firearms Within the Meaning of 15 U.S.C. § 7903(5)(A)(iii).

The Complaint alleges that Walmart knowingly violated, at minimum, Md. Code Ann., Pub. Safety § 5-205(b)(6) by selling a shotgun to Mace, a prohibited person, thereby acting as an accomplice to the illegal possession of a shotgun. *Id*. at 6 ¶ 31, 10-15 ¶¶ 53-108. Walmart's argument that Md. Code Ann., Pub. Safety § 5-205(b)(6) is not a predicate statute overlooks the fact that under Maryland law, like federal law, an "aider and abettor" is an accomplice "is criminally responsible for a crime committed by [the principal]." *See Gilmore v. State*, 2016 Md.

App. LEXIS 575, \*9 (Md. Ct. Spec. App. Jun. 10, 2016) (internal quotation omitted) (**Ex. 8**). 18 U.S.C. § 2(a).   By virtue of accomplice liability, Md. Code. Ann., Pub. Safety § 5-205(b)(6) necessarily "appl[ies] to" and penalizes the seller of a firearm where, as here, the seller knows that the purchaser falls within the disqualified class.  Every court to have considered allegations that a gun seller aided and abetted the possession of a firearm by a prohibited person under federal law has accepted, without comment, that this prohibition can count as a predicate statute. *See, e.g., Chiapperini*, 13 N.Y.S.3d at 784-87 (acknowledging 18 U.S.C. § 922(g) among list of predicate statutes); *Englund*, 2017 Ore. Cir. LEXIS 3 at \*14 (same).

While Walmart suggests that Congress meant the predicate exception to only apply to laws specifically referring to the "sale or marketing of" firearms, Congress rejected such limiting language, and chose the expansive phrase "applicable to" in the predicate exception.  The majority of courts – including one of Walmart's own authorities (*Prescott*) – have found that statutes need not expressly reference firearms and/or the sale or marketing of firearms to count as predicate statutes.  *See City of Gary*, 875 N.E.2d at 429, 432 (Indiana's public nuisance statute was a predicate statute even though it did not specifically reference *either* firearms or sales and marketing activities); *Prescott*, 410 F.Supp.3d at 1137-40 (state unfair trade practices law which did not specifically reference firearms but did reference sales could serve as the basis for a predicate violation); *Soto,* 202 A.3d at 302 (similar).

The Supreme Court of Connecticut in *Soto* specifically observed that "[i]f Congress had intended to limit the scope of the predicate exception to violations of statutes that are *directly, expressly,* or *exclusively* applicable to firearms . . . it easily could have used such language." *Id.* (emphasis in original).  Although *Soto* and *Prescott* dealt with the failure of a statute to explicitly reference firearms as opposed to a failure to explicitly reference sales or marketing activities (as

with Md. Code. Ann., Pub. Safety § 5-205(b)(6)), the point remains: a statute need not expressly reference every aspect of the "applicable to the sale or marketing of" firearms language in 15 U.S.C. § 7903(5)(A)(iii) to count as a predicate statute.

Walmart cites just one case in supposed support of its position – *City of New York v. Beretta U.S.A. Corp.,* 524 F.3d 384 (2d Cir. 2008) (MTD at 11-12). *New York* is inapposite because Md. Code. Ann., Pub. Safety § 5-205(b)(6), unlike the criminal nuisance statute found not to be a predicate violation in *City of New York, explicitly addresses firearms. Compare* 524 F.3d at 399-404 *with* Md. Code. Ann., Pub. Safety § 5-205(b)(6). Although an explicit reference to firearms is not required for a statute to be a predicate statute, this makes it untenable to argue that § 5-205(b)(6) does not apply to the firearms industry.

Further, *City of New York* is non-controlling and erroneous. *City of Gary,* which held that a general nuisance statute qualifies under 15 U.S.C. § 7903(5)(A)(iii), properly rejected *New York*'s incorrect reasoning because it incorrectly viewed "applicable to" as ambiguous and did not apply its unambiguous, plain meaning – "capable of being applied." *Compare City of New York*, 524 F.3d at 399-404 *with City of Gary*, 875 N.E.2d at 432. Further, even if "applicable to" were ambiguous, *City of New* York failed to apply the requisite federalism principles discussed in *Bond*, *Gregory* and *Cipollone* in resolving this ambiguity.

> 2. Walmart "Knowingly" Violated, at Minimum, Md. Code. Ann., Pub. Safety § 5-205(b)(6), Within the Meaning of 15 U.S.C. § 7903(5)(A)(iii).

While Walmart suggests it lacked sufficient knowledge to violate Maryland law, that is clearly incorrect. It is well settled that "notice communicated to, or knowledge acquired by, the officers or agents of corporations when acting in their official capacity or within the scope of their agency, becomes notice to or knowledge of the corporation." *Maryland Trust Co. v. National Mechanics' Bank,* 63 A. 70, 78 (Md. 1906) (internal quotation omitted). Maryland law

thus requires that knowledge of Mace's mental health issues and history of suicidal actions or ideation obtained by various Walmart employees acting within the scope of their employment prior to the sale of the shotgun (Cmpl. at 10-15 ¶¶ 53-108) must "be imputed to Walmart." Motion at 9-10. Walmart, as an organization, thus had actual or constructive knowledge that Mace was a prohibited possessor under Md. Code. Ann., Pub. Safety § 5-205(b)(6) at the time of the sale of the shotgun. Further, "corporations from their nature can never act except through the instrumentality of agents." *Maryland Trust Co.,* 63 A. at 78. Walmart, *as an organization,* acted to complete the sale of the shotgun to Mace via its agents despite the fact that Walmart *as an organization* had actual or constructive knowledge that Mace was disqualified. As such, Walmart was a knowing accomplice who aided and abetted Mace's unlawful possession.

Walmart cites *no authority* in support of its position that the individual corporate agents most directly involved in an act of misconduct must personally be in possession of all of the pieces of knowledge that renders the action unlawful or negligent. *See* Motion at 9-10, 12. This is because it is not the law. Although no Maryland court appears to have addressed the issue, multiple courts have agreed that an assessment of whether a corporation has sufficient knowledge to be liable for a violation of law requires aggregating the information available to *all* of the corporation's employees or agents. *See, e.g., United States v. Bank of New England,* N.A., 821 F.2d 844, 854-57 (1ˢᵗ Cir. 1987) (upholding instruction stating that the "bank's knowledge is the totality of what all of the employees know within the scope of their employment") (quotation omitted); *Commonwealth v. Springfield Terminal Ry. Co.,* 951 N.E.2d 696, 704-07 (Mass. App. Ct. 2011) (similar). *Bank of New England* observed that "a corporation cannot plead innocence by asserting that the information obtained by several employees was not acquired by any one individual . . . *Rather the corporation is considered to have acquired the collective knowledge of*

*its employees and is held responsible for their failure to act accordingly.*" 821 F.2d at 856 (internal quotation omitted, emphasis added).

At this stage there has not been discovery to determine the specific knowledge of individual Walmart employees. There is no basis to dismiss this case before discovery even if Mace's coworkers and supervisor, and the individuals who sold Mace the shotgun, may each have only been in possession of some of the information needed to establish Walmart's culpable *mens rea* as an accomplice to Mace's violation of Md. Code. Ann., Pub. Safety § 5-205(b)(6) – that is, that Mace had a serious mental illness and a history of self-harm and was seeking to possess the shotgun. Walmart, as a corporate entity, is viewed as having the combination of both pieces of knowledge regardless of whether any one employee was or was not actually informed of both.

A contrary rule that a corporation can escape liability by compartmentalizing specific aspects of knowledge in different departments or groups of employees would incentivize corporations to engage in unlawful or reckless conduct while using the compartmentalization of knowledge as a liability shield. In any event, to the extent there is any ambiguity regarding the meaning of "knowing," *Bond*, *Gregory* and *Cipollone* compel adoption of Plaintiffs' reasonable interpretation.

### B. PLCAA's Negligent Entrustment/Negligence *Per Se* Exception is Satisfied, Thereby Permitting All Claims.

Dismissal under PLCAA is also not warranted because this case falls within both aspects of PLCAA's negligent entrustment/negligence per se exception. 15 U.S.C. § 7903(5)(A)(ii) exempts from the definition of a "qualified civil liability action" "an action brought against a seller for negligent entrustment or negligence per se"

### 1. This Case is a Permitted "[A]ction . . . for "[N]egligent [E]ntrustment."

This entire "action" – including all individual claims – survives because the allegations in the Cmpl. satisfy PLCAA's definition of negligent entrustment in 15 U.S.C. § 7903(5)(A)(ii). Cmpl. at 1 ¶ 1, 10-15 ¶¶ 53-108. PLCAA defines "negligent entrustment" as the "supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others." § 7903(5)(B). The allegations in this Cmpl. satisfy this definition, and thus, trigger the negligent entrustment exception in § 7903(5)(A)(ii). Cmpl. At 1 ¶ 1, 10-15 ¶¶ 53-108.

Walmart notes that some courts have found that PLCAA's negligent entrustment exception is only satisfied if state law independently permits a claim sounding in negligent entrustment (*e.g., In re Acad., Ltd.,* 2021 Tex. LEXIS 623, *23 n. 14 (Jun . 25, 2021) (cited in Motion at 7-8) (**Ex. 9**). These decisions are unsupported by the text of PLCAA and incorrectly render PLCAA's definition of negligent entrustment in 15 U.S.C. § 7903(5)(B) meaningless. Statutes are to be construed so as to avoid rendering any words "superfluous." *See Astoria,* 501 U.S. at 112; *Reading the Law* at 174-18. PLCAA is clear: it commands dismissal of "qualified civil liability actions," and states that cases that come within Congress's definition of negligent entrustment actions in 15 U.S.C. § 7903(5)(B) are not such prohibited actions. Nothing in PLCAA indicates that a state must also recognize a cause of action for negligent entrustment to avoid dismissal.

Even so, Maryland *does* recognize a negligent entrustment claim on these facts. Walmart disagrees and cites *Broadwater v. Dorsey,* 688 A.2d 436 (Md. 1997) and several other cases to suggest that Maryland law precludes liability unless the entrustor still had some ability to control the dangerous instrument at the time the entrustee foreseeably misused it. Motion at 8-9.

Although *Broadwater* did find such a requirement (*id*. at 441), all of Walmart's cited cases are limited to the automobile context and both of its Court of Appeals cases predate a more recent case from the Court of Appeals which implicitly rejects this requirement in the firearms context. Furthermore, Walmart ignores that Maryland has now enacted a law that specifically criminalizes the sale of a shotgun to an individual with known mental health issues and a history of self-harm or who is "visibly intoxicated" – a reality that demonstrates why public policy supports allowing a negligent entrustment claim on these facts.

First, *Valentine v. On Target, Inc.,* 727 A.2d 947 (1999) found no liability for failing to take precautions to prevent the theft of a gun, but kept the door open to negligent entrustment liability for the sale of a firearm. The Court noted that "the holding in this case does not mean that a gun store owner may never be held liable to another party for negligence in the display and sale of guns when that other party is injured as a result of the negligence." *Id*. at 953. This recognition that the "sale of guns" can support liability *without any limitation to "sales" where the seller continues to have some form over control over the firearm* is significant because it diverges with *Broadwater* – which limited the types of transfers of an automobile which could support negligent entrustment liability to situations where the entrustor retains some "legal control." *See* 688 A.2d at 443 n. 2.

This difference is not accidental. *Broadwater*, to the extent it remains the law, embodies a specialized rule applicable only to automobiles. There is good reason to treat firearms and cars differently. The primary purpose of a car is to transport people. The primary purpose of a firearm is to injure or kill human beings. *Valentine* recognized this reality, underscoring that "the inherent nature of guns suggests that their use may likely result in serious personal injury or death." 727 A.2d at 953. Events like a car crash are not a "likely result" of a car being used as

designed and intended; events like Mace's suicide involve a firearm operating exactly as designed and intended. *See id.* Given the greater foreseeability of harm correlated with the more dangerous nature of the product entrusted, it makes sense not to require a showing that a firearms seller retained any control over the firearm at the time of its misuse.

*Valentine* is consistent the Restatement (Second) of Torts, § 390 – which *Broadwater* acknowledges as reflective of Maryland law. *See* 688 A.2d at 439. The first comment emphasizes that the doctrine of negligent entrustment "applies to sellers, lessors, donors or lenders, and to all kinds of bailors" *without any requirement of continuing control.* Restat. 2d. of Torts, § 390 (Cmt. a.). The Restatement then provides the following example: "A gives a loaded gun to B, a feeble-minded girl of ten, to be carried by her to C. While B is carrying the gun she tampers with the trigger and discharges it, harming C. A is subject to liability to C." *Id.* (Ilus. 1.). Although the above scenario does not deal with a sale, A clearly has no ability to in any way control the gun while it is in the hands of B. Liability nevertheless attaches because of he had control over the gun when he decided to place the gun in B's hands.

Recognizing that the negligent entrustment of a firearm can occur via an unlawful sale regardless of whether the seller retains any continuing control over a firearm would bring this Court into alignment with nearly every court to have addressed this issue. *See Chiapperini,* 13 N.Y.S.3d at 788-90 (state law allowed negligent entrustment claim despite absence of any allegation of continuing control); *Coxie*, No. 2018-CP-42-04297 (**Ex. 6**) (same); *Estate of Kim v. Coxe*, 295 P.3d 380, 394-96 (Ak. 2013) (same and citing Restat. 2nd. of Torts, § 390); *Delana, v. CED Sales, Inc.,* 486 S.W.3d 316, 324-26, 326 n.6 (Mo. 2016) (*en banc*) (same). *Delana* is particularly instructive. Missouri, like Maryland, follows the Restat. 2nd. of Torts, § 390. *Delana,* 486 S.W.3d at 324-26. *Delana* overruled prior case law which had argued that a sale

defeats a claim for negligent entrustment because a seller "permanently relinquishe[s]" the

dangerous instrument. *Id*. (internal quotation omitted). *Delana* emphasized that a requirement of

continuing control was "inconsistent with [the] definition of 'negligent entrustment' according

the Restatement." *See id*. This Court should follow this reasoning.

As far as Plaintiffs are aware, exactly *one* court has adopted Walmart's contrary position

in the firearms context – namely, *In re Academy, Ltd.* 625 S.W.3d 19, 30 (Tex. 2021). *Id*. at *22

(specifically rejecting reliance on Restat. 2d. of Torts, § 390 (Cmt. a.)) (**Ex. 9**). There is a reason

*Academy* is an outlier; adoption of this rule undermines public policy by removing incentives for

sellers of dangerous products to screen purchasers to prevent the foreseeable misuse of their

wares.

It is significant that in a law effective after Mace's suicide, Maryland went on to make it

a crime for "a [firearms] licensee . . . [to] sell . . . a shotgun" where the "licensee knows or has

reasonable cause to believe" that the party 1) has the same disqualifying mental health and self-

harm history as in Md. Code Ann., Pub. 5-205(b)(6) or 2) is "visibly intoxicated." § 5-

207(c)(6), (c)(14), (d) (eff. Oct. 2020). This what is alleged in the Cmpl. *Id*. at 1 ¶ 1, 10-15 ¶¶

53-108. While this law may not have been in force at the time of the sale of the shotgun, it

constitutes a clear legislative determination that such sales are contrary to public policy because

they pose a grave risk that the relevant firearms will be misused. The Maryland Court of

Appeals, in *Kiriakos v. Phillips,* 139 A.3d 1006 (Md. 2016) looked to the presence of a similar

law barring adults who allow minors to drink at their homes and allowed a "social host cause of

action against [an adult who supplied a minor with alcohol] [under] common law tort principles,

*like negligent entrustment*, based on the strong public policy evident in" the law. *Id*. at 1033

(emphasis added). Allowing the tort of negligent entrustment to extend to conduct which has

already been, in effect, legislatively recognized as constituting a negligent entrustment is both logical and in line with how the Maryland Court of Appeals approaches such situations.

### 2. This Case is Permitted Under the Negligence Per Se Exception.

This action is also exempt from dismissal under PLCAA under the negligence per se exception in 15 U.S.C. § 7903(5)(A)(ii). Congress chose not to define or limit the scope of negligence per se. Hence, regardless of whether a jurisdiction recognizes an independently "cognizable negligence *per se* claim," Motion at 7 n. 2, this Court may apply Maryland negligence law and allow a statute, rather than the common law, provide the standard of care. Maryland recognizes this doctrine. Even the case cited by Walmart reiterated that the rule in Maryland is that "a statutory violation is evidence of negligence." *Absolon v. Dollahite*, 831 A.2d 6, 11 (Md.2003). Plaintiffs have satisfied the negligence *per se* aspect of 15 U.S.C. § 7903(5)(A)(ii).

### C. The Doctrine of Constitutional Avoidance Supports Plaintiffs' Constructions of PLCAA

As explained *infra* at Section IV, PLCAA is unconstitutional if it compels this Court to dismiss this case. When a court is confronted with two "plausible" interpretations of a statute, "if one [statutory construction] would raise a multitude of constitutional problems, the other should prevail." *Clark v. Martinez*, 543 U.S. 371, 380–81 (2005). Plaintiffs' readings of PLCAA should be adopted because they are more than "plausible" and, in permitting Plaintiffs' claims, they remove or minimize the constitutional concerns discussed below.

### III. All Claims Are Valid Under Maryland Law[2]

---

[2] The Cmpl. also alleges a nuisance claim which is not specifically addressed here. Contrary to Walmart's contentions, Plaintiffs explicitly alleged a special injury and continuing invasion of rights. *Compare* Motion at 15-17 *with* Cmpl. at 16 ¶¶ 109-110, 19-20 ¶¶ 139-140. However, Plaintiffs acknowledge that, under current Maryland law, entitlement to injunctive relief to curtail an ongoing nuisance appears to depend upon a showing of harm to Plaintiffs' property. *Hoffman v. United Iron & Metal Co.*, 671 A.2d 55, 64 n. 9 (Md. Ct. Spec. App. 1996). This rule is contrary to public policy. Maryland law can and should be expanded to allow for injunctive relief for a

A. The Allegations in the Complaint Are Sufficient to Preclude Judgment as to the Absence of Proximate Cause or Duty as a Matter of Law.

Walmart argues the allegations in the Cmpl. demonstrate the absence of proximate cause or duty as a matter of law as to Plaintiffs' claims sounding in negligence. *See* MTD at 12-14. Walmart is wrong on both points.

1. Mace's Suicide Can (And Should) Reasonably Be Viewed a Foreseeable Intervening Act Rather than a Superseding Cause that Defeats a Finding of Proximate Cause.

A complaint involving intervening actions between the initial tortfeasor's misconduct and the ultimate harm cannot be dismissed for failure to allege proximate cause so long as it allows for an inference that the intervening actions were sufficiently foreseeable so as not to count as superseding causes. *See Pittway Corp. v. Collins*, 973 A.2d 771, 786–95 (Md. 2009). *Kiriakos* clarified that this rule applies where a party entrusts a dangerous product to a party likely to misuse it in a harmful manner. There, the court found that an adult who supplied a minor with alcohol in violation of a statute could not label the minor's drunk driving as a superseding cause absolving him of liability as a matter of law because the evidence could show that the minor's reckless conduct was to be "anticipated" rather than "unusual or extraordinary." *See* 139 A.3d at 1038, 1038 n. 63. Although no Maryland case has yet addressed proximate cause in the context of a suicide subsequent to the sale of a firearm, *Valentine* implicitly recognized that an intervening third-party misuse of a negligently sold gun could be sufficiently foreseeable so as not to count as a superseding cause. *See* 727 A.2d at 953.

Consistent with *Valentine*, cases across the country have found suicide not to be a

---

dangerous activity constituting a nuisance and undermining public safety independent of any interference with land. *See City of Gary v. Smith & Wesson*, 801 N.E.2d 1222, 1232 (Ind. 2003) ( "[w]e are not persuaded that a public nuisance necessarily involves . . . the use of land" and finding the concept of nuisance broad enough to encompass negligent and/or unlawful distribution and/or sale of firearms) (allowing for injunctive relief).

superseding cause that absolves the initial firearms dealer of harm because a suicide is a foreseeable result of an unlawful or negligent sale.  For example, in *Sogo v. Garcia's Nat'l Gun, Inc.,* 615 So. 2d 184 (Fl. Dist. Ct. App. 1993), the court reversed a grant of summary judgment which had found that a decedent's act of suicide constituted an intervening cause absolving the gun dealer who had sold him a weapon in violation of a waiting period ordinance from liability.  The court found that, "[t]he act of decedent was, by virtue of the ordinance, a foreseeable intervening cause. The complaint therefore sufficiently alleges a causal relationship between [the dealer]'s negligence and decedent's death." *Id.* at 186.  The court rejected the gun dealer's argument that the ordinance was designed only against the misuse of firearms in ways which harmed third parties rather than harm inflicted on oneself, finding that "the required cooling off period is designed to interrupt a plan or impulse by the purchaser to acquire a handgun to use against himself or others, and the ordinance is directed at both." *Id.* at 186.  Similarly, in *Crown v. Raymond*, 764 P.2d 1146 (Az. Ct. App. 1988), a gun dealer who sold a gun to a minor in violation of a statutory age restriction using a transparently fake identification (*id.* at 1147) attempted to argue that the minor's subsequent suicide was a superseding cause absolving him of liability. The court reversed a ruling on summary judgment in favor of the gun dealer because it found that "in enacting the statute, the legislature declared that injury to themselves or others is foreseeable when guns are sold to minors without their parents' knowledge or consent." *Id.* at 1149.   In *Splawnik v. Di Caprio*, 146 A.D.2d 333 (N.Y. App. Div. 1989), the court affirmed a denial of a motion to dismiss a complaint against a gun dealer who provided a handgun to a woman who presented as depressed in a transfer at her home.  *Id.* at 334.  The court found that "the pleadings adequately allege that defendant supplied a dangerous instrumentality to someone he had reason to know was likely, because of her

depressed mental state, to use it in a manner involving unreasonable risk of physical harm to herself." *Id.* at 335-36.

Here, Mace's suicide, as in *Crown* and *Sogo*, was a foreseeable result of a sale which violated at least one ordinance or law designed to prevent exactly the type of misuse of a firearm which occurred (Md. Code. Ann., Pub. Safety § 5-205(b)(6)). And, as in *Splawnik*, the allegations of the Cmpl. make clear that Walmart was presented with glaring indicators that Mace, "because of h[is] depressed mental state" was likely to use the Shotgun "in a manner involving unreasonable risk of physical harm to himself." *Compare Splawnik*, 146 A.D.2d at 335-56 *with* Cmpl. at 10-15 ¶¶ 53-108. Thus, the allegations in the Cmpl. are more than sufficient to permit an inference that Mace's suicide was a reasonably foreseeable intervening act rather than a superseding cause entitling Walmart to judgment as a matter of law.

Walmart relies on language contained in *Sindler v. Litman*, 887 A.2d 97 (Md. 2005) and *Young v. Swiney*, 23 F. Supp. 3d 596 (D. Md. 2014) to suggest that the only circumstances where Maryland law imposes liability upon a third party for "actually causing" a suicide is when the defendant's negligence causes the insanity of another. Motion at 12-14. That is not the law. In *Sindler*, a husband attempted to hold a third party liable for the death of his wife by alleging that the third party was responsible for an automobile accident that occurred 10 years earlier and ultimately caused the deceased to go insane and take her life. The court ultimately found that the expert testimony did not support the contention that the prior accident caused the decedent's insanity. *Young v. Swiney*, 23 F. Supp. 3d 596 (D. Md. 2014) found that expert testimony was sufficient for a similar theory of causation to go to the jury. Neither case suggested that causing insanity was the *only* means by which a third party can be held liable for suicide and neither case involved a seller negligently and unlawfully provided a lethal weapon to a person who posed a

foreseeable risk to himself or others. It makes no sense that Walmart could be liable if Mace had used the gun to shoot someone else, but not if he shot himself.

### 2. Walmart Had a Duty to Avoid Affirmative Conduct Exacerbating the Risk the Shotgun Would Be Misused Independent of a Special Relationship.

Contrary to Walmart's contention that a "special relationship" is required because Plaintiffs are seeking to impose liability on Walmart solely for failing to "prevent[]" Mace's suicide (*see* MTD at 1, 12-14), no special relationship is required. This is because Plaintiffs do not primarily seek to hold Walmart liable for not preventing Mace's suicide; they seek to hold Walmart responsible for its negligent and unlawful *affirmative misconduct* in placing a firearm in Mace's hands despite the likelihood of harm.

*Kiriakos* illustrates this distinction. In finding a duty against the adult alcohol supplier, emphasized that "special relationships are not the exclusive means to justify imposition of duty to a third person" and allowed for social host liability because "[e]nabling an underage person to drink alcohol under these circumstances [affirmatively] increases the risk of harm." *See* 139 A.3d at 1030-33 (recognizing that the duty it was acknowledging was an application of "negligent entrustment" principles and that this "doctrine . . . imposes no requirement of a special relationship").

The reality that no special relationship is required if a defendant's affirmative misconduct exacerbates a risk of harm through a negligent entrustment extends to the firearms context. *Valentine* did not condition potential liability for the negligent sale of a firearm later used to cause harm on the presence of a special relationship, and *Sogo*, *Crown* and *Splawnik* found potential liability on behalf of the negligent or unlawful entrustor of a firearm later used in a suicide without any discussion of the presence or absence of a special relationship.

Numerous other courts—including one of Walmart's own authorities (*Prescott*) – have implicitly or explicitly rejected the special relationship requirement where the defendant's affirmative conduct in negligently or unlawfully entrusting a dangerous firearm or firearm-related item exacerbates a risk that a third party will misuse the firearm or firearm-related item to cause harm. *See, e.g.,* 410 F. Supp. 3d 1123 at 1141 ("a negligent party may be liable for knowingly creating, at the time of the negligent conduct, such a situation that a third party might avail himself of the opportunity to commit such a tort or crime. In those scenarios . . . *a special relationship is not a prerequisite to demonstrating a duty*.") (internal quotation, citation and alteration omitted) (emphasis added); *Cincinnati v. Beretta U.S.A. Corp.,* 768 N.E.2d 1136, 1144 (Oh. 2002) ("The negligence issue before us is not whether appellees owe appellant a duty to control the conduct of third parties. Instead, the issue is whether appellees are themselves negligent by manufacturing, marketing, and distributing firearms in a way that creates an illegal firearms market that results in foreseeable injury. Consequently, the 'special relationship' rule is not determinative of the issue presented here. Instead, the allegations of the complaint are to be addressed without resort to that rule.") (upholding negligence-based claims); *Ileto v. Glock Inc.*, 349 F.3d 1191, 1206-1208 (9th Cir. 2003) (quoting *City of Cincinnati* and reaching a similar conclusion in allowing negligence claims); *Smith v. Bryco Arms*, 33 P.3d 638, 647 (N.M. Ct. App. 2001) ("the presence or absence of a special relationship between Defendants and [victim] is immaterial because Plaintiffs are clearly not attempting to hold Defendants responsible for failing to control [the accidental shooter]. Plaintiffs are attempting to hold Defendants liable in negligence or strict liability for harm proximately caused by Defendants' affirmative acts of designing and distributing a defective product which

combined with [the shooter's] subsequent misconduct to injure [the victim].") (allowing product liability claims sounding in negligence and strict liability).

The rationale behind this case is clear. The existence of a duty to avoid affirmative conduct exacerbating a risk of harm to others is the basic duty imposed upon all members of society and does not hinge upon any showing of a special relationship. Walmart cannot avoid this reality by misframing the case as simply involving a failure to prevent Mace's death.

      3. Even If a Special Relationship Is Required For a Duty to Prevent a Suicide, the Cmpl. Alleges Such a Special Relationship and Such a Duty.

Because Plaintiffs have alleged sufficient facts for a jury to determine that Walmart affirmatively acted in a manner which caused Mace's suicide, this Court need not reach the issue of whether Walmart and Mace had a "special relationship" such that Walmart owed a duty to prevent Mace's foreseeable suicide. Nevertheless, such a duty exited here. In *Eisel v. Board of Educ.*, 597 A.2d 447, 456 (Md. 1990) the Maryland Court of Appeals held that a school counselor owed a duty to prevent a suicide when the counselor was on notice of the student's suicidal intent. The Court in *Eisel* considered the following variables in determining whether a tort duty should be imposed in the context of suicide:

> The foreseeability of the harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise reasonable care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Id.* at 452 (citations omitted). The court went on to note that "[f]oreseeability is the most important variable in the duty calculus, and without there can be no duty to prevent suicide." *Id.*

In *Eisel*, applying the factors above, the court found that the defendants had evidence of the student's intent to commit suicide based on the student telling friends of her intention to kill herself and her friends reporting this back to the school counselor. *Id.* at 449, 452. The counselor, in turn, failed to intervene or inform the student's parents, and the student tragically took her own life in a murder-suicide pact. *Id.* at 449-450. The court discussed each of the above factors in detail and found them all to be present. *Id.* at 452-456. A similar result is compelled here based on the similar factual allegations in the Cmpl. – including that the individual who committed suicide informed multiple parties (here, Mace's coworkers), that a person of authority received a warning (here, Mace's supervisor) and the party in authority failing to respond appropriately (not placing Mace on the blacklist) *Id.* at 10-15 ¶¶ 53-108.

Under the facts set forth in the Cmpl. foreseeability is prevalent. Indeed, Walmart took it upon itself to create the blacklist of persons not to sell guns to precisely because it knew that events like Mace's suicide would result if it negligently sold firearms to individuals showing signs they would misuse firearms to harm themselves or others. *See id.* at 7-8 ¶¶ 36-40, 9-10 ¶¶ 51-52, 11 ¶ 72. The degree of certainty that Mace suffered the injury, like the student in *Eisel*, is one hundred percent. The closeness of the connection between Walmart's conduct (wrongfully selling the shotgun) and the injury suffered (Mace using the shotgun to take his life) is also substantial. The moral blame for selling a firearm to someone the seller knows to be suffering from a severe mental illness who is also clearly intoxicated is tremendous – as confirmed by Maryland's later criminalization of this act. The policy of preventing future suicides was discussed at length in *Eisel* (*Eisel*, 597 A.2d at 453-54) and also exists here. The burden on the defendant to exercise reasonable care when selling firearms is far outweighed by the risk of suicide, homicide or other incidents that occur when the defendant fails to exercise reasonable

care.  Finally, Walmart has insurance.  All of the factors set forth in *Eisel* are satisfied here, and this Court should find Walmart owed Mace a duty to prevent his foreseeable suicide.

Moreover, the relationship between Mace and Walmart extended beyond the generic retailor/customer relationship.  Mace was an employee of the same Walmart store where he purchased the Shotgun.  *Valentine*, in the firearms context, specifically listed "employer and employee" as the type of relationship which can satisfy the special relationship rule.  *Id.* at 951 (internal quotation omitted).  It makes even more sense to find that Walmart was in a special relationship to prevent Mace's misuse of the gun given that it voluntarily assumed a duty to prevent misuses of its firearms by creating the blacklist, informed at least some employees (such as Mace's coworker who shared his text(s) with his supervisor) about the ability to place individuals on the blacklist, and agreed (via Mace's supervisor) to use the blacklist but failed to do so.  *See* Cmpl. at 7-8 ¶¶ 36-40, 9 -15 ¶¶ 51-108.

IV.    <u>If Read to Bar All of Plaintiffs' Claims Otherwise Permitted Under Maryland Law, PLCAA is Unconstitutional.</u>

A.  PLCAA Exceeds Congress's Commerce Clause Authority.

Congress, in PLCAA, exceeded its Commerce Clause authority.  PLCAA does not regulate commerce, or the gun industry, in any way.  Rather, it impermissibly targets private parties like the Plaintiffs (by prohibiting them from bringing "qualified civil liability actions"), state judges (by requiring them to construe the common law as Congress dictates and to dismiss cases as Congress decrees), and state lawmaking functions (by barring enforcement of judicially created common law actions and requiring legislative standards to enforce certain common law claims against gun companies).  But none of these entities are engaged in commercial activity.  Hence, they fall outside the scope of Congress's Commerce Clause authority.

Congress may only regulate existing "commercial activity" – it may not force passive actors not engaged in firearms-related commerce to bear the costs of misconduct that would normally be imposed on the firearms industry. *See Nat'l Fed'n of Indep. Bus. v. Sebelius,* 567 U.S. 519, 558 (2012).[3] A Pennsylvania appellate court, in *Gustafson v. Springfield Arms,* 207 WDA 2019 (Pa. Super. Ct. Sep. 28, 2020) *opinion withdrawn subject to en banc reargument at* 2020 Pa. Super. LEXIS 957 (Dec. 3, 2020) (**Ex. 10**) recently pinpointed this issue by emphasizing that PLCAA impermissibly "regulates the inactivity of individuals who may *never* have engaged in a commercial transaction with the gun industry" and "forces [plaintiffs] to serve as financial sureties for the negligen[ce]'" of the industry by blocking otherwise valid suits. *See id.* at 37-39 (applying *Nat'l Fed'n of Indep. Bus.*) (emphasis in original). While the opinion has been withdrawn pending *en banc* review, its reasoning is persuasive.

"[E]very form of [permissible] preemption [under the Commerce Clause] is based on a federal law that regulates the conduct of private actors, not the States . . ."; state lawmaking functions are not sufficiently commercial activities to fall within the ambit of the Commerce Clause. *See Murphy v. NCAA,* 138 S. Ct. 1461, 1481 (2018); *see also id.* at 1485 (J. Thomas, concurring) ("even assuming the Commerce Clause allows Congress to prohibit intrastate sports gambling directly, it does not authorize Congress to regulate state governments' regulation of interstate commerce") (internal quotation omitted); Gustafson Panel Decision (**Ex. 10**) at 28 ("'the Framers explicitly chose a Constitution that confers upon Congress the power to regulate individuals, not States'") (quoting *New York v. United States,* 505 U.S. 144, 166 (1992)). Permissible preemption laws target private actors actively engaged in a given industry and require them to meet a defined federal standard, and as an incidental impact, override state

---

[3] Four dissenting justices joined Chief Justice Roberts on this point without joining his opinion.

claims to the extent they are inconsistent with this standard. *See, e.g., Riegel v. Medtronic, Inc.,* 552 U.S. 312, 323-36 (2008).

PLCAA does not regulate gun companies at all, or impose any standard; instead, it simply regulates litigation and attacks state lawmaking activities. Specifically, PLCAA allows states to fashion and apply liability standards to the firearms industry without limitation provided they codify causes of action in statute (*see* 15 U.S.C. § 7903(5)(A)(iii)) but bars states from applying identical liability standards to the firearms industry if they originate under judicially created common law. That is not permissible under the Commerce Clause.

Congress impermissibly acted outside of its enumerated powers in enacting PLCAA.

B.      PLCAA Violates the Tenth Amendment.

Even assuming, *arguendo,* that Congress had the authority to enact PLCAA, PLCAA nevertheless violates the Tenth Amendment. *See New York,* 505 U.S. at 160, 188 (regulation was within Congress's Commerce Clause authority but violated the Tenth Amendment).

The Tenth Amendment limits federal intrusion on state sovereignty, including by prohibiting "commandeering" of the states.[4] PLCAA violates the "anticommandeering rule" in several ways. It requires judges to construe state common law as Congress dictates, commands judges to dismiss actions Congress has deemed "without foundation in hundreds of years of the common law," and commands judges to find some acts "the sole proximate cause" of injuries. 15 U.S.C. §§ 7901(a)(7), 7903(5)(A)(v). It also dictates to states how they must allocate law-making authority —by using their legislatures rather than their judiciaries. *See* § 7903(5)(A)(iii).

---

[4] The federalism protections enshrined in the Tenth Amendment are broader than a prohibition on "commandeering." The Supreme Court has stated that "[t]he Constitution [] leaves to the several States a residuary and inviolable sovereignty, reserved explicitly to the States by the Tenth Amendment." *See New York,* 505 U.S. at 188.

The Supreme Court stated in *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938) that "[w]hether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is *not a matter of federal concern.*" *Id.* at 78 (emphasis added); *see also Minn. v. Clover Leaf Creamery Co.*, 449 U.S. 456, 461 n. 6 (1981) ("[T]he States are free to allocate the lawmaking function to whatever branch of state government they may choose.")  In PLCAA, however, how states make their law is of great concern: some cases that involve a statutory violation are permitted (under the predicate exception) while identical claims arising under judicially created common law are prohibited. *See* 15 U.S.C. § 7903(5)(A)(iii).  This impermissibly requires that states use their legislatures – rather than their judiciaries – to fashion liability standards if they are to enforce their common law against the firearms industry.

In the only case considering a similar statute of which Plaintiffs are aware, a New York appellate court recognized that Congress "cannot, consistent with the core principles of state sovereignty guaranteed by the Tenth Amendment . . . take away from the state its authority to determine which coequal branch of government should exercise the power of the sovereign." *Matter of Application of Cesar Adrian Vargas for Admission to the Bar of the State of New York*, 131 A.D.3d 4, 26-27 (N.Y. App. Div. 2015) (rejecting reading of federal statute so as to require a legislative opt-out from its terms where state had chosen to allocate decision-making authority to the judiciary).  This ruling is in accord with the Supreme Court's holding that the federal government may not "regulat[e] [a] state government['s] regulation" of its own citizens by limiting the ability of one branch of state government to exercise lawmaking authority in a given way. *See Murphy*, 138 S. Ct. at 1478, 1485 (internal quotation omitted).

"By defining a 'qualified-civil-liability action,' Congress . . . pronounced substantive rules of common law and therefore exercised a police power reserved for the several States under

the Tenth Amendment." *Gustafson*, *supra*, **Ex. 10** at 57. But "Congress has no power to declare substantive rules of common law applicable in a State . . . be they commercial law or a part of the law of torts." *Erie*, 304 U.S. at 78. "There is no federal general common law." *Id.*

C.     PLCAA Violates Due Process

The Supreme Court has long recognized "[w]here there is a legal right, there is also a legal remedy by suit or action at law." *Marbury v. Madison*, 5 U.S. 137, 163 (1803) (internal quotation omitted); *see also Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74, 94 (1980) (J. Marshall concurring) ("our cases demonstrate that there are limits on governmental authority to abolish 'core' common-law rights . . . at least without a compelling showing of necessity or a provision for a reasonable alternative remedy"). The Court later crystalized this principle and held that "the legislative power of a State can only be exerted in subordination to the fundamental principles of right and justice which the guaranty of due process in the Fourteenth Amendment is intended to preserve, and [] a purely arbitrary or capricious exercise of that power whereby a wrongful and highly injurious invasion of [] rights, as here, is practically sanctioned and the owner stripped of all real remedy, is wholly at variance with those principles." *Truax v. Corrigan*, 257 U.S. 312, 329-330 (1921).[5] PLCAA purports to completely eradicate all remedy for some victims of gun industry negligent and/or unlawful misconduct – an unprecedented and egregious deprivation of due process.

While the Supreme Court has held that Congress may limit or even eliminate certain state tort claims, it has only done so when Congress provides a reasonably adequate alternative remedy for the claims it replaces. For example, *Duke Power Co. v. Carolina Envtl. Study Grp.*,

---

[5] The "Fifth Amendment. . . provides due process protections . . . coextensive with the due process protections of the Fourteenth Amendment." *Tibbs v. Williams*, 263 F. Supp. 2d 39, 40 n. 1 (D.D.C. 2003).

438 U.S. 59 (1978) carefully analyzed the substitute remedies provided by Congress when enacting a law limiting liability and found that "[t]his panoply of remedies and guarantees is at the least a reasonably just substitute for the common-law rights replaced by [the act]." *Id.* at 93. Congress, has, historically, provided reasonably adequate substitute remedies when it has limited or eliminated common law rights. *See, e.g.,* the September 11th Victim Compensation Fund of 2001 (Pub. L. 107-42, Title IV); the National Childhood Vaccine Injury Act of 1986 (42 U.S.C. §§ 300aa-1 *et seq.*). PLCAA, if read to bar Plaintiffs' claims, is an unconstitutional aberration.

At least one court has held that PLCAA is unconstitutional as a result of due process concerns. *City of Gary v. Smith & Wesson Corp.*, No. 45D05-0005-CT-00243, 4 (Super. Ct. Ind. Oct. 23, 2006) (attached as **Ex. 11**). Another court held that PLCAA would violate due process if it barred Plaintiffs' claims (which were allowed under one or more exceptions). *See Lopez v. Badger Guns, Inc.,* No. 10-cv-18530, 24-25 (Wis. Cir. Ct. Mar. 24, 2014) (attached as **Ex. 12**); *see also* Patricia Foster, *Good Guns (and Good Business Practices) Provide All the Protection They Need: Why Legislation to Immunize the Gun Industry from Civil Liability is Unconstitutional,* 72 U. Cin. L. Rev. 1739, 1750-56 (Summer 2004).

PLCAA violates due process principles by depriving Plaintiffs of any reasonably adequate remedy for harms stemming from gun industry misconduct.

D.      PLCAA Violates Equal Protection.

To apply PLCAA to preempt Plaintiffs' claims here would also violate equal protection principles by barring recovery for gun violence victims in Maryland while allowing recovery for otherwise similarly situated victims in other states which have codified gun liability statutes. *See* 15 U.S.C. § 7903(5)(A)(iii). Such discrimination cannot survive even rational basis review. *See,*

*e.g., McBride v. General Motors Corp.*, 737 F. Supp. 1563 (M.D. Ga. 1990)[6] (striking down tort recovery statute on rational basis review); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) (striking down zoning ordinance on rational basis review). Just as the state's proffered justification of raising revenue could not rationally explain taking *no money* from one class of plaintiffs in *McBride* (737 F. Supp. at 1578), Congress's purported desire to limit liability for the firearms industry from certain types of suits cannot rationally explain PLCAA leaving *unlimited* liability in states which have codified exactly these causes of action into statute. *See* 15 U.S.C. § 7903(5)(A)(iii). PLCAA, thus, impermissibly deprives Plaintiffs of equal protection under the law.

### Conclusion

For the reasons set forth above, Plaintiffs respectfully request that this Court deny Defendants' Motion for Judgment on the Pleadings.

/s/ Kevin P. Sullivan
Kevin P. Sullivan, Esq., Fed Bar #27506
Daniel P. Stringer, Esq., Fed Bar #19243
SALSBURY SULLIVAN, LLC
100 N. Charles Street, Suite 900
Baltimore, MD 21201
Ph: (443) 869-3920
ksullivan@salsburysullivanlaw.com
dstringer@salsburysullivanlaw.com

Jonathan E. Lowy, Esq., *Pro Hac Vice*
Brady, United Against Gun Violence
840 First Street NE, Suite 400
Washington, DC 20002
Ph: (202) 370-8104
jlowy@bradyunited.org
**Attorneys for Plaintiffs**

---

[6] *McBride* dealt with the Equal Protection Clause of the Fourteenth Amendment, rather than the equal protection component of the Due Process Clause of the Fifth Amendment implicated by PLCAA. But these protections are coextensive. *See Bolling v. Sharpe*, 347 U.S. 497 (1954).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of October, 2021, a copy of the foregoing

*Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings,* was electronically

filed and served on:

> Kevin C. Schiferl, Esq.
> Stephanie V. McGowan, Esq.
> Adam S. Ira, Esq.
> FROST BROWN TODD, LLC
> 201 North Illinois Street, Suite 1900
> PO Box 44961
> Indianapolis, IN 46244-0961
> kschiferl@fbtlaw.com
> smcgowan@fbtlaw.com
> aira@fbtlaw.com
>
> Christopher R. Dunn, Esq.
> DeCaro, Doran, Siciliano, Gallagher & DeBlasis, LLP
> 17251 Melford Blvd., Suite 200
> Bowie, MD 20715
> cdunn@decarodoran.com
>
> ***Attorneys for Defendants***

/s/ Kevin P. Sullivan_____
Kevin P. Sullivan, Esq., Fed Bar #27506