**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| KAYLA M. BRADY, *et al.*, | |
| Plaintiffs, | |
| v. | No. 8:21-cv-01412-CBD |
| WALMART INC., *et al.*, | |
| Defendants. | |

## BRIEF OF UNITED STATES IN RESPONSE TO PLAINTIFFS' FEDERAL RULE OF CIVIL PROCEDURE 5.1 NOTICE OF CONSTITUTIONAL CHALLENGE

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

STATUTORY BACKGROUND .................................................................................................... 4

ARGUMENT .................................................................................................................................. 5

I.     The Court should address Plaintiffs' constitutional challenges to PLCAA only if necessary to dispose of the pending motion. ......................................................................... 5

II.    PLCAA is a valid exercise of Congress's power under the Commerce Clause and the Supremacy Clause ................................................................................................................... 6

III.   PLCAA does not violate the Tenth Amendment ................................................................. 11

IV.   PLCAA does not violate the Fifth Amendment .................................................................. 16

      A.     PLCAA does not violate due process .................................................................... 16

      B.     PLCAA does not violate equal protection ............................................................. 19

V.     The canon of constitutional avoidance does not apply. .................................................... 22

CONCLUSION ............................................................................................................................ 24

## TABLE OF AUTHORITIES

**CASES**

*Adames v. Sheahan,*
  909 N.E.2d 742 (Ill. 2009) ........................................................................................*passim*

*Adkins v. Rumsfeld,*
  464 F.3d 456 (4th Cir. 2006)..........................................................................................20

*Aleman v. Glickman,*
  217 F.3d 1191 (9th Cir. 2000) .......................................................................................20

*Almendarez-Torres v. United States,*
  523 U.S. 224 (1998)...................................................................................................4, 23

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
  526 U.S. 40 (1999)..........................................................................................................18

*Am. Trucking Ass'ns v. Smith,*
  496 U.S. 167 (1990).........................................................................................................11

*Applegate, LP v. City of Frederick,*
  179 F. Supp. 3d 522 (D. Md.)..........................................................................................19

*Armstrong v. Exceptional Child Ctr., Inc.,*
  575 U.S. 320 (2015).....................................................................................................9, 14

*Benton v. United States,*
  960 F.2d 19 (5th Cir. 1992)............................................................................................21

*Boardman v. Inslee,*
  978 F.3d 1092 (9th Cir. 2020) .......................................................................................20

*Bond v. United States,*
  572 U.S. 844 (2014)...................................................................................................23, 24

*Brackeen v. Haaland,*
  994 F.3d 249 (5th Cir. 2021)......................................................................................12, 14

*Carr v. United States,*
  422 F.2d 1007 (4th Cir. 1970) .......................................................................................18

*Carton v. Gen. Motors Acceptance Corp.,*
  639 F. Supp. 2d 982 (N.D. Iowa 2009), *aff'd on other grounds,*
  611 F.3d 451 (8th Cir. 2010)..........................................................................................21

*City of Gary v. Smith & Wesson Corp.,*
  No. 45D05-005-CT-00243 (Ind. Super. Ct. Oct. 23, 2006), *aff'd on other grounds,*

875 N.E.2d 422 (Ind. Ct. App. 2007)................................................................................18

*City of New York v. Beretta U.S.A. Corp.,*
  401 F. Supp. 2d 244 (E.D.N.Y. 2005), *rev'd on other grounds,*
  524 F.3d 384 (2d Cir. 2008)....................................................................................... 4, 21

*City of New York v. Beretta U.S.A. Corp.,*
  524 F.3d 384 (2d Cir. 2008).......................................................................................*passim*

*City of Portland v. United States,*
  969 F.3d 1020 (9th Cir. 2020), *cert. denied sub nom. City of Portland v. FCC,*
  141 S. Ct. 2855 (2021) ....................................................................................................12

*City of Spokane v. Fed. Nat'l Mortg. Ass'n,*
  775 F.3d 1113 (9th Cir. 2014) .......................................................................................14

*Clark v. Martinez,*
  543 U.S. 371 (2005)........................................................................................................23

*Collins v. Schweitzer,*
  21 F.3d 1491 (9th Cir. 1994)..........................................................................................21

*Connecticut v. Physicians Health Servs. of Conn., Inc.,*
  287 F.3d 110 (2d Cir. 2002)...........................................................................................12

*Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.,*
  682 F.3d 1293 (11th Cir. 2012) .....................................................................................20

*Dandridge v. Williams,*
  397 U.S. 471 (1970)........................................................................................................22

*Delana v. CED Sales, Inc.,*
  486 S.W.3d 316 (Mo. 2016) ......................................................................................*passim*

*District of Columbia v. Beretta U.S.A. Corp.,*
  940 A.2d 163 (D.C. 2008) .......................................................................................2, 4, 17

*Duke Power Co. v. Carolina Env't Study Grp., Inc.,*
  438 U.S. 59 (1978)....................................................................................................*passim*

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,*
  485 U.S. 568 (1988)..........................................................................................................4

*Erie R. Co. v. Tompkins,*
  304 U.S. 64 (1938)..........................................................................................................15

*Escambia Cty v. McMillan,*
  466 U.S. 48 (1984)............................................................................................................6

*Est. of Kim ex rel. Alexander v. Coxe,*
    295 P.3d 380 (Alaska 2013) ..................................................................................*passim*

*Franco v. Mabe Trucking Co.*
    3 F.4th 788 (5th Cir. 2021) ................................................................................15

*Freilich v. Upper Chesapeake Health, Inc.,*
    313 F.3d 205 (4th Cir. 2002).............................................................................12

*Gallegos-Hernandez v. United States,*
    688 F.3d 190 (5th Cir. 2012).............................................................................20

*Garcia v. Vanguard Car Rental U.S.A., Inc.,*
    540 F.3d 1242 (11th Cir. 2008) ........................................................................15

*Garcia v. Wyeth-Ayerst Lab'ys,*
    385 F.3d 961 (6th Cir. 2004).............................................................................18

*Gilland v. Sportsmen's Outpost, Inc.,*
    No. X04CV095032765S, 2011 WL 2479693 (Conn. Super. Ct. May 26, 2011) ....................2, 17, 22

*Gonzales v. Raich,*
    545 U.S. 1 (2005)..................................................................................................7

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991)............................................................................................23

*Gross v. United States,*
    771 F.3d 10 (D.C. Cir. 2014).............................................................................21

*Guillen v. Pierce Cty.,*
    31 P.3d 628 (Wash. 2001) ..................................................................................11

*Gustafson v. Springfield, Inc.,*
    No. 207 WDA 2019, slip op. (Pa. Super. Ct. Sept. 28, 2020), *reh'g en banc granted and opinion withdrawn* (Dec. 3, 2020) ...............................................................................1, 10, 15

*Hammond v. United States,*
    786 F.2d 8 (1st Cir. 1986) ..................................................................................15

*Heller v. Doe ex rel. Doe,*
    509 U.S. 312 (1993)..................................................................................20, 21, 22

*Hodel v. Va. Surface Mining & Reclamation Ass'n,*
    452 U.S. 264 (1981)....................................................................................7, 12, 14

*Hohn v. United States,*
    524 U.S. 236, (1998)............................................................................................11

*Ileto v. Glock, Inc.*,
   421 F. Supp. 2d 1274 (C.D. Cal. 2006), *aff'd*, 565 F.3d 1126 (9th Cir. 2009) ....................................22

*Ileto v. Glock, Inc.*,
   565 F.3d 1126 (9th Cir. 2009) ................................................................................................*passim*

*In re TMI*,
   89 F.3d 1106 (3d Cir. 1996) ..............................................................................................................18

*In re Vargas*,
   10 N.Y.S.3d 579 (N.Y. App. Div. 2015) ............................................................................................15

*Jean v. Nelson*,
   472 U.S. 846 (1985) ..............................................................................................................................6

*Kelley v. United States*,
   69 F.3d 1503 (10th Cir. 1995) ..........................................................................................................12

*Kranson v. Valley Crest Nursing Home*,
   755 F.2d 46 (3d Cir. 1985) ................................................................................................................21

*Kurns v. A.W. Chesterton Inc.*,
   620 F.3d 392 (3d Cir. 2010), *aff'd sub nom. Kurns v. R.R. Friction Prods. Corp.*,
   565 U.S. 625 (2012)..............................................................................................................................9

*Lehman Bros. v. Schein*,
   416 U.S. 386 (1974) ............................................................................................................................15

*Lehnhausen v. Lake Shore Auto Parts Co.*,
   410 U.S. 356 (1973) ............................................................................................................................21

*Logan v. Zimmerman Brush Co.*,
   455 U.S. 422 (1982) ............................................................................................................................16

*Lucas v. United States*,
   807 F.2d 414 (5th Cir. 1986) ............................................................................................................18

*M.D. v. United States*,
   745 F. Supp. 2d 1274 (M.D. Fla. 2010) ............................................................................................21

*Martin v. Harrington & Richardson, Inc.*,
   743 F.2d 1200 (7th Cir. 1984) ..........................................................................................................21

*Martinez v. California*,
   444 U.S. 277 (1980)............................................................................................................................18

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996)..............................................................................................................................8

*Michael M. v. Superior Ct. of Sonoma Cty.*,
  450 U.S. 464 (1981)...................................................................................................22

*Miller v. United States*,
  73 F.3d 878 (9th Cir. 1995).......................................................................................21

*Minn. State Bd. For Cmty. Colls. v. Knight*,
  465 U.S. 271 (1984)...................................................................................................20

*Mondou v. N.Y., New Haven, & Hartford R.R. Co.*,
  223 U.S. 1 (1912).......................................................................................................18

*Morrison v. Garraghty*,
  239 F.3d 648 (4th Cir. 2001).....................................................................................19

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
  138 S. Ct. 1461 (2018) ...................................................................................9, 13, 14

*N.Y. Cent. R.R. Co. v. White*,
  243 U.S. 188 (1917)...................................................................................................17

*N.Y. City Transit Auth. v. Beazer*,
  440 U.S. 568 (1979).....................................................................................................6

*Nat'l Mining Ass'n v. Kempthorne*,
  512 F.3d 702 (D.C. Cir. 2008) ..................................................................................23

*National Federation of Independent Business v. Sebelius*,
  567 U.S. 519 (2012)...................................................................................................10

*New York v. United States*,
  505 U.S. 144 (1992).............................................................................................*passim*

*Patchak v. Zinke*,
  138 S. Ct. 897 (2018) ................................................................................................18

*Phillips v. Lucky Gunner, LLC*,
  84 F. Supp. 3d 1216 (D. Colo. 2015) ..........................................................................1

*Pierce Cty. v. Guillen*,
  537 U.S. 129 (2003)..........................................................................................2, 10, 11

*Prescott v. Slide Fire Sols., LP*,
  410 F. Supp. 3d 1123 (D. Nev. 2019) ...........................................................2, 11, 23, 24

*Printz v. United States*,
  521 U.S. 898 (1997)...........................................................................................13, 14

*Riegel v. Medtronic, Inc.*,

552 U.S. 312 (2008) ............................................................................................................ 9, 24

*Roy v. Barr*,
 960 F.3d 1175 (9th Cir. 2020) ...............................................................................................19

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
 411 U.S. 1 (1973) ...................................................................................................................20

*Scarlett v. Air Methods Corp.*,
 922 F.3d 1053 (10th Cir. 2019) .............................................................................................18

*Schloss v. Matteucci*,
 260 F.2d 16 (10th Cir. 1958) .................................................................................................21

*Schmidt v. Ramsey*,
 860 F.3d 1038 (8th Cir. 2017) .........................................................................................18, 19

*SECSYS, LLC v. Vigil*,
 666 F.3d 678 (10th Cir. 2012) ...............................................................................................19

*Silver v. Silver*,
 280 U.S. 117 (1929) ........................................................................................................17, 18

*Smith & Wesson Corp. v. City of Gary*,
 875 N.E.2d 422 (Ind. Ct. App. 2007) ....................................................................................18

*Sparks v. Wyeth Lab'ys, Inc.*,
 431 F. Supp. 411 (W.D. Okla. 1977) ....................................................................................15

*Spector Motor Serv. v. McLaughlin*,
 323 U.S. 101 (1944) .................................................................................................................6

*Sylvia Development Corp. v. Calvert Cnty.*,
 48 F.3d 810 (4th Cir. 1995) ...................................................................................................19

*Travieso v. Glock Inc.*,
 526 F. Supp. 3d 533 (D. Ariz. 2021) ...............................................................................*passim*

*Trump v. Hawaii*,
 138 S. Ct. 2392 (2018) ...........................................................................................................21

*United States v. Bailey*,
 115 F.3d 1222 (5th Cir. 1997) ...............................................................................................12

*United States v. Bass*,
 404 U.S. 336 (1971) ...............................................................................................................23

*United States v. Comstock*,
 560 U.S. 126 (2010) ...............................................................................................................11

*United States v. DeCay,*
   620 F.3d 534, 542 (5th Cir. 2010) ......................................................................12

*United States v. Kenney,*
   91 F.3d 884 (1996) ...........................................................................................12

*United States v. Lopez,*
   514 U.S. 549 (1995) ....................................................................................... 7, 8

*United States v. Morrison,*
   529 U.S. 598 (2000) ..................................................................................... 8, 10

*Vanderwater v. Hatch,*
   835 F.2d 239 (10th Cir. 1987) ...........................................................................21

*Wheeler v. Miller,*
   168 F.3d 241 (5th Cir. 1999) .............................................................................20

*Williamson v. Lee Optical of Okla. Inc.,*
   348 U.S. 483 (1955) .........................................................................................22

*Wyeth v. Levine,*
   555 U.S. 555 (2009) ...........................................................................................8

*Ziglar v. Abbasi,*
   137 S. Ct. 1843 (2017) ......................................................................................22

**U.S. CONSTITUTION**

U.S. Const. art. I, § 8 ......................................................................................... 6, 7

U.S. Const. art. VI, cl. 2 ................................................................................7, 8, 14

U.S. Const. amend. V .............................................................................................16

U.S. Const. amend. X .............................................................................................11

**STATUTES**

8 U.S.C. § 1621 ......................................................................................................15

15 U.S.C. § 7901 ..............................................................................................*passim*

15 U.S.C. § 7902 ..........................................................................................5, 8, 24

15 U.S.C. § 7903 ..............................................................................................*passim*

28 U.S.C. § 2403 .....................................................................................................1

Surface Transportation and Uniform Relocation Assistance Act of 1987

Pub. L. No. 100-17, 101 Stat. 132.................................................................................................10

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 5.1 ...........................................................................................1

Federal Rule of Civil Procedure 24 ............................................................................................1

## INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 5.1(c) and 24(a)(1) and 28 U.S.C. § 2403(a), the United States of America has intervened in this case to present argument on the constitutional challenges to the Protection of Lawful Commerce in Arms Act ("PLCAA" or "Act"), 15 U.S.C. §§ 7901–7903, raised by Plaintiffs in their opposition to Defendants Walmart Inc. and Wal-Mart Stores East, L.P's (collectively "Walmart") motion for judgment on the pleadings, ECF No. 34 ("Pls.' Opp."). At the outset, the United States takes no position on whether any claims asserted in Plaintiffs' complaint fall within the statutory scope of PLCAA or any of its exceptions. The principal arguments in Plaintiffs' opposition are statutory, and if the Court can resolve Defendants' motion without reaching the constitutional issues raised by Plaintiffs, it should do so. But if the Court reaches the question of PLCAA's constitutionality, it should uphold the law as constitutional.

Congress enacted PLCAA to "generally preempt[] claims against manufacturers and sellers of firearms and ammunition resulting from the criminal use of those products." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1131 (9th Cir. 2009). Whatever the merits of those aims, it is well settled that the Act stands on firm constitutional ground:[1] Essentially "[e]very federal and state appellate court to address the constitutionality of the PLCAA has found it [to be] constitutional."[2] *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1222 (D. Colo. 2015) (collecting cases). Indeed, in prior litigation challenging PLCAA's constitutionality, courts have rejected virtually identical arguments to those advanced by Plaintiffs here. *See, e.g.*, *Ileto*, 565 F.3d at 1138–42 (holding PLCAA to be a valid exercise of Commerce Clause authority and rejecting due-process and equal-protection challenges); *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 392–93 (2d Cir. 2008) (rejecting Commerce Clause and Tenth

---

[1] President Biden has called on Congress to repeal PLCAA—but whether Congress had the constitutional authority to enact PLCAA is distinct from the question whether this Administration thinks PLCAA remains good policy.

[2] The sole exception of which the United States is aware is a since-withdrawn opinion by an intermediate appellate court in Pennsylvania, in which the court departed from a wide body of case law by concluding that PLCAA was not a valid exercise of Congress's power under the Commerce Clause and that the Act violated the Tenth Amendment. *See Gustafson v. Springfield, Inc.*, No. 207 WDA 2019, slip op. at 55–56 (Pa. Super. Ct. Sept. 28, 2020), *reh'g en banc granted and opinion withdrawn* (Dec. 3, 2020).

Amendment challenges); *Travieso v. Glock Inc.*, 526 F. Supp. 3d 533, 548–51 (D. Ariz. 2021) (holding PLCAA to be a valid exercise of Commerce Clause authority and rejecting Tenth Amendment, due-process, and equal-protection challenges); *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1146 (D. Nev. 2019) (rejecting due-process, equal-protection, and Tenth Amendment challenges); *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 324 (Mo. 2016) (rejecting due-process and Tenth Amendment challenges); *Est. of Kim ex rel. Alexander v. Coxe* (*Coxe*), 295 P.3d 380, 390–91 (Alaska 2013) (rejecting due-process, equal-protection, and Tenth Amendment challenges); *Gilland v. Sportsmen's Outpost, Inc.*, No. X04CV095032765S, 2011 WL 2479693, at *18–20 (Conn. Super. Ct. May 26, 2011) (unpublished) (rejecting due-process and equal-protection challenges); *Adames v. Sheahan*, 909 N.E.2d 742, 764–65 (Ill. 2009) (rejecting Tenth Amendment challenge); *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 172–82 (D.C. 2008) (rejecting due-process challenge).

Despite the weight of precedent to the contrary, Plaintiffs contend that PLCAA is unconstitutional if construed to preempt all their claims against Walmart, *see* Pls.' Opp. at 2, 20, 28, and that constitutional principles require certain provisions of the Act to be interpreted narrowly to avoid barring their claims, *see id.* at 7–9, 20—an argument that has likewise been squarely rejected, *see, e.g.*, *Ileto*, 565 F.3d at 1143 (refusing to invoke the doctrine of constitutional avoidance in construing PLCAA); *Travieso*, 526 F. Supp. 3d at 540–41; *Delana*, 486 S.W.3d at 323; *Prescott*, 410 F. Supp. 3d at 1132 n.3. As these courts have correctly held, Plaintiffs' constitutional arguments fail for the following reasons:

*First*, PLCAA does not exceed Congress's legislative authority. The Supreme Court has held that the Commerce Clause authorizes Congress to restrict litigation if Congress "could reasonably believe" that the restrictions would promote interstate commerce. *Pierce Cty. v. Guillen*, 537 U.S. 129, 147 (2003). "Congress carefully constrained [PLCAA's] reach to the confines of the Commerce Clause" by specifically limiting the preemptive scope of the Act to interstate or foreign commerce. *Ileto*, 565 F.3d at 1140; *see also* 15 U.S.C. § 7903(2) ("The term 'manufacturer' means . . . a person who is engaged in the business of manufacturing the product in interstate or foreign commerce[.]"); *id.* § 7903(4) ("The term 'qualified product' means a firearm . . . that has been shipped or transported in

interstate or foreign commerce."); *id.* § 7903(6) (defining "[t]he term 'seller'" with reference to a three-part, disjunctive definition, all three parts of which refer to interstate or foreign commerce). And "[t]here is nothing irrational or arbitrary about Congress' choice here: It saw fit to 'adjust the incidents of our economic lives' by preempting certain categories of cases brought against federally licensed manufacturers and sellers of firearms," while leaving others to proceed. *Ileto*, 565 F.3d at 1140–41 (citation omitted).

**Second**, PLCAA does not violate the Tenth Amendment or otherwise interfere with the sovereign rights of the State of Maryland. The Act, as a constitutional exercise of Congress's enumerated authorities, merely preempts certain state laws under the Supremacy Clause, consistent with constitutional principles of federalism. *See, e.g.*, *City of New York*, 524 F.3d at 397; *Travieso*, 526 F. Supp. 3d at 549–51; *Delana*, 486 S.W.3d at 322-23; *Coxe*, 295 P.3d at 388-89; *Adames*, 909 N.E.2d at 764-65. Indeed, the underlying premise of Plaintiffs' Tenth Amendment claim is incorrect: PLCAA does not create a wholesale difference in treatment between common law and statutory claims, as Plaintiffs suggest. Rather, PLCAA bars some categories of statutory claims and maintains some categories of judicially-created claims. *See* 15 U.S.C. § 7903(5)(A)(ii), (iv), (v).

**Third**, Plaintiffs cannot succeed on their due-process claim because: (1) they have "no property, no vested interest" in common-law tort claims that had yet to accrue or be litigated at the time of PLCAA's enactment, *see Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 88 n.32 (1978) (citation omitted); *see id.* ("[S]tatutes limiting liability are relatively commonplace and have consistently been enforced by the courts."); and (2) even if Plaintiffs had such a property interest, they have not been deprived of all remedies. *See Ileto*, 565 F.3d at 1140–44 (rejecting due-process challenge because, *inter alia*, "Congress has left in place a number of substitute remedies"); *accord District of Columbia*, 940 A.2d at 177 n.8.

**Fourth**, Plaintiffs' Fifth Amendment equal-protection argument fails because, as they acknowledge, the easily satisfied rational-basis standard applies to this claim, and "Congress rationally could find that, by insulating the firearms industry from a specified set of lawsuits," interstate commerce would be protected. *Ileto*, 565 F.3d at 1140–41; *see also City of New York v. Beretta U.S.A.*

*Corp.* (*N.Y. v. Beretta*), 401 F. Supp. 2d 244, 295 (E.D.N.Y. 2005) (determining that Congress had a rational basis to find that "nationwide commerce in firearms was particularly imperiled by the threat" of the lawsuits restricted by the Act in rejecting equal-protection challenge to PLCAA, while finding that an exception to PLCAA applied to allow the suit), *rev'd on other grounds, City of New York*, 524 F.3d at 404 (equal protection not addressed). Congress also could rationally find that state legislative processes would provide a forum in which the interests of other states, interstate commerce as a whole, or the effects of tort liability would more likely be considered.

*Fifth*, and finally, the constitutional-avoidance doctrine is inapplicable here. That doctrine authorizes a court to choose among competing interpretations of a genuinely ambiguous statute only if necessary to avoid an interpretation that creates "serious constitutional problems." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 238 (1998) ("[A court may] invoke the doctrine" of constitutional avoidance *only* when it finds there "is a serious likelihood that the statute will be held unconstitutional."). As explained above, there are no serious constitutional concerns with PLCAA, and therefore constitutional-avoidance principles are not implicated.

In short, PLCAA is constitutional. Plaintiffs' arguments to the contrary should therefore be rejected.

## STATUTORY BACKGROUND

PLCAA preempts certain tort actions that Congress determined would threaten to interfere with interstate and foreign commerce in firearms. *See* 15 U.S.C. § 7901. The Act provides that "[a] qualified civil liability action" against the manufacturers or sellers of firearms "may not be brought in any Federal or State court." *Id.* § 7902(a). A "qualified civil liability action" is defined to include any "civil action or proceeding . . . against a manufacturer or seller of a qualified product . . . for damages, punitive damages, injunctive or declaratory relief . . . or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party." *Id.* § 7903(5)(A). The Act's general bar on qualified civil liability actions applies only to suits concerning firearms that have "been

shipped or transported in interstate or foreign commerce," *id.* § 7903(4), and it protects only manufacturers and sellers who engage in "interstate or foreign commerce," *id.* § 7903(2), (6).

PLCAA contains various exceptions that permit the filing of certain classes of actions that would otherwise be preempted.[3] *See id.* § 7903(5)(A)(i)–(vi). These include claims for negligent entrustment and negligence per se, *id.* § 7903(5)(A)(ii), claims for breach of contract or warranty, *id.* § 7903(5)(A)(iv), claims based on defective products when not "caused by a volitional act that constituted a criminal offense," *id.* § 7903(5)(A)(v), and claims based on knowing violations of statutes "applicable to the sale or marketing of the product," where "the violation was a proximate cause of the harm for which relief is sought," *id.* § 7903(5)(A)(iii).

By enacting PLCAA, Congress believed it was advancing three primary objectives, each of which is set forth in the statutory text. First, Congress had determined that the Act would ensure that "[b]usinesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms . . . in interstate or foreign commerce" will not be held "liable for the harm caused by those who criminally or unlawfully misuse firearm products." *Id.* § 7901(a)(5); *see also id.* § 7901(b)(1). Second, Congress viewed the Act as protecting the "rights of individuals . . . to keep and bear arms," as recognized by the Second Amendment. *Id.* § 7901(a)(1)–(2); *see also id.* § 7901(b)(2). And third, Congress believed that the Act would protect certain "rights, privileges, and immunities guaranteed" by the Fourteenth Amendment, as well as "principles of federalism, State sovereignty and comity between the sister States." *Id.* § 7901(a)(7), (8); *see also id.* § 7901(b)(3), (6).

## ARGUMENT

I.  **The Court should address Plaintiffs' constitutional challenges to PLCAA only if necessary to dispose of the pending motion.**

Before reaching any question pertaining to PLCAA's constitutionality, the Court should first consider whether Walmart's motion for judgment on the pleadings can be resolved on non-

---

[3] In addition to these enumerated exceptions, PLCAA does not prohibit suits against individual users of firearms for the injuries they may cause. *See* 15 U.S.C. § 7902 (preempting only civil actions brought against firearm manufacturers and dealers).

constitutional grounds. "It is a well established principle governing the prudent exercise" of a court's jurisdiction that a court "will not decide a constitutional question if there is some other ground upon which to dispose of the case." *Escambia Cty v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam); *accord Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944). Application of this "fundamental rule of judicial restraint," *Jean v. Nelson*, 472 U.S. 846, 854 (1985) (citation omitted), is particularly appropriate here, where Plaintiffs oppose Walmart's motion chiefly on statutory and state-law grounds, *see* Pls.' Opp. at 4–28, and raise constitutional objections that are contingent on the Court rejecting their statutory arguments, *see id.* at 2, 20, 28 ("[I]f read to bar all of Plaintiffs' claims . . . , PLCAA is unconstitutional." (font modified)). Thus, if the Court can dispose of Walmart's motion without reaching the constitutional issues raised by Plaintiffs, it should do so. *See N.Y. City Transit Auth. v. Beazer*, 440 U.S. 568, 582 (1979) ("Before deciding [a] constitutional question, it [is] incumbent on [a] court[] to consider whether . . . statutory grounds might be dispositive.").

The United States takes no position on whether PLCAA or any of its exceptions apply to any of Plaintiffs' claims.

## II.    PLCAA is a valid exercise of Congress's power under the Commerce Clause and the Supremacy Clause.

As courts have repeatedly recognized, PLCAA is a valid and straightforward exercise of congressional authority under the Commerce Clause and the Supremacy Clause. *See* U.S. Const. art. I, § 8; *id.* art. VI, cl. 2. The Constitution grants Congress the authority "[t]o regulate Commerce . . . among the several States," *id.* art. I, § 8, cl. 3, including "the power to regulate activities that substantially affect interstate commerce," as PLCAA does. *See Gonzales v. Raich*, 545 U.S. 1, 17 (2005). And where Congress has rationally determined that "economic activity substantially affects interstate commerce," the Supreme Court has made clear that "legislation regulating that activity will be sustained." *United States v. Lopez*, 514 U.S. 549, 560 (1995); *see also Gonzales*, 545 U.S. at 22 ("In assessing the scope of Congress' authority under the Commerce Clause, . . . [a court] need not determine whether . . . activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding." (citation omitted)); *Hodel v. Va.*

*Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 276 (1981) ("The judicial task is at an end once the court determines that Congress acted rationally in adopting a particular regulatory scheme.").

Congress enacted PLCAA because it concluded, in relevant part, that lawsuits "commenced against manufacturers, distributors, [and] dealers . . . of firearms that operate as designed and intended, which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, . . . constitute[] an unreasonable burden on interstate and foreign commerce of the United States." 15 U.S.C. § 7901(a)(3), (6). In light of Congress's findings, the Ninth Circuit "ha[d] no trouble concluding that Congress rationally could find that, by insulating the firearms industry from a specified set of lawsuits, interstate and foreign commerce of firearms would be affected." *Ileto*, 565 F.3d at 1140–41. And the Second Circuit concluded similarly that Congress could not have "exceeded its authority" in enacting PLCAA "where there can be no question of the interstate character of the industry in question and where Congress rationally perceived a substantial effect on the industry of the litigation that the Act seeks to curtail." *City of New York*, 524 F.3d at 395.

In preempting qualified civil liability actions to protect this commercial activity, Congress took care to ensure that the required "nexus to interstate commerce" was present in the text of the statute. *See Lopez*, 514 U.S. at 562. PLCAA prohibits only lawsuits brought against entities that manufacture or sell firearms "in interstate or foreign commerce," 15 U.S.C. § 7903(2), (6), and bars only those suits concerning firearms "that ha[ve] been shipped or transported in interstate or foreign commerce," *id.* § 7903(4). These statutory provisions ensure that Congress does not regulate "'truly local' matters," *City of New York*, 524 F.3d at 394 (quoting *United States v. Morrison*, 529 U.S. 598, 618 (2000)), and thus "carefully constrain[] the Act's reach to the confines of the Commerce Clause," *Ileto*, 565 F.3d at 1140.

Furthermore, while tort law issues are generally left to the states, Congress can, by operation of the Supremacy Clause, preempt state tort law if it imposes a burden on interstate commerce and Congress clearly manifests an intent to preempt it. *See* U.S. Const. art. VI, cl. 2 ("[T]he Laws of the United States . . . shall be the [S]upreme Law of the Land; and the Judges in every State shall be bound thereby . . . ."); *see also, e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *Medtronic, Inc. v. Lohr*, 518

U.S. 470, 484–503 (1996). PLCAA expresses Congress's clear intention to preempt "qualified civil liability actions." *See Ileto*, 565 F.3d at 1135 (noting that "Congress clearly intended to preempt common-law claims, such as general tort theories of liability"); 15 U.S.C. § 7901(b)(1) (describing the statute's purpose "[t]o prohibit" victims of gun violence from bringing "causes of action against manufacturers, distributors, [and] dealers . . . of firearms"); *id.* § 7902(a) ("A qualified civil liability action may not be brought in any Federal or State court.").

As noted above, courts have relied on (i) Congress's findings in PLCAA regarding the effect of firearms liability on interstate and foreign commerce, (ii) the interstate nexus in the statutory text confining PLCAA's scope within the ambit of the Commerce Clause, and (iii) the well-established law outlined above, to hold that Congress lawfully acted within its authority in preempting qualified civil liability actions through PLCAA. *See, e.g.*, *Ileto*, 565 F.3d at 1141–42; *City of New York*, 524 F.3d at 394–95; *Travieso*, 526 F. Supp. 3d at 549–50; *Adames*, 909 N.E.2d at 764–65. This Court should reach the same result.

Against the weight of these precedents, however, Plaintiffs suggest that *Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018), requires a different result. *See* Pls.' Opp. at 29–30. Plaintiffs rest this argument on *Murphy*'s recitation of the established principle that "every form of preemption is based on a federal law that regulates the conduct of private actors, not the States." 138 S. Ct. at 1481; *see also, e.g.*, *New York v. United States*, 505 U.S. 144, 166 (1992) ("[The] Constitution . . . confers upon Congress the power to regulate individuals, not States."). In Plaintiffs' view, PLCAA is an impermissible form of preemption because it "regulates" state governments by "command[ing]" how they must apply state law and how state courts must "construe state common law." Pls.' Opp. at 29–30. But as the Ninth Circuit has explained, "the *only* function of PLCAA is to preempt certain claims," namely, those brought by *private* litigants in federal or state court. *Ileto*, 565 F.3d at 1138 (emphasis added). It is thus by the simple operation of the Supremacy Clause that the Act "provides 'a rule of decision'" in cases where state law conflicts with the provisions of PLCAA. *See Murphy*, 138 S. Ct. at 1479–80 (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015)).

To the extent Plaintiffs suggest that PLCAA's mere preemption of qualified civil liability actions is the equivalent of "regulat[ing] . . . the States," *see Murphy*, 138 S. Ct. at 1481, this contention is mistaken. It is axiomatic that Congress's Commerce Clause authority includes the power to preempt state tort laws (as Plaintiffs appear to concede, *see* Pls.' Opp. at 29–30). *See, e.g., Riegel v. Medtronic, Inc.*, 552 U.S. 312, 323–24 (2008). Liability rules—like those contained in PLCAA—are a form of economic regulation. *See, e.g., id.* at 323–25 (recognizing that "[s]tate tort law," including "common-law duties," imposes regulatory standards on manufacturers); *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 398 (3d Cir. 2010) (explaining that "the purpose of" tort suits against companies, such as "state product liability suits against manufacturers . . . is, in part, to persuade [manufacturers] to comply with a standard of care established by the state"), *aff'd sub nom. Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625 (2012). Indeed, Congress made clear that it intended to exercise its Commerce Clause authority in PLCAA based on the economic nature of tort-liability actions, finding that qualified civil liability actions "seek money damages," threaten to "destabiliz[e] . . . industries and economic sectors," and "unreasonabl[y] burden . . . interstate and foreign commerce of the United States." 15 U.S.C. § 7901(a)(3), (6). The adjustment of the rules of liability under PLCAA is thus a type of regulation of economic activity within the core of Congress's Commerce Clause power.[4] *See Morrison*, 529 U.S. at 613 (reaffirming longstanding authority for "Commerce Clause regulation of intrastate activity . . . where that activity is economic in nature"); *see also City of New York*, 524 F.3d at 393–95 (rejecting the contention that PLCAA regulates activity that "is not commercial in nature,"

---

[4] Plaintiffs are thus incorrect to suggest that PLCAA exceeds Congress's Commerce Clause authority because it purportedly does not "regulate existing commercial activity," *see* Pls.' Opp. at 29 (internal quotation marks and citation omitted). This argument is premised on an erroneous line of reasoning from the withdrawn opinion in *Gustafson*, where the court determined that the plaintiff or third-party victim must also participate in interstate commerce (*i.e.*, "a commercial transaction with the gun industry") for PLCAA to constitute a valid enactment under the Commerce Clause. *Gustafson*, slip op. at 37–39. The court reached this conclusion by misapplying *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012), which held that the Affordable Care Act's individual mandate, in compelling individuals who did not participate in the insurance market to purchase insurance, failed to regulate existing commercial activity. *Id.* at 561.

9

because Congress could rationally conclude that qualified civil liability actions directly and substantially affect "the firearms industry").

Furthermore, the Supreme Court has long recognized that Congress's Commerce Clause authority includes the ability to regulate both substantive and procedural elements of liability in state proceedings when justified by findings of an effect on interstate commerce. In *Pierce County*, for example, the Supreme Court rejected a Commerce Clause challenge to a restriction on the use of certain types of evidence in federal or state courts. *See* 537 U.S. at 134.[5]   In that case, the Court overruled a decision by a state supreme court holding that this evidentiary rule, when applied to state-court litigation, lacked a nexus to interstate commerce. *See Guillen v. Pierce Cty.*, 31 P.3d 628, 654 (Wash. 2001). In reversing, the Court explained that the evidentiary rules fell within Congress's Commerce Clause power "to assist state and local governments in reducing hazardous conditions" that, in turn, would affect "the Nation's channels of commerce." *Pierce Cty.*, 537 U.S. at 147. In enacting PLCAA, Congress identified a far more direct effect on interstate commerce: The risk that litigation will disrupt an economically significant industry. And nothing in *Murphy* indicates that the Supreme Court intended to overrule *Pierce County* and other precedents affirming Congress's authority to enact legislation to limit tort liability. *See Am. Trucking Ass'ns v. Smith*, 496 U.S. 167, 190 (1990) (explaining that there is no "*sub silentio* overrul[ing]" of prior Supreme Court precedent); *Hohn v. United States*, 524 U.S. 236, 252–53, (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality.").

---

[5] Specifically, the provision at issue barred from evidence "reports, surveys, schedules, lists, or data compiled for the purpose of identifying[,] evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to [federal statutes] or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds," in any "action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data." *Pierce Cty.*, 537 U.S. at 134 (quoting Surface Transportation and Uniform Relocation Assistance Act of 1987, Pub. L. No. 100-17, § 132, 101 Stat. 132, 170).

### III.    PLCAA does not violate the Tenth Amendment.

As a valid exercise of Congress's power under the Commerce Clause, PLCAA does not invade an area of authority reserved to the states or otherwise contravene the Tenth Amendment. Plaintiffs' arguments to the contrary are without constitutional foundation, as numerous federal and state courts have held. *See, e.g.*, *City of New York*, 524 F.3d at 397; *Travieso*, 526 F. Supp. 3d at 549–51; *Delana*, 486 S.W.3d at 323–24; *Adames*, 909 N.E.2d at 764–65; *Coxe*, 295 P.3d at 388–89; *Prescott*, 410 F. Supp. 3d at 1146.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The powers specifically delegated to Congress under Article I of the Constitution "are not powers that the Constitution 'reserved to the States.'" *United States v. Comstock*, 560 U.S. 126, 144 (2010); *accord New York*, 505 U.S. at 156 ("If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States[.]"). As a result, the "inquiries" under the Commerce Clause and the Tenth Amendment are, in large part, "mirror images of each other." *New York*, 505 U.S. at 156; *see also Brackeen v. Haaland*, 994 F.3d 249, 298 (5th Cir. 2021) (en banc) (op. of Dennis, J.). It is thus an axiom that Congress does not "invade[] areas reserved to the States by the Tenth Amendment simply because it exercises *its* authority under the Commerce Clause," even "in a manner that displaces the States' exercise of their police powers." *Hodel*, 452 U.S. at 291 (emphasis added); *accord Brackeen*, 994 F.3d at 310 ("[T]he Federal Government, when acting within a delegated power, may override countervailing state interests, whether those interests are labeled traditional, fundamental, or otherwise." (cleaned up)); *see also United States v. Mikhel*, 889 F.3d 1003, 1024 (9th Cir. 2018) ("[I]f Congress acts under one of its enumerated powers . . . then there can be no violation of the Tenth Amendment." (internal quotation marks and citation omitted)).

Therefore, where (as here) a federal statute is validly enacted under one of Congress's constitutionally enumerated powers, the only relevant question under the Tenth Amendment is whether the statute unlawfully "commandeers" states' legislative processes or executive officials to

enact or administer a federal regulatory program. *See, e.g.*, *Kelley v. United States*, 69 F.3d 1503, 1509 (10th Cir. 1995) ("Having concluded that [the statute] was a proper exercise of the commerce power by Congress, the only remaining question we must decide is whether Congress, in enacting [the statute], somehow commandeer[s] the legislative processes of the States." (cleaned up)); *accord Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 213–14 (4th Cir. 2002); *Brackeen*, 994 F.3d at 299; *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 122 (2d Cir. 2002); *United States v. Kenney*, 91 F.3d 884, 891 (7th Cir. 1996); *cf. City of Portland v. United States*, 969 F.3d 1020, 1049 (9th Cir. 2020), *cert. denied sub nom. City of Portland v. FCC*, 141 S. Ct. 2855 (2021) (Mem.). As the Supreme Court has explained, the Tenth Amendment's anti-commandeering principle acknowledges a constitutional limitation of "the circumstances under which Congress may use the States as implements of [federal] regulation." *New York*, 505 U.S. at 161. For example, the federal statute at issue in *New York* unconstitutionally "'commandeer[ed]' state governments" by forcing state legislatures or executive officials to enact state regulation according to Congress's instructions. 505 U.S. at 175. In *Printz v. United States*, 521 U.S. 898 (1997), the federal statute comparably "conscript[ed]" local law enforcement officials by requiring them to perform background checks in connection with firearms sales. *Id.* at 935. And in *Murphy*, the federal statute "commandeered the state legislative process" by "command[ing] state legislatures to . . . refrain from enacting [new] state law[s]." 138 S. Ct. at 1478–79.

PLCAA does none of these things, as its "only function . . . is to preempt certain [state tort] claims." *Ileto*, 565 F.3d at 1138. But Plaintiffs nevertheless maintain that PLCAA violates the Tenth Amendment principally because it infringes on states' "lawmaking authority" by requiring states to "use their legislatures [] rather than [their] judiciaries" to establish liability standards for the firearms industry. Pls.' Opp. at 30–31. They ground this contention in Congress's choice to include an

exception in PLCAA for certain statutory claims but not equivalent common-law claims—a provision known as PLCAA's "predicate exception." *See* 15 U.S.C. § 7903(5)(A)(iii).[6]

The Second Circuit rejected this exact argument in *City of New York*, *see* 524 F.3d at 396–97, as have multiple other courts, *see Travieso*, 526 F. Supp. 3d at 550–51; *Delana*, 486 S.W.3d at 323–24; *Coxe*, 295 P.3d at 388–92; *Adames*, 909 N.E.2d at 764–65. As the Second Circuit explained, "the critical inquiry with respect to the Tenth Amendment is whether the PLCAA commandeers the states," *City of New York*, 524 F.3d at 396, and PLCAA "does not commandeer *any* branch of state government because it imposes no affirmative duty of any kind on any of them," *id.* at 397 (cleaned up with emphasis added); *see also, e.g.*, *Coxe*, 295 P.3d at 389 ("PLCAA does not *compel* Alaska's legislature to enact any law, nor does it commandeer any branch of Alaska's government."); *Delana*, 486 S.W.3d at 323 ("PLCAA does not commandeer the executive or legislative branch of Missouri government."). Rather, because PLCAA does nothing more than "expressly preempt[] conflicting state tort law," *Coxe*, 295 P.3d at 389, it "requires only that [a] state court[], *consistent with the Supremacy Clause*, immediately dismiss any preempted" qualified civil liability action, *Delana*, 486 S.W.3d at 323–24 (emphasis added).

Plaintiffs' arguments fail to appreciate that the Tenth Amendment does not limit the obligation of state *courts* to faithfully apply federal law, *contra* Pls.' Opp. at 30–32—an obligation enshrined in the text of the Supremacy Clause, under which federal law is the "supreme Law of the Land" and "the Judges in every State shall be bound thereby." U.S. Const. art. VI, cl. 2. And although "federal statues enforceable in state courts do, in a sense, direct state judges to enforce them, this sort of federal 'direction' of state judges is mandated by the text of the Supremacy Clause" and does not implicate the Tenth Amendment. *Brackeen*, 994 F.3d at 317 (alterations adopted) (quoting *New York*, 505 U.S. at 178–79); *accord id.* at 402–03 (op. of Duncan, J.); *Printz*, 521 U.S. at 928–29 ("[S]tate

---

[6] In *Ileto*, the Ninth Circuit explained this "predicate exception" in detail, noting that, to invoke the exception, a plaintiff must, *inter alia*, "allege a knowing violation of a 'predicate statute,'" *i.e.*, "a State or Federal statute applicable to the sale or marketing of the product." 565 F.3d at 1132–33 (citations omitted). The specifics of the "predicate exception" have no bearing on the error underlying Plaintiffs' contention, however.

courts cannot refuse to apply federal law—a conclusion mandated by the terms of the Supremacy Clause."). Accordingly, "when considering whether a federal law violates the anticommandeering doctrine, the Supreme Court has consistently drawn a distinction between a state's *courts* and its *political branches*." *Brackeen*, 994 F.3d at 317 (emphasis added). And because PLCAA does nothing more than provide state courts with "a rule of decision" in cases where state law conflicts with the Act's provisions, *see Murphy*, 138 S. Ct. at 1479–80 (quoting *Armstrong*, 575 U.S. at 324), the Act does not violate the Tenth Amendment's anti-commandeering principle.

Plaintiffs' Tenth Amendment challenge to PLCAA (and its predicate exception) fails for several additional reasons. *First*, that Congress *limited* the scope of PLCAA's preemption does not implicate the Tenth Amendment in any sense. *See, e.g.*, *Hodel*, 452 U.S. at 291; *Brackeen*, 994 F.3d at 299 ("[I]f Congress enacts a statute pursuant to an enumerated power and the statute does not violate the anticommandeering doctrine or another constitutional provision, then the federal law necessarily has preemptive force."); *City of Spokane v. Fed. Nat'l Mortg. Ass'n*, 775 F.3d 1113, 1117 (9th Cir. 2014) ("[N]othing in the text or structure of the Constitution" precludes "federal preemption . . . when Congress properly exercises its enumerated powers[.]"). Plaintiffs suggest that the Tenth Amendment is offended because Congress chose to *partially* preempt state law (by providing an exception) rather than choosing to fully preempt state law. But as explained above, Congress can, by virtue of the Supremacy Clause, preempt state tort law if the state law imposes a burden on interstate commerce and Congress clearly manifests an intent to preempt it. *See supra* 7–10. If, as here, Congress chooses to limit the scope of preemption within a given state by exempting a certain category of claims, that hardly causes *greater* interference with state prerogatives.

Second, Plaintiffs' claim lacks legal support. Plaintiffs point to no authority invalidating a federal statute on the grounds they urge.[7] The state court decision in *In re Vargas*, 10 N.Y.S.3d 579

---

[7] Indeed, the withdrawn opinion in *Gustafson*, *see supra* n.2, is the only purported source of authority Plaintiffs cite that supports their Tenth Amendment challenge. *See* Pls.' Opp. at 31–32. There, the court found that PLCAA violates the Tenth Amendment because "PLCAA is tort reform" rather than industry regulation. *Gustafson*, slip op. at 57. But it is well-established that Congress may expressly preempt state tort laws to limit liability and promote federal interests. *See Garcia v. Vanguard*

(N.Y. App. Div. 2015), does not indicate a constitutional flaw in PLCAA. *See Travieso*, 526 F. Supp. 3d at 551 (rejecting this precise argument). There, a federal statute prohibited states from issuing professional licenses to undocumented immigrants absent a new state enactment authorizing the license grant, *see* 8 U.S.C. § 1621, but New York law provided that only the judiciary could wield the "sovereign authority" of the state. *Vargas*, 10 N.Y.S.3d at 582. Here, Plaintiffs point to nothing in Maryland law preventing the legislature from enacting tort laws, and Plaintiffs do not argue that PLCAA prevents the state legislature from taking such action.[8]

Third, PLCAA does not effect a wholesale shift of power between the state judiciary and the state legislature, as Plaintiffs suggest. As noted above, the exceptions to PLCAA preserve claims that may be validly created by either the legislature or the judiciary, including negligent entrustment, negligence per se, breach of contract or warranty, and defective design or manufacture. 15 U.S.C. § 7903(5)(A)(ii), (iv), (v). Because the standards for all of these could come from either statutory or common law, it is simply not the case that PLCAA requires states to "use their legislatures [] rather than [their] judiciaries" to establish liability standards for the firearms industry. *See* Pls.' Opp. at 31. Instead, PLCAA leaves states free to allocate their decision-making authority as they see fit. States may regulate (or decline to regulate) firearms through whichever branch of government they choose, and state courts can recognize whichever common-law causes of action they wish. It is only in the

---

*Car Rental U.S.A., Inc.*, 540 F.3d 1242, 1252–53 (11th Cir. 2008) (rejecting challenge to federal preemption of state tort liability for car-rental agencies); *Hammond v. United States*, 786 F.2d 8, 15 (1st Cir. 1986) (finding that preemption of tort remedies under Atomic Weapons Testing Liability Act did not violate Tenth Amendment); *Sparks v. Wyeth Lab'ys, Inc.*, 431 F. Supp. 411, 419 (W.D. Okla. 1977) (finding that preemption of tort remedies under Swine Flu Act did not violate Tenth Amendment).

[8] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), cited by Plaintiffs, *see* Pls.' Opp. at 31, has no application here. That case, which stands for the proposition that "[t]here is no federal general common law," does not bar *preemption* of state tort law. *Erie*, 304 U.S. at 78. And the language that Plaintiffs cite does not apply where "matters [are] governed by the Federal Constitution or by acts of Congress," as is the case here. *Id.*; *see also Lehman Bros. v. Schein*, 416 U.S. 386, 389 (1974) (explaining that, under *Erie*, a state is free to make its own common law, "providing there is no overriding federal rule which pre-empts state law" through federal regulation of "the stream of commerce"); *Franco v. Mabe Trucking Co.*, 3 F.4th 788, 798 (5th Cir. 2021) ("The *Erie* doctrine is not implicated when a valid federal rule or statute directly governs the matter at issue. When a valid federal rule or statute is directly controlling, it must be applied, for it preempts any contrary state law, rule, or practice under the normal operation of the Supremacy Clause." (citations omitted)).

context of a specific lawsuit that a state cause of action will be preempted by PLCAA where a court finds that the claim is in conflict with the Act's provisions. For these reasons, too, PLCAA does not offend the Tenth Amendment.

### IV.    PLCAA does not violate the Fifth Amendment.

Plaintiffs also contend that PLCAA violates the Fifth Amendment's due-process and equal-protection components. *See* Pls.' Opp. at 32–34. Identical claims have been rightly rejected by numerous courts for the reasons set forth below.

### A.    PLCAA does not violate due process.

To successfully advance a due-process claim, a plaintiff must demonstrate both a "depriv[ation] life, liberty, or property" and that the deprivation was "without due process of law." U.S. Const. amend. V; *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) ("[W]e are faced with what has become a familiar two-part inquiry: we must determine whether [the plaintiff] was deprived of a protected interest, and, if so, what process was his due."). Plaintiffs' claim that PLCAA violates due process by "completely" depriving plaintiffs of "all remed[ies]" against the firearms industry, Pls.' Opp. at 32, is factually incorrect and, at any rate, establishes neither a deprivation of property nor a lack of process.

As an initial matter, it is simply not the case that PLCAA "completely eradicate[s]" Plaintiffs' ability to seek redress for their injuries. *See id.* Plaintiffs may seek recovery from an individual whose alleged negligence or criminal conduct causes their injuries. *See supra* p. 5 n.3. Plaintiffs may also sue the manufacturers, distributors, and sellers of the firearm used in the shooting under any claim that falls within the text of PLCAA's exceptions. *See* 15 U.S.C. § 7903(5)(A)(i)–(vi). For these reasons, the Ninth Circuit correctly held in *Ileto* that "PLCAA does not completely abolish Plaintiffs' ability to seek redress,"[9] 565 F.3d at 1143, and other courts have agreed, *see, e.g., Travieso*, 526 F. Supp. 3d at

---

[9] In *Ileto*, the Ninth Circuit held that plaintiffs could "proceed on their claims" against only a single defendant and, in response to the dissent, explained that this possibility sufficiently ensured that the "ability to seek redress ha[d] been limited, but not abolished." 565 F.3d at 1143; *see id.* at 1144 (noting that the relevant analysis is whether the *statute* "contains . . . exceptions" and whether, at the statutory level, "Congress has left in place . . . substitute remedies").

549 (finding an identical argument to be "plainly factually incorrect" because the plaintiff could "still pursue [other] remedies"); *District of Columbia*, 940 A.2d at 177 n.8 ("Congress did not deprive injured persons of all potential remedies against manufacturers or sellers of firearms that discharge causing them injuries."); *Coxe*, 295 P.3d at 390–91; *Delana*, 486 S.W.3d at 324; *Gilland*, 2011 WL 2479693, at *18–20 ("PLCAA contains numerous exceptions and comes nowhere near setting aside all common-law rules concerning firearm manufacturers.").

In any event, it is black-letter law that there is no constitutional property right in common-law tort claims that have yet to accrue or be litigated, and thus, when Congress enacted PLCAA in 2005, it deprived Plaintiffs of no protected property interest. The Constitution "does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." *Silver v. Silver*, 280 U.S. 117, 122 (1929). Accordingly, "[n]o person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit." *N.Y. Cent. R.R. Co. v. White*, 243 U.S. 188, 198 (1917); *accord Duke Power*, 438 U.S. at 88 n.32 ("[A] person has no property, no vested interest, in any rule of the common law." (quoting *Mondou v. N.Y., New Haven, & Hartford R.R. Co.*, 223 U.S. 1, 50 (1912)). For this reason, the Ninth Circuit in *Ileto* held that "a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained." 565 F.3d at 1141 (citation omitted). Numerous other courts of appeals have likewise concluded that there are no protected property interests in pre-judgment tort claims, including those already pending. *See, e.g.*, *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1069 (10th Cir. 2019); *Schmidt v. Ramsey*, 860 F.3d 1038, 1046 (8th Cir. 2017); *In re TMI*, 89 F.3d 1106, 1113 (3d Cir. 1996); *Garcia v. Wyeth-Ayerst Lab'ys*, 385 F.3d 961, 968 (6th Cir. 2004); *Lucas v. United States*, 807 F.2d 414, 421–22 (5th Cir. 1986); *Carr v. United States*, 422 F.2d 1007, 1010–11 (4th Cir. 1970). Because Plaintiffs have no property right in their tort claims, their due-process challenge must fail.[10] *See Am.*

---

[10] This action is therefore distinguishable from *City of Gary v. Smith & Wesson Corp.*, No. 45D05-005-CT-00243 (Ind. Super. Ct. Oct. 23, 2006), *aff'd on other grounds*, 875 N.E.2d 422 (Ind. Ct. App. 2007), the only case Plaintiffs cite as having "held that the PLCAA is unconstitutional as a result of due process concerns." Pls.' Opp. at 33. In *City of Gary*, the plaintiffs had filed their lawsuit prior to the enactment of PLCAA, and thus the Act deprived them of a *pending* cause of action. *See City of Gary*,

*Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'").

But even if Plaintiffs could establish that a property right exists in a cause of action that had been abolished prior to the occurrence of an alleged tort, their contention that the Due Process Clause required Congress to provide "reasonably adequate alternative remed[ies]" in lieu of the "state tort claims" PLCAA preempts is meritless. *See* Pls.' Opp. at 32–33. The Constitution imposes no such requirement, as courts have made clear in cases indistinguishable from this one. *See, e.g., Martinez v. California*, 444 U.S. 277, 280 (1980) (upholding against a due-process challenge a statute barring tort suits over "[a]ny injury resulting from determining whether to parole or release a prisoner" (citation omitted)); *Silver*, 280 U.S. at 121–22; *Schmidt*, 860 F.3d at 1048–49; *cf. Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018) (upholding against a separation-of-powers challenge a statute that provided that all actions relating to a single piece of property "shall be promptly dismissed").

In arguing to the contrary, Plaintiffs misconstrue the holding of *Duke Power. See* Pls.' Opp. at 32–33. There, the plaintiffs brought a due-process challenge to a federal statute limiting the recovery available to a plaintiff for harms caused by a nuclear incident. They argued (like Plaintiffs do here) that the statute "fail[ed] to provide . . . a satisfactory *quid pro quo* for the common-law rights of recovery which the Act abrogate[d]." *Duke Power*, 438 U.S. at 87–88. The Supreme Court rejected that argument because the statute "provide[d] a reasonably just substitute for the common-law or state tort law remedies it replace[d]." *Id.* at 88. But the Court *declined* to decide whether "the Due Process Clause in fact requires" Congress to either "duplicate the recovery at common law or provide a reasonable substitute remedy" when it preempts common-law or state tort law remedies, finding that proposition "not at all clear" given the absence of a protected property interest in common-law rights. *Id.* at 88, 88 n.32; *see also Ileto*, 565 F.3d at 1144 ("[In *Duke Power*], the Court reiterated that it was an open question whether a legislature may abolish a common-law recovery scheme without providing a reasonable substitute remedy."). Therefore, as the Eighth Circuit has explained, "*Duke*

---

875 N.E.2d at 424. The Court of Appeals of Indiana ultimately held that PLCAA did not bar the suit, without reaching the constitutional issue. *Id.* at 434–45.

*Power* did not uphold the challenged act on the basis of a substitute remedy; it merely refused to strike the act for lacking one, because it *did not* lack one." *Schmidt*, 860 F.3d at 1049; *accord Ileto*, 565 F.3d at 1144. Plaintiffs have thus identified no authority to support their theory of due process.

> **B.     PLCAA does not violate equal protection.**

The Court need not subject PLCAA to any degree of equal-protection scrutiny because the Act cannot meaningfully be said to discriminate among various classes of tort victims. *See, e.g.*, *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012) ("Before a court may get to the business of assessing the rationality of a" government action challenged on equal-protection grounds, "some evidence of intentional discrimination against a particular class of persons must be present."); *Sylvia Development Corp. v. Calvert Cnty.*, 48 F.3d 810, 819 (4th Cir. 1995) ("[O]nly if the use of a classification is . . . established does the equal protection analysis proceed . . . ."). Plaintiffs assert, however, that the availability of different causes of action to potential plaintiffs in different states violates equal-protection principles. Pls.' Opp. at 33–34. But PLCAA's "only function" is to preempt certain state law causes of action. *Ileto*, 565 F.3d at 1138. It does not "create discrete and objectively identifiable classes" of tort victims, and thus the so-called "classes" identified by Plaintiffs are not cognizable under equal protection. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 60 (1973) (Stewart, J., concurring); *accord Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296–97 (11th Cir. 2012) ("[N]o valid equal protection claim [can] exist[]" in the absence "of a discrete and identifiable group to which [the plaintiff] belonged and which the [government] treated in a discriminatory, prejudicial manner" under a "governmental classification[.]"); *Roy v. Barr*, 960 F.3d 1175, 1181 (9th Cir. 2020) ("In analyzing [a plaintiff's equal-protection] claim, [a court] first identif[ies] the government's classification of groups in the statute." (cleaned up)). Plaintiffs have therefore not identified a classification drawn by the statute that can be the subject of an equal-protection challenge. *See Applegate, LP v. City of Frederick*, 179 F. Supp. 3d 522, 531 (D. Md. 2016) ("To make out a *prima facie* case for an equal protection violation," a plaintiff must demonstrate that "he has been treated differently from others with whom he is similarly situated"—*i.e.*, "persons materially identical to him"—"and that the unequal treatment was the result of intentional or

purposeful discrimination." (citation omitted) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001))).

But even assuming for argument's sake that Plaintiffs had identified similarly situated classes of tort victims who are treated disparately under PLCAA, their claim would be subject only to rational-basis review (as Plaintiffs appear to acknowledge, *see* Pls.' Opp. at 33–34). *See Adkins v. Rumsfeld*, 464 F.3d 456, 469 (4th Cir. 2006) ("A classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity" and is reviewed under "the rational basis test[.]" (alteration adopted and citation omitted)); *accord Minn. State Bd. For Cmty. Colls. v. Knight*, 465 U.S. 271, 291 (1984); *see also Ileto*, 565 F.3d at 1141 (there is no "suspect classification common to those adversely affected by the PLCAA"). Plaintiffs cannot show that PLCAA fails to survive this "exceedingly low level of judicial scrutiny," *see Aleman v. Glickman*, 217 F.3d 1191, 1201 (9th Cir. 2000), because, to do so, Plaintiffs must demonstrate that there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose," *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993). Under rational-basis review, "[a] statute is presumed constitutional, and 'the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it,' whether or not the basis has a foundation in the record." *See id.* at 320–21 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). "Given the standard of review, it should come as no surprise that [courts] hardly ever strike[] down a policy as illegitimate under rational basis scrutiny." *Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018).

As a general rule, equal-protection principles do not require a legislature to treat all types of tort lawsuits identically when it acts to foreclose, limit, or otherwise adjust the rules of tort liability. *See, e.g.*, *Duke Power*, 438 U.S. at 93–94; *Gross v. United States*, 771 F.3d 10, 13–16 (D.C. Cir. 2014); *Miller v. United States*, 73 F.3d 878, 879–83 (9th Cir. 1995); *Collins v. Schweitzer*, 21 F.3d 1491, 1494 (9th Cir. 1994); *Benton v. United States*, 960 F.2d 19, 22–23 (5th Cir. 1992); *Vanderwater v. Hatch*, 835 F.2d 239, 243–44 (10th Cir. 1987); *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 52–53 (3d Cir. 1985); *Schloss v. Matteucci*, 260 F.2d 16, 17–18 (10th Cir. 1958); *Carton v. Gen. Motors Acceptance Corp.*, 639 F. Supp. 2d 982, 991–92 (N.D. Iowa 2009)*, aff'd on other grounds*, 611 F.3d 451 (8th Cir. 2010); *M.D. v.*

*United States*, 745 F. Supp. 2d 1274, 1278–81 (M.D. Fla. 2010). And here, "Congress rationally could find that, by insulating the firearms industry from a specified set of lawsuits," interstate commerce would be protected. *Ileto*, 565 F.3d at 1140–41; *see also N.Y. v. Beretta*, 401 F. Supp. 2d at 295. Congress also could rationally conclude that the unpredictability of common law tort actions could pose a greater threat to the firearms industry than would defined legislative enactments that are necessarily passed by democratically accountable actors. *See* 15 U.S.C. § 7901(a)(7) (expressing specific concern about the "expansion of liability" by a "judicial officer or petit jury"); *see also Martin v. Harrington & Richardson, Inc.*, 743 F.2d 1200, 1204 (7th Cir. 1984) (judicially-created "liability for the sale of handguns . . . would in practice drive manufacturers out of business[ and] produce a handgun ban by judicial fiat"). And Congress could rationally conclude that broad public interests, including the interests of federalism, comity among States, interstate commerce, and individual interests would be more likely to receive due consideration in a public legislative forum. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). Any one of these conclusions is all that is required under rational-basis review, as a number of courts have found.[11] *See, e.g., Ileto v. Glock, Inc.*, 421 F. Supp. 2d 1274, 1301 (C.D. Cal. 2006) (finding that PLCAA advances a rational basis of "prevent[ing] a perceived undue burden on interstate commerce caused by what Congress has determined to be 'predatory' lawsuits against the firearms industry"), *aff'd*, 565 F.3d 1126 (9th Cir. 2009); *Ileto*, 565 F.3d at 1140; *Travieso*, 526 F. Supp. 3d at 549; *Coxe*, 295 P.3d at 391–92; *Gilland*, 2011 WL 2479693, at *20–22.

And contrary to Plaintiffs' counterargument, *see* Pls.' Opp. at 34, it was not irrational or incongruous for Congress to prohibit only qualified civil liability actions while allowing other types of civil actions to proceed against firearm manufacturers and distributors. Although Congress enacted PLCAA to protect the firearm industry from liability "for the harm caused by those who criminally or unlawfully misuse firearm products," *see* 15 U.S.C. § 7901(a)(5), Congress was "free to address itself to what it believe[d] to be the most serious aspect of [the] broader problem," *see Michael M. v.*

---

[11] Indeed, it is *more* than is required under rational-basis review, because "a legislature that creates [non-suspect] categories need not actually articulate at any time the purpose or rationale supporting its classification." *Heller*, 509 U.S. at 320 (citation omitted).

*Superior Ct. of Sonoma Cty.*, 450 U.S. 464, 481 n.13 (1981) (Stewart, J., concurring). Equal-protection principles therefore imposed no obligation on Congress to "choose between attacking every aspect of [the] problem or not attacking the problem at all." *See Dandridge v. Williams*, 397 U.S. 471, 486–87 (1970); *accord Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 488–89 (1955) ("[R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others." (citation omitted)).

## V.   The canon of constitutional avoidance does not apply.

Plaintiffs argue that principles of constitutional avoidance mandate the adoption of their interpretation of PLCAA. Pls.' Opp. at 7–9, 20. The United States takes no position on whether Plaintiffs' interpretation is correct, but constitutional considerations should play no role in the Court's analysis of that question.

The canon of constitutional avoidance "is a tool for choosing between competing plausible interpretations of a statutory text," *Clark v. Martinez*, 543 U.S. 371, 381 (2005), but it may be invoked *only* where there exist "'grave doubts' about the constitutionality of [a] statute," *Ileto*, 565 F.3d at 1143 (quoting *Almendarez–Torres*, 523 U.S. at 237–38). This requires more than the "mere mention" of a constitutional problem, *Nat'l Mining Ass'n v. Kempthorne*, 512 F.3d 702, 711 (D.C. Cir. 2008), but rather "a *serious likelihood* that the statute will be held unconstitutional," *Almendarez-Torres*, 523 U.S. at 238 (emphasis added). Here, as explained above, there are no serious constitutional problems with PLCAA, so the Court should not apply constitutional-avoidance principles in its construction of the Act. *See Ileto*, 565 F.3d at 1144 ("[W]e do not doubt the constitutionality of the PLCAA, let alone have 'grave doubts.' . . . [W]e [thus] decline to apply the doctrine of constitutional avoidance.").

Plaintiffs' authorities—*Gregory v. Ashcroft*, 501 U.S. 452 (1991), and *Bond v. United States*, 572 U.S. 844 (2014)—apply variations of the general constitutional-avoidance principle. In those cases, the Supreme Court explained that statutes should be narrowly construed if necessary to avoid "upset[ting] the usual constitutional balance of federal and state powers," thereby creating "a potential constitutional problem." *Gregory*, 501 U.S. at 460, 464; *accord Bond*, 572 U.S. at 858, 860. In

*Gregory*, the Court expressed concern that interpreting federal law to invalidate a mandatory retirement age for state judges would undermine "the authority of the people of the States to determine the qualifications of their most important government officials," an authority "reserved to the States under the Tenth Amendment" that the Court suggested "may be inviolate." 501 U.S. at 463–64. In *Bond*, the constitutional risk existed because an expansive reading of the federal criminal statute would have permitted federal prosecution of "purely local crimes," a "dramatic[] intru[sion]" on "state criminal jurisdiction." 572 U.S. at 857, 860 (quoting *United States v. Bass*, 404 U.S. 336, 350 (1971)). PLCAA's unremarkable preemption of state tort law raises no similar constitutional concern or federalism issue. *See Prescott*, 410 F. Supp. 3d at 1132 n.3 (rejecting argument that federalism principles stated in *Gregory* and *Bond* require "a narrower construction of the PLCAA"); *accord Travieso*, 526 F. Supp. 3d at 540–41; *Delana*, 486 S.W.3d at 322-23; *see Ileto*, 565 F.3d at 1135–46; *Riegel*, 552 U.S. at 326 (rejecting dissent and finding no serious constitutional issue raised by preemption of tort laws where "the statute itself speaks clearly to the point").

Moreover, PLCAA reflects Congress's express intent to "prohibit causes of action" brought under state tort law. 15 U.S.C. § 7901(b)(1); *see id.* § 7902(a) (providing that covered tort actions "may not be brought in any Federal or State court"). The Ninth Circuit recognized this in *Ileto*, holding that "congressional intent [to preempt state tort claims] is clear from the text and purpose of the statute." 565 F.3d at 1142–43; *see also id.* at 1135–36; *accord Travieso*, 526 F. Supp. 3d at 541. Here, unlike in *Bond*, *see* 572 U.S. at 859–60, 863, it is well-established that Congress may preempt state tort causes of action, *see supra* 7–10, and there is therefore no reason to search for an ambiguity from which to override the statutory text. Likewise, Congress left no ambiguity in its statements of findings and purposes, where it established that PLCAA limits liability from "the harm caused by those who criminally or unlawfully misuse firearm products . . . that function as designed and intended." 15 U.S.C. § 7901(a)(5). Thus, "[b]ecause Congress has expressly and unambiguously exercised its constitutionally delegated authority to preempt state law negligence actions against [manufacturers and] sellers of firearms, there is no need to employ a narrow construction to avoid federalism issues."

23

*Delana*, 486 S.W.3d at 323; *accord Travieso*, 526 F. Supp. 3d at 540–41; *Prescott*, 410 F. Supp. 3d at 1132 n.3 ("reject[ing] . . . argument in favor of a narrower construction of the PLCAA").

## CONCLUSION

For the foregoing reasons, the Constitution does not require the Court to invalidate PLCAA, nor does the canon of constitutional avoidance require the Court to adopt a narrow construction of the Act.

Dated: December 27, 2021         Respectfully Submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Intervenor United States of America*