IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KAYLA M. BRADY *et al.*, | |
| Plaintiffs, | |
| v. | Civil Case No.: 8:21-cv-01412-CBD |
| WALMART INC. *et al.*, | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO UNITED STATES INTERVENTION BRIEF IN DEFENSE OF THE CONSTUTIUTIONALITY OF THE PROTECTION OF LAWFUL COMMERCE IN ARMS ACT**

i

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

I.   PLCAA Exceeds Congress's Authority Under the Commerce Clause ............................ 1

II.  PLCAA Violates the Tenth Amendment .......................................................................... 4

III. PLCAA Violates the Fifth Amendment ............................................................................ 8

    A.  PLCAA Violates Due Process ..................................................................................... 8

    B.  PLCAA Violates the Equal Protection Component of the Fifth Amendment's Due Process Clause ......................................................................................................... 10

IV.  The Counterarguments Raised By the U.S. Against the Application of Supreme Court Federalism Precedent Are Unavailing ............................................................................ 11

# **TABLE OF AUTHORITIES**

**CASES**

*Bond v. States,* 134 S. Ct. 2077 (2014) ................................................................................... 1, 12
*Brackeen v. Haaland,* 994 F.3d 249 (5th Cir. 2021) (*en banc*) ....................................................... 6
*Cipollone v. Liggett Group*, 505 U.S. 504 (1992) ....................................................................... 13
*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) .................................................. 11
*City of Gary v. Smith & Wesson Corp.*, No. 45D05-0005-CT-00243, 4 ......................................... 9
*City of New York v. Beretta U.S.A. Corp.,* 524 F3d 384, 393-95 (2nd Cir. 2008)………………2,9
*City of Spokane v. Federal Nat'l Mortg. Ass'n,* 755 F3d 1113 (9th Cir. 2014)……………………7
*Delana v. CED Sales, Inc.,* 486 S.W.3d 316 (Mo. 2016) (*en banc*), 486 S.W.3d 316 ............. 9, 13
*District of Columbia v. Beretta U.S.A. Corp.,* 940 A.2d 163, 177-78 (D.C. 2008) ........................ 9
*Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59 (1978) ...................................... 8, 10
*Erie R.R. v. Tompkins,* 304 U.S. 64 (1938) ................................................................................ 6, 7
*Estate of Kim v. Coxe,* 295 P.3d 380 (Alaska 2013) ...................................................................... 9
*Gregory v. Ashcroft,* 501 U.S. 452 (1991) ........................................................................ 1, 12, 13
*Gustafson v. Springfield, Inc.,* 207 WDA 2019, 57 (Pa. Super. Ct. Sept. 28 2020) ................... 2, 7
*Ileto v. Glock Inc.*, 565 F.3d 1126, 1140-41 (2009) ................................................................... 2, 9
*Marbury v. Madison*, 5 U.S. 137, 163 (1803) ................................................................................ 8
*Martinez v. California,* 444 U.S. 277, 280, 282 (1980) .......................................................... 10, 12
*Matter of Vargas* ("*Vargas*"), 131 A.D.3d 4 (N.Y. App. Div. 2015) ............................................. 5
*McBride v. General Motors Corp.*, 737 F. Supp. 1563 (M.D. Ga. 1990) .............................. 10, 11
*Murphy v. NCAA*, 138 S. Ct. 1461, 1481, 1485 (2018) ..................................................... 3, 5, 6, 7, 8
*New York v. United States*, 505 U.S. 144, 188 (1992) .................................................................. 4
*Pierce County v. Guillen*, 537 U.S. 129 (2003) ............................................................................. 4
*Remington Arms Co., LLC v. Soto,* 140 S.Ct. 513 (2019) ............................................................ 13
*Reno v. Condon*, 528 U.S. 141, 149 (2000) ................................................................................... 4
*Riegel v. Medtronic, Inc.,* 552 U.S. 312, 323-36 (2008) ................................................................ 3
*Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 120, 202 A. 3d 262, 303 (2019) ........... 13
*Travieso v. Glock Inc.*, 2021 U.S. Dist. LEXIS 45275, *12 n. 1 (D. Ariz. March 10, 2021) ....... 12
*Truax v. Corrigan*, 257 U.S. 312, 329-330 (1921) ........................................................................ 8
*United States v. Morrison,* 529 U.S. 598, 614 (2000) ................................................................... 2

**STATUTES**

15 U.S.C. § 7901 ................................................................................................................ *1, 4, 13*

15 U.S.C. § 7902 ..................................................................................................................... 3, 5

15 U.S.C. § 7903 ................................................................................................................. *passim*

NOW COME the Plaintiffs, Kayla M. Brady *et al.*, who respectfully files this reply to the brief filed by the United States Department of Justice ("the U.S.") addressing the constitutionality of the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. §§ 7901-7903.  The Plaintiffs provide as follows:

## INTRODUCTION

If read to prevent this Court from applying and enforcing Maryland tort law to provide Plaintiffs redress for the foreseeable consequences of Defendants' negligent and unlawful conduct in Maryland, PLCAA is an unprecedented and unconstitutional statute for the reasons stated in Plaintiffs' Opposition to Defendants' Motion to Dismiss ("MTD Opp. Br.") at 28-34.[1]  The U.S., in its intervention brief ("U.S. Int. Br.") raises various arguments in defense of PLCAA's constitutionality but also, despite purporting not to do so, opines as to how PLCAA should be interpreted by arguing against application of the federalism principles required under *Gregory v. Ashcroft,* 501 U.S. 452 (1991), *Bond v. United States*, 134 S. Ct. 2077 (2014) and *Cipollone v. Liggett Group*, 505 U.S. 504 (1992).  *Compare* U.S. Int. Br. at 1, 22-24 *with* MTD Opp. Br. at 7-9.  The U.S.'s arguments are flawed and should be rejected.  PLCAA is unconstitutional.

## ARGUMENT

**I.     PLCAA Exceeds Congress's Authority Under the Commerce Clause**

Congress, in PLCAA, has exceeded its Commerce Clause authority.  PLCAA does not regulate commerce or the activities of gun companies in any way, but only impermissibly targets private parties like the Plaintiffs (who are commanded not to bring certain cases), judges (who are commanded to dismiss certain cases), state lawmaking authorities (who must use their

---

[1] This Court need not reach these constitutional questions, however, because this case is not a prohibited "qualified civil liability action."  *See* MTD Opp. Br. at 4-20.  The principle of constitutional avoidance, as well as the federalism principles discussed in the MTD Opp Br. at 4-20, further supports adoption of Plaintiffs' interpretation of PLCAA.  *See* MTD Opp. Br. at 20.

legislative branches to establish cognizable liability standards for permitted actions).  None of these entities are engaged in any form of commercial activity related to firearms.  All fall outside the scope of Congress's permissible Commerce Clause authority.  *See* MTD Opp. Br. at 28-30.

In trying to defend PLCAA as a valid exercise of Commerce Clause power, the U.S. cannot dispute these realities.  The U.S. places significant reliance on Congress's statements that the PLCAA regulates commercial activity.  *See* U.S. Int. Br. at 6-10.   This reliance is misplaced. "Simply because Congress may conclude that a particular activity substantially affects interstate commerce does not necessarily make it so. Rather, whether particular operations affect interstate commerce sufficiently to come under the constitutional power of Congress to regulate them is ultimately a judicial rather than a legislative question." *United States v. Morrison,* 529 U.S. 598, 614 (2000) (striking down statute as exceeding Congress's Commerce Clause authority despite congressional findings) (internal quotation omitted).

Courts finding PLCAA to be a valid exercise of Congress's Commerce Clause power have, like the U.S., embraced the facile conclusion that PLCAA targets interstate commerce because of the interstate nature of the firearms industry.  *See, e.g., City of New York v. Beretta U.S.A. Corp.,* 524 F.3d 384, 393-95 (2d Cir. 2008); *Ileto v. Glock Inc*., 565 F.3d 1126, 1140-41 (9th Cir. 2009) (both cited in U.S. Int. Br. at 6-10).  *Gustafson v. Springfield, Inc.*, 207 WDA 2019, 57 (Pa. Super. Ct. Sep. 28, 2020) *opinion withdrawn subject to en banc reargument at* 2020 Pa. Super. LEXIS 957 (Dec. 3, 2020) (attached as Exhibit 1) (applying *Nat'l Fed'n of Indep. Bus. v. Sebelius,* 567 U.S. 519, 558 (2012)[2])  correctly pinpointed this analytical error and found that "[m]erely because a statute impacts an interstate industry, does not automatically mean that statute regulates *activity* substantially affecting interstate commerce."  Ex. 1 at 36-39 (emphasis added); *see also id*.

---

[2] While the opinion has been withdrawn pending *en banc* review, its reasoning remains persuasive.

(PLCAA impermissibly "regulates the inactivity of individuals who may *never* have engaged in a commercial transaction with the gun industry" and "forces [plaintiffs] to serve as financial sureties for the negligen[ce]'" of the industry by blocking otherwise valid suits). The appellate authorities cited by the U.S. (U.S. Int. Br. at 8) upholding PLCAA under the Commerce Clause gloss over this crucial point. They also predate *Nat'l Fed'n of Indep. Bus.* and *Murphy v. NCAA*, 138 S. Ct. 1461, 1481 (2018), which clarifies the limits of Commerce Clause authority, and states that "every form of [permissible] preemption [under the Commerce Clause] is based on a federal law that regulates the conduct of private actors, not the States.". *See also id.* at 1485 (J. Thomas, concurring) ("even assuming the Commerce Clause allows Congress to prohibit intrastate sports gambling directly, it does not authorize Congress to regulate state governments regulation of interstate commerce") (internal quotation omitted).

The U.S. also relies on *Riegel v. Medtronic, Inc.,* 552 U.S. 312 (2008), which disproves its position. *Riegel* upheld preemption of state common law actions to the extent that they sought to impose requirements above and beyond safety standards actually established for that industry by federal law. *Riegel* at 552 U.S. at 323-36. PLCAA, unlike a valid preemption law, imposes no such standards on members of an industry actively engaged in commerce. It simply 1) bars certain victims of gun industry negligence from bringing suits; 2) commands courts to dismiss lawsuits that Congress deems unsupported by state law; 3) directs states to engage in legislative rather than judicial lawmaking in order to preserve some liability cases. 15 U.S.C. § 7903(5)(A)(iii).

The U.S. also attempts to distinguish PLCAA from the statute in *Murphy* by arguing that it does not target state lawmaking functions and that its application is limited only to private litigants like the plaintiffs. U.S. Int. Br. at 8. This argument ignores the fact that PLCAA's plain text commands "court[s]" to dismiss certain qualified civil liability actions (15 U.S.C. § 7902(b)) and expresses Congress's distrust of how "maverick judicial officer(s)" might construe common

3

law. §7901(a)(7). One of PLCAA's key targets was state judicial branches (and state and/or federal judges applying state law), which explains its discriminatory preference for state legislative enactments codifying liability standards. *See* § 7903(5)(A)(iii). By allowing claims where there are violations of statutes (under the predicate and negligence per se exceptions) while barring identical common law claims, PLCAA clearly targets state lawmaking functions which are not commercial in nature.

Finally, the U.S. also unpersuasively attempts to analogize this case to *Pierce County v. Guillen*, 537 U.S. 129 (2003). U.S. Int. Br. at 10. But *Pierce County* also involved regulation of commerce. It concerned the admissibility of evaluations of highway safety prepared by states to receive federal funds in connection with "legislation aimed at improving safety in the channels of commerce and increasing protection for the instrumentalities of interstate commerce." *See Pierce County,* 537 U.S. at 147. PLCAA, in contrast, is not addressing materials produced in a response to a federal regulatory scheme; it attacks entirely state law claims and state lawmaking functions. Further, PLCAA is no way connected to "channels of commerce" like interstate highways.

## II.     PLCAA Violates the Tenth Amendment

Even if Congress had the authority to enact PLCAA, PLCAA nevertheless violates the Tenth Amendment. *See New York v. United States*, 505 U.S. 144, 188 (1992) (regulation within Congress's Commerce Clause authority but violated the Tenth Amendment); *Reno v. Condon*, 528 U.S. 141, 149 (2000) ("in *New York* and *Printz*, we held federal statutes invalid, not because Congress lacked legislative authority over the subject matter, but because those statutes violated the principles of federalism contained in the Tenth Amendment"). It violates the Tenth Amendment's prohibition on "commandeering" by dictating that judges must dismiss certain cases and dictating that states must use their legislatures to fashion liability standards applicable to the firearms industry as opposed to relying upon judicially created tort law. MTD Opp. Br. at

30-32. PLCAA also defines one or more rules of common law in violation of the Tenth Amendment. *See id.*

The U.S. has provided no credible response to the case addressing the Tenth Amendment concerns associated with the most similar statute of which Plaintiffs are aware –*Matter of Vargas*, 131 A.D.3d 4 (N.Y. App. Div. 2015) --or to the Supreme Court's teaching in *Murphy*. *Vargas* found that Congress "cannot, consistent with the core principles of state sovereignty guaranteed by the Tenth Amendment, vest in the federal government the right to take away from the state its authority to determine which coequal branch of government should exercise the power of the sovereign." *Id*. at 26–27 (rejecting reading of federal statute so as to require a legislative opt-out from its terms where state had chosen to allocate decision-making authority to the judiciary); *see also* MTD Opp. Br. at 30-32 (discussing *Vargas*). The U.S. attempts to distinguish *Vargas* by arguing that PLCAA does not compel or preclude the Maryland legislature from codifying liability standards into statute. U.S. Int. Br. at 14-15. But this is not a point of distinction but of *commonality*. In *Vargas*, the relevant statute similarly didn't compel or preclude action by the New York legislature in opting out of the law. *See* 131 A.D.3d at 6, 17.

The U.S., in response, offers up a number of unpersuasive arguments and authorities. It relies upon a number of courts which have upheld PLCAA on the basis that the Tenth Amendment can only be violated by an artificially narrow type of "commandeering." *See* U.S. Int. Br. at 11-16. Relatedly, it posits that "commandeering" depends upon a showing that Congress has imposed some sort of "'affirmative duty'" on the states. *Id*. (quoting *City of New York,* 524 F.3d 384). The U.S. is wrong as matter of both fact and law. PLCAA *does* affirmatively command that courts applying judicially created state liability standards dismiss congressionally defined actions. 15 U.S.C. § 7902(b). This is unconstitutional "commandeering" even under the U.S.'s unduly narrow construction of the Tenth Amendment's

5

protections.  However, and perhaps more importantly, all of the U.S.'s appellate cases predate *Murphy* -- which *expressly rejected* the United States' limitation of prohibited "commandeering" to situations in which a federal statute affirmatively compels state action.  *Murphy* labeled the distinction between an affirmative command and a prohibition on state action "empty" for purposes of a Tenth Amendment analysis.  138 S. Ct. at 1478.  PLCAA, like the statute in *Murphy*, falls afoul of the "anticommandeering" rule because Congress commands the state of Maryland that in order to regulate citizens or activities within its borders (by imposing liability on negligent gun companies) it must exercise its police powers in a given way, by using its legislative branch to establish liability standards.  *Murphy* makes clear this is impermissible.

      The fact that *Murphy* involved a federal statute acting to prohibit a state legislature from making law whereas PLCAA precludes state judges from developing common law liability standards (or federal judges applying state law) is, contrary to the U.S. Int. Br. (*see id*. at 13-14), not a meaningful distinction.    The U.S. cites *Brackeen v. Haaland,* 994 F.3d 249 (5th Cir. 2021) (*en banc*) to suggest that the "anticommandeering" doctrine can never apply to any federal government infringement on state judicial power. *See* U.S. Int. Br. at 13-14.  But *Brackeen* was "divided . . . on whether [a relevant] provision[] unconstitutionally commandeers state courts." *Id*. at 268 (*per curiam*).  Further, the *en banc* majority emphasized that it was upholding "substantive standards" as part of the rule that "federal standards may supersede state standards even in realms of traditional state authority." *See Brackeen*, 994 F.3d 249 at 416-19 (J. Duncan) (emphasis added).  Here, as discussed above, PLCAA supplies no federal standard governing the firearms industry which displaces contrary state law.  Further, a categorical rule that the federal government can never "commandeer" state judiciaries as opposed to legislatures, as urged by the U.S. (*see* U.S. Int. Br. at 13-14), is contrary to *Erie's* clear instruction that state judicial lawmaking and state legislative lawmaking are equally exempt from federal intrusion.  *See* 304

U.S. at 78[3]; *see also Gustafson,* Ex. 1 at 56-57 ("the Constitution of the United States . . . recognizes and preserves the autonomy and independence of the States – independence in their legislative and independence in their judicial departments.") (internal quotation to *Erie* omitted).

Additionally, the U.S. fails to recognize that the protection provided by the Tenth Amendment is not limited to a rule against "commandeering," because "[t]he Constitution [] leaves to the several States a residuary and inviolable sovereignty, reserved explicitly to the States by the Tenth Amendment" with "the outer limits of that sovereignty" as yet, undefined, rather than limited to a prohibition on "commandeering." *Compare New York*, 505 U.S. at 188 *with* U.S. Int. Br. at 11-12. PLCAA's interference with state-lawmaking functions would constitute a Tenth Amendment violation independent of whether one labels it "commandeering" -- even though it *is* "commandeering" under the broad understanding of this term in *Murphy*. One of the U.S.'s own cited authorities supports this point. In *City of Spokane v. Federal Nat'l Mortg. Ass'n,* 775 F.3d 1113 (9th Cir. 2014) (cited in U.S. Int. Br. at 14), the Ninth Circuit ultimately rejected a Tenth Amendment challenge, but grounded its finding that a policy was constitutional on the conclusion that the policy "neither commandeer[ed] state and local officials *nor transgress[ed] general principles of federalism.*" *Id*. at 1118 (emphasis added).

Finally, the U.S. wrongly suggests that Plaintiffs are alleging a Tenth Amendment violation because PLCAA preempts some, but not all, judicially-created state tort claims. *See* U.S. Int. Br. at 14-16. According to Defendant, PLCAA precludes all judicially-created state tort

---

[3] The U.S. claims that *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) has "no application" to the Tenth Amendment inquiry. U.S. Int. Br. at 15 n. 8. But "*Erie* . . . has *blatant* Tenth Amendment implications; the case speaks in Tenth Amendment language." *Gustafson* (Ex. 1) at 56 (emphasis in the original). The U.S. also misrepresents *Erie* by suggesting that the validity of the language from *Erie* relied upon by Plaintiffs in MTD Opp. Br. at 31 is contingent upon language quoted by the U.S. in 15 n. 8. A reading of *Erie* reveals that the language relied upon by the Plaintiffs is not conditioned in any way on the language quoted by the United States. *Compare* U.S. Int. Br. at 15 n. 8 with *Erie*, 304 U.S. 78.

7

claims while allowing identical claims if these elements are codified into statute. *See* 15 U.S.C. § 7903(5)(A)(iii). The U.S. acknowledges that PLCAA broadly prioritizes state legislative lawmaking over state judicial lawmaking. *Compare* U.S. Int. Br. at 15-16 *with id*. at 3-4 ("Congress also could rationally find that state legislative processes would provide a forum in which the interests of other states, interstate commerce as a whole, or the effects of tort liability would more likely be considered [than state judiciaries]"); *see also id*. at 21 (similar statement).

In any event, the U.S. is also wrong as to the theory underlying Plaintiffs' Tenth Amendment challenge. PLCAA violates the Tenth Amendment regardless of whether its preemption is complete, because it infringes on states' sovereign authority to establish and enforce its own laws, and to provide redress to citizens injured by gun industry misconduct under judicially created liability standards. *See* 15 U.S.C. § 7903(5)(A)(iii). The U.S. has put forward no authority which has ever upheld PLCAA or any other similar statute in light of *Murphy*'s teachings on the Tenth Amendment. This is because no such case exists.

### III.     PLCAA Violates the Fifth Amendment

#### A.     PLCAA Violates Due Process

PLCAA purports to completely deny many victims of gun industry misconduct of any remedy whatsoever from those companies who caused them injury. No other federal law purports to so utterly deprive claimants of any recovery. The Constitution does not allow it. On the contrary, the Supreme Court has long recognized "[w]here there is a legal right, there is also a legal remedy by suit or action at law." *Marbury v. Madison*, 5 U.S. 137, 163 (1803) (internal quotation omitted). If Congress acts to extinguish common law remedies it must provide a "reasonably just" substitute. *Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 93 (1978); *see also Truax v. Corrigan*, 257 U.S. 312, 329-330 (1921). PLCAA fails to meet this requirement. *See* MTD Opp Br. at 32-33. At least one court has held that PLCAA is

unconstitutional as a result of due process concerns for failing to provide such a reasonably adequate remedy. *City of Gary v. Smith & Wesson Corp.*, No. 45D05-0005-CT-00243, (Ind. Super. Ct. Oct. 23, 2006) (attached as Ehibit 2).[4]

The U.S. responds by suggesting that PLCAA, by allowing a gun violence victim to still sue the shooter or a gun industry actor who falls within one of PLCAA's exceptions, does, in fact, preserve a reasonably adequate remedy. *See* U.S. Int. Br. at 16-17. But the preservation of an illusory remedy against a party who is likely judgment proof is not a reasonably adequate remedy. And the fact that exceptions may apply in some other cases is irrelevant if these particular Plaintiffs have no remedy. The U.S. has identified no statute like PLCAA which purports to totally deprive victims of misconduct by actors within a certain industry of any reasonably adequate remedy.

The authorities the U.S. cites in support of the proposition that PLCAA comports with due process are inapposite, incorrectly reasoned or both. *See* U.S. Int. Br. at 16-17. At least two of these cases dismissed due process challenges while holding that PLCAA allowed certain claims to proceed – meaning that the courts were not confronted with the complete deprivation of redress at issue here. *Delana v. CED Sales, Inc.,* 486 S.W.3d 316 (Mo. 2016) (*en banc*), 486 S.W.3d 316 (allowing negligent entrustment claim); *Estate of Kim v. Coxe,* 295 P.3d 380 (Alaska 2013) (similar). Others mistakenly focus attention on the question of whether Plaintiffs had a vested right in terms of a claim which had proceeded to judgment at the time PLCAA was enacted. *See Ileto,* 565 F.3d at 1140-41; *District of Columbia v. Beretta U.S.A. Corp.,* 940 A.2d 163, 177-78

---

[4] The U.S. Int. Br. tries to distinguish this decision on the basis of the fact that that case involved retroactive application of PLCAA to a pending claim. U.S. Int. Br. at 17-18 n. 10. While that case did address the concept of a vested right given the specific facts at issue, it clearly indicated that PLCAA violates Due Process by failing to provide some reasonable, alternative remedy *regardless of whether there is a vested right* by stating that "Due Process is violated when Congress abolishes an existing remedy and provides no alternative." *See Gary*, No. 45D05-0005-CT-00243 at 4.

9

(D.C. 2008). This vested rights analysis misses the point; regardless of whether Plaintiffs have vested rights in a particular tort claim is unrelated to the question of whether Plaintiffs have a due process right to *some* reasonably adequate remedy.

The U.S. also disputes whether the Constitution actually imposes a requirement for a reasonably adequate alternative remedy. U.S. Int. Br. at 18-19 (discussing *Duke Power*). While it is true that *Duke Power* did not *explicitly* hold that a reasonably adequate remedy was required (438 U.S. at 88), if there were no such requirement, then this analysis would have been unnecessary. Apparently, the U.S. believes that Congress could simply eradicate all civil rights to compensation for all injuries, or those caused by Congress's favored industries. The Supreme Court has never adopted that dangerous notion.

Lastly, the U.S. mistakenly represents several cases as "indistinguishable" from the instant case and precluding a finding that due process requires a reasonably adequate remedy. For example, *Martinez v. California*, 444 U.S. 277, 280 (1980), its lead authority, rejected a due process challenge to a *state law*, not a federal restriction of state law. Further, the law merely provided immunity to the state and its officials for granting parole to offenders who then caused harm and simply codified the sovereign immunity that was generally applicable at common law. *See Martinez,* 444 U.S. at 282 n. 6.

B. PLCAA Violates the Equal Protection Component of the Fifth Amendment's Due Process Clause

The U.S. cannot refute the fact that PLCAA commands unequal treatment of victims of gun industry negligence: those in states with statutorily based liability standards can bring lawsuits, while those with identical claims cannot bring actions in states that rely on common law standards. There is permissible basis for such federal discrimination between modes of state lawmaking.

In its failed defense of PLCAA, the U.S. ignores *McBride v. General Motors Corp.*, 737 F. Supp. 1563 (M.D. Ga. 1990) --- which found a law that unequally treated two classes of tort

plaintiffs violated equal protection under rational basis review. 737 F. Supp. at 1578 (discussed in MTD Opp. at 33-34). The U.S. also argues, in effect, that rational basis review is a rubber stamp that may never result in a statute being invalidated. *See* U.S. Int. Br. at 19-22. This is disproven by *McBride* and *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) (striking down zoning ordinance on rational basis review). The U.S. cites a number of cases which have refused to hold that PLCAA violates equal protection (U.S. Int. Br. at 21), but none have provided any credible explanation for why Congress, if it truly felt that certain claims were frivolous and a threat to interstate commerce, would have eliminated these claims in states which rely on judicially-created common law but allowed legislatures in other states to enshrine identical claims in state statutes and avoid PLCAA's restrictions. *See* 15 U.S.C. § 7903(5)(A)(iii).

Further, the U.S.'s contention that "Congress also could rationally conclude that the unpredictability of common law tort actions could pose a greater threat to the firearms industry than would defined legislative enactments that are necessarily passed by democratically accountable actors" is, unintentionally, an acknowledgment that PLCAA violates the Tenth Amendment by interfering with how states allocate lawmaking authority between the different branches of their government. U.S. Int. Br. at 21. Even if Congress was motivated by animus of state courts, that justification is impermissible. Furthermore, this rationale is not even factually sound because, in many states, judges are elected officials who may be more accountable to the public than individual state legislators.

## IV. The Counterarguments Raised By the U.S. Against the Application of Supreme Court Federalism Precedent Are Unavailing

Although the U.S. purportedly intervened solely to defend the constitutionality of PLCAA (U.S. Br. at 1), it improperly strays into attacks on Plaintiffs' suggestion that Supreme Court federalism precedent forces a narrowing construction of PLCAA. *Compare id*. at 22-24 with MTD Opp. Br. at 7-9. First, the U.S. erroneously states that the federalism lens is a subspecies of the

principle of constitutional avoidance. U.S. Int. Br. at 22. The Supreme Court has never stated that and the U.S.'s own authority notes that "[w]hile the federalism canon is related to the canon of constitutional avoidance, the doctrines are not synonymous." *Travieso v. Glock Inc.*, 526 F. Supp. 3d 533, 540 n. 1 (D. Ariz. 2021) (cited in U.S. Int. Br. at 23).

The U.S. also argues that the clear statement rule (*see* MTD Opp. Br. at 7-9) does not apply because PLCAA does not implicate powers uniquely within the ambit of the states, contains more express preemption language than in *Bond*, 134 S. Ct. 2077 or *Gregory,* 501 U.S. 452, and does not implicate serious constitutional concerns because Plaintiffs' above arguments are without merit. *See* U.S. Int. Br. at 4, 22-23. The U.S. is wrong on all points.

First, PLCAA implicates the same federalism concerns as in *Bond* and *Gregory*. PLCAA unquestionably infringes on how states and/or federal courts applying state law make and/or apply state tort law via the predicate exception in 15 U.S.C. § 7903(5)(A)(iii). Further, the Supreme Court has underscored that "the State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational." *Martinez.,* 444 U.S. at 282. Tort law is, like prosecuting local crimes, an aspect of the "police power" reserved to the states under the Tenth Amendment. *See Bond,* 134 S. Ct. at 2090.

Second, the U.S. ignores *Cipollone*, which recognized that even "express language" preempting state law to some degree does not preclude application of the federalism protective lens where ambiguity remains as to the "scope" of the preemption. *See* 502 U.S. at 516–18; *see also Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996) (discussing *Cipollone*) (emphasis omitted). *Gregory* also illustrates this point, as the statute at issue included express preemption language that was far clearer than PLCAA's ambiguous definition of a "qualified civil liability action." *Compare* § 7903(5)(A) *with Gregory,* 501 U.S. at 456; *see also* MTD Opp. Br. at 7-9. Indeed, the

12

Court emphasized that the act "plainly cover[ed] all state employees except those excluded by one of the exceptions." *Gregory,* 501 U.S. at 467. Nevertheless, ambiguity as to application of one of the exceptions required a narrow reading. *Id*.

Here, there are competing, plausible interpretations both as to the scope of the general definition of a "qualified civil liability action" *and* the breadth of one or more exceptions, making PLCAA far *less clear* than the statute in *Gregory* in precluding relevant claims. *See* MTD Opp. Br. at 4-20. Further, it is noteworthy that, in suggesting that PLCAA leaves "no ambiguity" as to the fact that Plaintiffs' claims are barred and citing to PLCAA's Purposes and Findings section to support this contention (*see* U.S. Int. Br. at 23-24), the U.S. fails to explain – *or even to acknowledge* – that PLCAA's first Purpose and one Finding state an intent to only bar liability for harm "solely caused" by third party unlawful misuse. § 7901(b)(1), (a)(6). This is for good reason; this language is fatal to the U.S.'s position.

The U.S. relies on a few cases that, unlike *Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 120, 202 A. 3d 262 (2019) *cert denied sub nom*. *Remington Arms Co., LLC v. Soto,* 140 S.Ct. 513 (2019) (emphasis omitted), failed to apply Supreme Court federalism precedent and did not read PLCAA consistent with its "solely caused" language. *Compare* cases cited in U.S. Int. Br. at 23-24 *with Soto,* 202 A.3d at 309, 312-13, 313 n. 58. All are inapposite and/or flawed. For example, *Delana* mistakenly believed that *Bond* and *Gregory* principles only involved "implied preemption" and did not apply to a statute like PLCAA which expressed a clear intent to preempt state law to some degree. *See Delana,* 486 S.W.3d at 322–323. This is contradicted by *Cipollone*.

Finally, the U.S.'s apparent contention that the *Bond* and *Gregory* clear statement principles only apply if there are significant constitutional concerns about a federal statute independent of federalism issues (*see* U.S. Int. Br. at 4, 22) is without merit. The Supreme Court has never suggested that application of the federalism protective lens is contingent upon first

13

showing that the statute is potentially constitutionally defective on non-federalism grounds. In any event, Plaintiffs have made such a showing here.

## CONCLUSION

This Court need not reach any constitutional questions as to PLCAA because it does not bar this case. However, should this Court read PLCAA to bar all of Plaintiffs' claims, the statute is constitutionally defective for a number of reasons. The U.S.'s counterarguments are meritless.

Respectfully submitted,

*/s/ Kevin P. Sullivan*
Kevin P. Sullivan, Esq., Fed Bar #27506
Daniel P. Stringer, Esq., Fed Bar #19243
SALSBURY SULLIVAN, LLC
100 N. Charles Street, Suite 900
Baltimore, MD 21201
Ph: (443) 869-3920
ksullivan@salsburysullivanlaw.com
dstringer@salsburysullivanlaw.com

Jonathan E. Lowy, Esq., *Pro Hac Vice*
Brady, United Against Gun Violence
840 First Street NE, Suite 400
Washington, DC 20002
Ph: (202) 370-8104
jlowy@bradyunited.org
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of January, 2022, a copy of the foregoing *Plaintiffs' Response to United States Intervention Brief in Defense of the Constitutionality of the Protection of Lawful Commerce in Arms Act,* was electronically filed and served on:

Jody D. Lowenstein, Esq.
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street NW
Washington, DC 20005
Jody.d.lowenstein@usdoj.gov
**Attorneys for Inventor United States of America**

Kevin C. Schiferl, Esq.
Stephanie V. McGowan, Esq.
Adam S. Ira, Esq.
FROST BROWN TODD, LLC
201 North Illinois Street, Suite 1900
PO Box 44961
Indianapolis, IN 46244-0961
kschiferl@fbtlaw.com
smcgowan@fbtlaw.com
aira@fbtlaw.com

Christopher R. Dunn, Esq.
DeCaro, Doran, Siciliano, Gallagher & DeBlasis, LLP
17251 Melford Blvd., Suite 200
Bowie, MD 20715
cdunn@decarodoran.com
***Attorneys for Defendants***

                                    */s/ Kevin P. Sullivan*
                                    Kevin P. Sullivan, Esq., Fed Bar #27506