# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

| | | |
|---|---|---|
| KAYLA M. BRADY, *et al.* | * | |
| Plaintiffs | * | |
| v. | * | Civil Case No. 8:21-cv-1412-AAQ |
| WALMART INC, *et al.* | * | |
| Defendants | * | |

## MEMORANDUM OPINION

This is a case concerning the alleged negligent sale of a firearm to a man experiencing a mental health crisis, who subsequently committed suicide. Plaintiff Kayla Brady, the surviving spouse of Jacob Mace, and other family members of Mr. Mace, allege that Walmart Inc. and its subsidiary Wal-Mart Stores East, LP, negligently sold Mr. Mace a firearm which he used against himself. Pending before the Court is Defendants' Motion for Judgment on the Pleadings, ECF No. 31, and Plaintiffs' Notice of Constitutional Challenge. ECF No. 35. For the reasons discussed below, I shall deny, in part, and grant, in part, Defendants' Motion for Judgment on the Pleadings. Because I find that the PLCAA does not bar Plaintiffs' claims, I do not reach Plaintiffs' arguments regarding the constitutionality of the PLCAA.

## BACKGROUND

According to Plaintiffs' Complaint, Defendants Walmart, Inc. and Wal-Mart Stores East, LP ("Defendants") are responsible for operating a large, national chain of retail stores which sell

a variety of goods, including firearms.[1]  ECF No. 3, at 4-5.  Defendant Walmart operates at least forty-eight stores in the State of Maryland, including Walmart Supercenter #1981, in St. Mary's County, Maryland, where it employed Jacob Mace, as a maintenance worker, from February 2018 until November 2018, and then again from February 2019 until his death in November 2019.  *Id*. at 4-5, 10, 15.

Mr. Mace battled depression and suffered from suicidal thoughts since childhood, but was formally diagnosed with major depressive disorder and borderline personality disorder in June 2019.  *Id*. at 10.  According to Plaintiffs' Complaint, at least three of Mr. Mace's Walmart co-workers were aware of his extensive history of mental health difficulties, including depression and suicidal ideation.  *Id*.

Plaintiffs allege that on October 31, 2019, Mr. Mace "began experiencing an acute mental health crisis that lasted for sixteen days until his death on November 15, 2019."  *Id*.  Mr. Mace had previously purchased a firearm from Walmart.  *Id*.  Concerned that he might use it against himself or others, Mr. Mace's family members removed the gun from his control.  *Id*.  As a result of his ongoing mental health crisis, Mr. Mace sought medical treatment on several occasions.  *Id*. at 11. Mr. Mace provided his supervisor with letters documenting his hospital visits as the reason for his absence from work.  *Id*.  Plaintiffs concede that the letters did not specifically state the reason for the hospital visits, but allege that Mr. Mace verbally informed his supervisor that his mental health crisis was the underlying cause.  *Id*.

On November 9, 2019, Mr. Mace entered the hospital for three days.  *Id*.  However, before doing so, he exchanged several text messages with one of his co-workers.  *Id*.  In these messages,

---

[1] Because the case is currently before the Court on Defendants' Motion for Judgment on the Pleadings, I accept all well-pled allegations as true for the purpose of deciding this Motion.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

he explained that he had been suffering from "crippling" depression and that he had attempted suicide earlier that week.  *Id*.  Mr. Mace also indicated that he planned to attempt suicide in the future by "slit wrists.  Buy a gun."  *Id*.  The co-worker with whom Mr. Mace had been texting captured a screenshot of the text and sent it to Mr. Mace's supervisor – the same supervisor Mr. Mace had provided letters documenting his hospital admissions.  *Id*. at 11-12.  Approximately thirty minutes after Mr. Mace's co-worker shared the screenshot with Mr. Mace's supervisor, the two of them met to discuss adding Mr. Mace to an alleged "blacklist" which Walmart allegedly maintains, prohibiting the sale of firearms to certain individuals, in accordance with various federal and state laws.  *Id*.  During this conversation, Mr. Mace's supervisor stated that he would "take care of it."  *Id*. at 12.  According to Plaintiffs' Complaint, Mr. Mace's supervisor failed to follow through on this commitment.[2]  *Id*.  On November 12, 2019, Mr. Mace sent an electronic message, via Facebook, to a second Walmart co-worker, who worked behind the firearms counter at Supercenter #1981, asking if Walmart sold single shot shotguns and which one was the cheapest. *Id*.

On November 15, 2019, the last day of Mr. Mace's life, he reported to work at Supercenter #1981, at 7 A.M. Eastern Standard Time.  *Id*.  At 9:30 A.M. that morning, Mr. Mace took his "lunch" break.  *Id*.  A third co-worker who observed Mr. Mace that morning could tell Mr. Mace had been drinking.  *Id*.  The third co-worker found this to be unusual, because he believed that Mr. Mace had been sober for several months and thus, did not usually drink.  *Id*. at 13.  At approximately 9:40 A.M., Mr. Mace approached the firearms counter, where the second co-worker, with whom Mr. Mace had texted three days earlier regarding the purchase of a cheap

---

[2] Specifically, Plaintiffs allege that either the supervisor failed to ensure that Mr. Mace was placed on the blacklist or that Defendants failed to ensure that the blacklist was used properly, as discussed below.

single-shot firearm, was working. *Id*. Mr. Mace asked to purchase a firearm. *Id*. Upon hearing this request, the second co-worker began entering information regarding Mr. Mace into Walmart's background screening program. *Id*. At 9:53 A.M., Walmart's asset manager at Supercenter #1981 arrived at the counter and approved Mr. Mace's purchase of the firearm and a box of ammunition. *Id*. According to the Complaint, "[s]hortly after 12:00 P.M., officers from [the] St. Mary's County Sheriff's Office located Jacob Mace deceased, inside his truck, in a nearby parking lot. . . . He was pronounced dead at 12:07 P.M. as a result of a single gunshot wound inflicted with the [s]hotgun and ammunition sold to him by Walmart." *Id*. at 15.

Plaintiffs, family members of Mr. Mace, filed suit in Prince George's County Circuit Court alleging that Walmart's sale of the firearm to Mr. Mace, despite his supervisor's and several of his co-workers' awareness of his mental health difficulties and intent to harm himself, was negligent (Counts I and II), led to a separate claim for negligent entrustment (Count III), and created a public nuisance (Count IV). *Id*. at 16-19. Defendants answered the Complaint while the case remained in Maryland state court. ECF No. 4. On June 7, 2021, Defendants removed this case to this Court. ECF No. 1. On September 15, 2021, Defendants filed an Amended Answer. ECF No. 29.

On September 27, 2021, Defendants moved for judgment on the pleadings, alleging among other things that the Protection of Lawful Commerce in Arms Act ("PLCAA") barred Plaintiffs' claims. ECF No. 31-1, at 6. Although Defendants acknowledge that exceptions to the act exist, they argue that none of them apply to this case. *Id*. at 7-12. Defendants separately allege that even if the PLCAA does not apply, Plaintiffs claims as alleged fail as a matter of law. *Id*. at 12-16. On October 25, 2021, Plaintiffs filed their response, arguing chiefly that the PLCAA does not apply to this case, but alternatively, if it does, the PLCAA is unconstitutional. ECF No. 34. On December 27, 2021, the United States intervened for the limited purpose of defending the

constitutionality of the PLCAA.  ECF No. 38, 40.  The United States, like the Plaintiffs agreed, that if the PLCAA does not bar this case, there is no need for me to address the constitutionality of the Act.  *See* ECF No. 40, at 1 ("The principal arguments in Plaintiffs' opposition are statutory, and if the Court can resolve Defendants' motion without reaching the constitutional issues raised by Plaintiffs, it should do so.").  However, the United States took no position on the applicability of the PLCAA or its exceptions to this case.[3]  *See id.* ("At the outset, the United States takes no position on whether any claims asserted in Plaintiffs' complaint fall within the statutory scope of PLCAA or any of its exceptions.").  On April 29, 2022, this case was assigned to my chambers.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) "provides that after the pleadings are closed, a defendant may present a defense of failure to state a claim upon which relief may be granted by a judgment on the pleadings."  *Nat'l Cas. Co. v. Lockheed Martin Corp.*, 415 F.Supp.2d 596, 600 (D. Md. 2006).  The same standard of review applies to Rule 12(c) motions for judgment on the pleadings and motions to dismiss for failure to state a claim under Rule 12(b)(6).  *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002).  Fed. R. Civ. P. 12(b) provides that a party may move to dismiss claims where there is a "failure to state a claim upon which relief can be granted."  When ruling on a motion to dismiss, the court considers whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v.*

---

[3] As the United States notes, the wisdom of the PLCAA, as a matter of policy, is not before me in this case.  *See* ECF No. 40, at 1, n. 1 ("whether Congress had the constitutional authority to enact PLCAA is distinct from the question whether this Administration thinks PLCAA remains good policy.")  The continued wisdom of the legislation is a matter of active debate among the public. As the United States' brief states, the President of the United States has called for the repeal of the legislation.  *Id.*

*Twombly,* 550 U.S. 544, 570 (2007)).  The court will consider whether the plaintiff has pled factual content allowing reasonable inferences to be drawn that the defendant is "liable for the misconduct alleged." *Id.*  The plaintiff need not plead facts that are probable, but must present facts showcasing more than a "sheer possibility" that the conduct perpetuated by a defendant is unlawful.  *Id.* Plaintiff has an obligation to provide more than "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555.   Pleadings that present "no more than conclusions" will not be "entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679.  That said, the purpose of a Rule 12(b)(6) motion and a Rule 12(c) motion is to test the sufficiency of a complaint, not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

## DISCUSSION

As noted above, Defendants raise several arguments regarding the viability of Plaintiffs' claims.  As discussed below, I find that: 1) I cannot determine at this stage, based on the evidence before me and the standard I am required to apply, that Plaintiffs' claims involve a qualified civil liability action under the PLCAA; 2) although the PLCAA's purpose section is instructive regarding the scope and applicability of the PLCAA's provisions, I cannot determine conclusively that the PLCAA's definition of a qualified civil liability action is limited to circumstances in which one party is solely responsible for a shooting; 3) alternatively, if this case involves a qualified civil liability action, the predicate exception to the PLCAA applies to this case; 4) under Maryland law, liability for negligently causing the suicide of a third party is not limited, as a matter of law, solely to when defendants cause the third party's compromised mental state; and finally, 5) although Plaintiffs have adequately pled proximate cause for the purpose of their negligence claims,

Plaintiffs have failed to state a valid public nuisance claim.  Because I find that Plaintiffs' claims are not barred by the PLCAA, I do not reach Plaintiffs' arguments regarding the constitutionality of the PLCAA.

> **I.**     **Based on the Allegations in the Pleadings, and Upon a Motion for Judgment on the Pleadings, I Cannot Determine That This Case Constitutes a Qualified Civil Liability Action.**

The PLCAA prohibits qualified civil liability actions, 15 U.S.C. § 7902, as defined in 15 U.S.C. § 7903(5)(A), meaning a

> civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party.

Importantly, for the purposes of this case, the definition excludes six separate types of actions for relief.  15 U.S.C. § 7903(5)(A)(i)-(vi).  However, before a court can determine whether an exception applies, it must first determine whether the case is covered by the general definition of a qualified civil liberty action.

Plaintiffs raise two separate arguments as to the alleged inapplicability of the general definition.  First, Plaintiffs argue that this case did not result from the "criminal or unlawful use" of a firearm, as required by the general definition, because suicide has been decriminalized in Maryland.  ECF No. 34, at 4-5.  Second, Plaintiffs argue that 15 U.S.C. § 7903(5)(A) must be read to apply only to cases in which the user of the firearm is solely responsible for the shooting.  *Id*. at 5-9.  Plaintiffs concede that the latter limitation is not in the text of 15 U.S.C. § 7903, but ask the Court to read in such a requirement given the PLCAA's stated purpose to shield defendants from liability where a third-party is solely responsible for the acts alleged.  *Id*. at 5.

**A. At This Stage, and Based on the Allegations in the Pleadings, I Cannot Determine Whether This Case Involves a Violation of Md. Crim. Code § 4-108(a).**

As to Plaintiffs' first argument, Defendants do not contest that suicide has been decriminalized in Maryland, but instead, in their Reply, ECF No. 37, at 2, allege that Mr. Mace's conduct violated Md. Crim. Code § 4-108(a) which prohibits, in Anne Arundel County, Caroline County, and St. Mary's County, the "discharge [of] a gun or weapon on the land of another without first obtaining written permission from the owner or possessor of the land." Md. Crim. Code § 4-108(a). Defendants' argument overlooks that the pleadings are largely silent as to many of the elements of the offense, namely the location of the shooting, the owner of the premises, and any permission Mr. Mace may or may not have had related to the property. The pleadings simply state that Mr. Mace was found in a parking lot near the Walmart where he purchased the shotgun. *See* ECF No. 3, at 15 ("Shortly after 12 P.M., officers from St. Mary's County's Sherriff's Office located Jacob Mace, deceased, inside his truck in a nearby parking lot."). While I can reasonably conclude that the parking lot was in St. Mary's County, as it was near the Walmart located therein, and Mr. Mace fired the gun there, as Plaintiffs allege he was found there with a self-inflicted wound, I cannot draw any conclusions as to the ownership of the property or related permissions at this stage of the proceedings.

When a court reviews a motion for judgment on the pleadings, it must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." *Massey v. Ojaniit*, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted). Importantly, Defendants do not identify any legal authorities justifying inferences adverse to Plaintiffs at this stage or allegations in the pleadings relevant to the ownership of the property or Mr. Mace's permission, or lack thereof, to use it. Furthermore, Defendants, in their Amended Answer, in response to

Plaintiffs' allegations regarding the location of Mr. Mace's death admit that, beyond conceding "the St. Mary's County Sheriff's Office Incident Report notes that after 12:00 p.m. on November 15, 2019, officers located Jacob Mace, deceased, inside his truck in a parking lot . . . [,] Walmart is without sufficient knowledge or information as to the truth or falsity of the allegations contained in paragraph 105. . ." ECF No. 29, at 31*; see also* ECF No. 4 (pleading no specific facts related to the ownership of the location of Mr. Mace's suicide and any permission to use such property).

To simply presume that the parking lot was owned by a third party from which Mr. Mace lacked permission, without any allegations in the pleadings, one way or the other, would be inapposite to the relevant standard of review at this stage of the proceedings.

**B. Although the PLCAA's Purpose Provisions Are Relevant, They Do Not Dictate that Qualified Civil Liability Actions Be Limited to Cases in Which the Shooter Is Solely Responsible for the Harm Caused.**

Additionally, Plaintiffs argue that even if Mr. Mace's actions constituted "criminal or unlawful use," 15 U.S.C. § 7903(5)(A) should be read to exclude cases such as this in which, according to the pleadings, the shooter is not solely responsible for criminal use of a firearm. ECF No. 34, at 5-9. Plaintiffs concede that 15 U.S.C. § 7903(5)(A) does not limit itself to such situations, but ask that the Court read in such a limitation based on the PLCAA's stated primary purpose – to shield defendants from liability in scenarios in which a shooter was solely responsible. *Id*.; *see* 15 U.S.C § 7901(b)(1) (explaining that the purpose of the statute is "to prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm *solely* caused by the criminal or unlawful misuse of firearm products") (emphasis added). In further support of their position, Plaintiffs present legislative history, namely, among other things, statements from Senator Larry Craig, the PLCAA's sponsor, that the statute "does not protect firearms [industry actors] from . . . lawsuits

based on their own negligence or criminal conduct."  ECF No. 34, at 6-7 (quoting 151 Cong. Rec. S9061 (July 27, 2005)).

Both a statute's stated purpose and legislative history may be valuable tools when engaging in statutory interpretation, but are only determinative when the provision at issue is ambiguous or its plain interpretation would lead to an absurd result.  *U.S. v. Kernan Hosp.*, No. RDB–11–2961, 2012 WL 5879133, at *4 (D. Md. Nov. 20, 2012).  The starting point for interpreting a statute is "the language of the statute itself."  *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).  As Defendants highlight, ECF No. 37, at 3, although the term "sole" is not used to limit the definition of a qualified civil liability action, it is used elsewhere in the same statutory provision when defining one of the situations in which a manufacturer or seller may be held liable even if the case is a qualified civil liability action.  15 U.S.C. § 7903(5)(A)(v) (excluding from immunity "an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the *sole* proximate cause of any resulting death, personal injuries or property damage) (emphasis added)).  As the Fourth Circuit has stated, "the omission by Congress of language in one section of a statute that is included in another section of the same statute generally reflects Congress's intentional and purposeful exclusion in the former section."  *NISH v. Cohen*, 247 F.3d 197, 203–04 (4th Cir. 2001).  The importance of Congress's use of the term "sole" is heightened here, where it is not merely in the same statute, but in another clause of the same section of the statute.  Furthermore, as other courts have noted, reading this definition into the limitation would render meaningless some of the exceptions to what constitutes a "qualified civil liability action".  *See Travieso v. Glock Inc.*, 526

10

F.Supp.3d 533, 543-44 (D. Ariz. 2021).  For example, if a manufacturer or seller of a weapon was not immunized where they were partly responsible, there would be no need for a negligence exception because, by definition, the defendant's negligence would already have excluded them from any protection under the statute.  *Id*.  Accordingly, I cannot conclude that, and Plaintiffs provide no reason why, the statute's definition of qualified civil action is ambiguous as to its application to cases in which the shooter was solely liable.

As noted above, this does not mean that the statute's preamble is irrelevant.  As the Fourth Circuit has explained, although it is not part of the statute, "[t]he preamble no doubt contributes to a general understanding of a statute."  *Jurgensen v. Fairfax County*, 745 F.2d 868, 885 (4th Cir. 1984); *see also Coosaw Mining Co. v. South Carolina*, 144 U.S. 550, 563, 12 S.Ct. 689, 692, 36 L.Ed. 537 (1892) (noting that the preamble may "aid in the construction of the enacting clause, when any ambiguity exists.").  Accordingly, to the extent that any ambiguity exists regarding any of the other provisions which the parties dispute, I may consider the statute's explicitly stated purpose to shield manufacturers and sellers in cases in which a shooter is solely responsible for the death of another.  Considering the preamble for this limited purpose is consistent with Supreme Court and Fourth Circuit precedents, but also the cases which Plaintiffs cite, *Soto v. Bushmasters Firearms Int'l, LLC*, 202 A.3d 262, 309 (Conn. 2019) (concluding that the congressional findings and purposes also lend support to the plaintiffs' interpretation of the predicate exception); *Smith & Wesson Corp. v. City of Gary*, 875 N.E. 2d 422, 433 (Ind. Ct. App. 2007) (considering the statute's purpose as an additional reason supporting the court's interpretation of the predicate exception), and Defendants cite in support of their respective arguments.  *Travieso*, 526 F.Supp.3d at 543 (noting that while a statute's preamble cannot control over its express terms, it is instructive); *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 322 (Mo. 2016) (considering the

PLCAA's purpose, but refusing to follow it because the statute was unambiguous as to the scope of "qualified civil liability action"); *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 386-87 (Alaska 2013) (same).

    **C.** **Principles of Federalism Do Not Require That Qualified Civil Liability Actions Be Limited to Cases in Which the Shooter Is Solely Responsible for the Harm.**

Alternatively, Plaintiffs argue that even if I do not accept their argument regarding the impact of the statute's preamble, federalism concerns require a similarly narrow reading of what constitutes a "qualified civil liability action". ECF No. 34, at 7-9. Plaintiffs are unable to identify any court that has specifically adopted their position. Rather, they cite two lines of cases, which while relevant, are, as they admit, not directly on point. *See id*. at 9 (noting that Plaintiffs are aware of only one case that directly addressed whether unlawful possession of a firearm was a "qualified civil liability action," but conceding that it does not support their position).

First, Plaintiffs rely on the courts' decisions in *Soto* and *City of Gary*, in which the courts cited the PLCAA's preamble in support of a narrowed scope of the predicate exception. *Id*. at 7-9; *see also Soto*, 202 A.2d at 316 ("The most reasonable interpretation of this legislative history, then, is that the record keeping and unlawful buyer illustrations were included in the final version of PLCAA not in an effort to define, clarify, or narrow the universe of laws that qualify as predicate statutes . . ."); *City of Gary*, 875 N.E.2d at 434 ("Based on the language of the predicate exception, the specific context of the predicate exception, and the broader context of the PLCAA, we conclude that the predicate exception is unambiguous."). As noted above, I will consider the preamble for the purposes of interpreting any provisions, including exceptions that are ambiguous. *See supra* section I.B. These cases do not discuss federalism or address, let alone determine, that a narrowed reading of qualified civil liability action is required.

Second, Plaintiffs cite a trio of Supreme Court cases in which the Court held that "any ambiguity as to the scope of a federal statute . . . should be resolved by minimizing the statute's intrusion on state sovereignty.  ECF No. 34, at 7 (citing *Gregory v. Ashcroft*, 501 U.S. 452 (1991); *Bond v. United States*, 572 U.S. 844, 134 S. Ct. 2077 (2014); *Cipollone v. Liggett Group*, 505 U.S. 504 (1992)).  As Plaintiffs concede, if Congress has made clear that the state law claims are preempted, this overrides any federalism concerns.  ECF No. 34, at 7.  As discussed above, the PLCAA is clear that qualified civil liability actions are not limited to only those cases in which a third party is solely responsible; accordingly, any federalism concerns cannot override the plain language of the statute.  *See supra* section I.B.

None of the three cases Plaintiffs cite called for the Court to read in language that Congress used in the same section of the statute, but failed to use in the provision at issue, or adopt an interpretation which would render other portions of the same section of the same statute superfluous.  For example, the Court in *Gregory* examined whether the Age Discrimination in Employment Act of 1967 included judges, despite an exception excluding "appointees at the policy making level" from the Act's coverage.  501 U.S. at 455-56.  The Court explained that although Congress did not need to explicitly say that judges were covered – or in the context of this case, explicitly say that the statute covered situations in which multiple parties were responsible for a shooting, it needed to be plain from the text of the statute.  *Id*. at 467.  In reaching its conclusion that the statute was not clear, the Court noted that "in the context of the other exceptions that surround it, [the language at issue] was an odd way for Congress to exclude judges".  *Id*.  In contrast, in this case, as discussed above, any oddity would not arise from a broader interpretation, but the narrowed reading for which Plaintiffs advocate.  Likewise, in *Cipollone*, the Supreme Court held that preemption of state law tort claims for causing the death of plaintiffs' relative was not

proper because on their face, the Congressional provisions at issue "merely prohibited state and federal rulemaking bodies from mandating particular cautionary statements on cigarette labels . . . or in cigarette advertisements[.]"  505 U.S. at 518.  In contrast, as noted above, the definition of qualified civil liability action, on its face, supports preemption.  Plaintiffs, instead, ask the Court to narrow the scope of the statute.  Finally, in *Bond*, the Court examined whether a federal criminal statute barring the use of chemical weapons should apply to an "amateur attempt by a jilted wife to injure her husband's lover, which ended up causing only a minor thumb burn readily treated by rinsing with water."  572 U.S. at 848.  The Court explained the special circumstances justifying its decision: "In this case, the ambiguity derives from the improbably broad reach of the key statutory definition given the term – 'chemical weapon' – being defined; the deeply serious consequences of adopting such a boundless reading; and the lack of any apparent need to do so in light of the context from which the statute arose – a treaty about chemical warfare and terrorism."  *Id*. at 860.

Any federalism concerns are furthered lessened by an additional consideration.  Ultimately, the underlying concern behind any assertions of federalism is that the federal government limit intrusion upon state officials' decision-making authority in certain areas.  *See generally Gregory*, 501 U.S. at 457-61.  Accordingly, if the Court concludes that the state claim is not preempted on any other basis, including the several exceptions which Congress created to respect federalism, this limits the impact of any intrusion that may occur from a plain reading of 15 U.S.C. § 7903(5)(A).  Likewise, even if Plaintiffs' concerns do not support a narrow reading of a provision which is otherwise unclear, they may be relevant to other provisions of the PLCAA which are ambiguous.  Plaintiffs' citation to cases in which courts did not rely on such principles to limit the scope of qualified civil liability action, but considered them when interpreting other provisions of the PLCAA proves this point.  Accordingly, even though I do not accept Plaintiffs' arguments

14

regarding the scope of 15 U.S.C. § 7903(5)(A), Plaintiffs' federalism concerns may be relevant to the interpretation of other contested provisions that are ambiguous.

## II.     Even if this Case Constitutes a Qualified Civil Liability Action, the PLCAA's Predicate Exception Applies to Plaintiffs' Claims.

Even if a case meets the threshold definition of a "qualified civil liability action", a plaintiff's claims are not barred if the case satisfies one of the PLCAA's six exceptions.  15 U.S.C. § 7903(5)(A)(i)-(vi).  Plaintiffs in this case allege that their suit may survive under the PLCAA's predicate statute exception, the statute's negligent entrustment exception, and the statute's negligence per se exception.  ECF No. 34, at 9-20.  I conclude that the PLCAA's predicate exception applies to Plaintiffs' case, but the negligence *per se* exception is inapplicable.  The negligent entrustment exception may also apply to Plaintiffs' case, but I do not ultimately decide this issue, given Plaintiffs' satisfaction of the predicate exception.

### A.  Plaintiffs' Claims Satisfy the PLCAA's Predicate Exception.

Under the PLCAA's predicate exception, a manufacturer or seller of a firearm may be held liable in a qualified civil liability action if it "knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm" that is the subject of the lawsuit.  15 U.S.C. § 7903(5)(A)(iii).  Plaintiffs specifically allege that the exception applies in this case because Defendants violated Md. Code Ann. Pub. Safety § 5-205(b)(6) which prohibits the possession of a rifle or shotgun by a person that "suffers from a mental disorder as defined in § 10–101(i)(2) of the Health – General Article and has a history of violent behavior against the person or another."  ECF No. 34, at 13-15 (citing Md. Code Ann. Pub. Safety § 5-205(b)(6)).  Plaintiffs further allege that Defendants violated the statute by "aiding and abetting" the violation of the statute, as accomplice liability is recognized under Maryland law.  ECF No. 34, at 11-12 (citing *Gilmore v. State*, No. 0631, 2016 Md. App. LEXIS 575, at *9 (Md.

Ct. Spec. App. Jun. 10, 2016)). Defendants, in response, allege that Md. Code. Ann. Pub. Safety § 5-205(b)(6) is insufficient because it does not explicitly prohibit the sale of firearms. ECF No. 31, at 11. As discussed below, Defendants' argument contradicts the text of the exception and applicable case law construing it.

The text of the predicate exception requires that the federal or state statute cited by the Plaintiff be "applicable" to the sale of a firearm; it does not require that the state statute explicitly penalize the sale of a firearm. Because the PLCAA does not define "applicable," I must look, as the Supreme Court has, to the ordinary meaning of the term. *See, e.g., Hamilton v. Lanning*, 560 U.S. 505, 513 (2010). As the Supreme Court has stated, "applicable" means "capable of being applied: having relevance" or "fit, suitable, or right to be applied: appropriate." *Applicable*, Webster's Third New International Dictionary (2002); *see also Applicable*, New Oxford American Dictionary 2d ed. (2005) ("relevant or appropriate"); *Applicable,* Oxford English Dictionary 2d ed. (1989) ("[c]apable of being applied" or "[f]it or suitable for its purpose, appropriate"). Courts in this District, in reliance on the Supreme Court's decision in *Ransom v. FIA Card Serv., N.A.*, 562 U.S. 61, 69 (2011), have applied the term as such in the context of other statutes. *See Clark v. Bank of America, N.A.*, No. SAG-18-3672, 2020 WL 902457, at *7 (D. Md. Feb. 24, 2020) ("This use supports the conclusion that 'applicable' means 'relevant' or 'appropriate,' as the Supreme Court explained in *Ransom*."). Accordingly, following the direction of the Supreme Court and other decisions in this District, I do the same here. "If Congress had intended to limit the scope of the predicate exception to violations of statutes that are *directly, expressly, or exclusively* applicable to firearms . . . it easily could have used such language, as it has on other occasions. The fact that the drafters opted instead to use only the term 'applicable,' which is susceptible to a broad reading . . . supports the interpretation [that the statute merely be capable of

16

being applied to the sale of firearms]."  *Soto v. Bushmasters Firearms Int'l, LLC*, 202 A.3d 262, 302-03 (Conn. 2019) (emphasis in the original).

The PLCAA's text provides additional support for this interpretation.  Congress listed examples of predicate statutes in the PLCAA.  15 U.S.C. §7903(5)(A)(iii)(I)-(II).  Though it provided only two examples of predicate statutes, one aligns directly with Plaintiffs' allegations in this case:

> (II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18[.]

Accordingly, the relevant question is not, as Defendants claim, whether the predicate statute explicitly prohibits the sale of firearms, but whether it is capable of being applied to the sale of firearms.

Furthermore, this interpretation of the exception is consistent with the cases cited by both Plaintiffs and Defendants in support of their positions.  For example, in *Prescott v. Slide Fire Sol., LP*, 410 F.Supp.3d 1123 (D. Nev. 2019), plaintiffs, the victims of a mass shooting, alleged that the defendant manufactured and sold firearms that were used against them.  *Id*. at 1128-29.  They raised claims under several statutes including the Nevada Deceptive Trade Practices Act.  *Id*. at 1129-30.  Like the Defendants here, the defendant in *Prescott* complained that the alleged predicate statute did not specifically prohibit the sale of firearms.  *Id*. at 1138 ("*Slide Fire* argues that . . . Nevada Deceptive Trade Practices Act cannot serve as a predicate statute because it generally applies to any and all advertisements and products rather than firearms specifically.").  The court in *Prescott* rejected this argument explaining that although general common law tort theories of negligence or public nuisance would be insufficient to constitute predicate offenses, the applicable

17

case law made clear that a predicate statute would be sufficient if it either specifically regulated firearms or the sale and marketing of goods. *Id*. at 1138. Because the Nevada statute in *Prescott* did the latter it was sufficient. *Id*; *see also Soto*, 202 A.3d at 307 (rejecting Defendant's argument that a statute must explicitly prohibit the sale or marketing of firearms to qualify as a predicate statute: "It is clear, therefore, that consumer protection statutes such as the [Connecticut Unfair Trade Practices Act] long have been an established mechanism for regulating the marketing and advertising schemes of firearms vendors."). Likewise, in *City of Gary*, a challenge to Smith and Wesson's illegal manufacture and sale of firearms under several statutes, including Indiana's general public nuisance statute, the court stated: "The word 'applicable' is not defined by the statute but is generally defined as '[c]apable of being applied.' . . . We cannot say that the word 'applicable' in the predicate exception is ambiguous. On the face of the language, Indiana's public nuisance statute appears applicable to the sale or marketing of firearms." 875 N.E.2d at 431 (internal citations omitted).

Importantly, Defendants are unable to identify a single case interpreting the predicate exception as requiring that the predicate statute explicitly prohibit the sale of firearms. See ECF No. 31, at 10-12. Nor are Defendants able to identify a single case in which a court held that a statute which explicitly mentioned firearms was an insufficient predicate. *Id*. Rather, the cases Defendants cite support the conclusion that Md. Code Ann. Pub. Safety §5-205(b)(6) is applicable to the sale of firearms for the purposes of predicate exception. In *Ileto v. Glock, Inc.,* cited by Defendants in support of their position, Plaintiffs filed suit against Defendants, the manufacturers of firearms, solely under California common law tort statutes for foreseeably and proximately causing injury, emotional distress, and death through knowing, intentional, reckless, and negligent conduct. 565 F.3d 1126, 1130 (9th Cir. 2009). The parties disagreed as to whether California tort

laws are predicate statutes under the PLCAA.  *Id*. at 1133.  Defendants in *Ileto*, like the Defendants here, argued that under that narrow meaning of the term, the requirements of the predicate exception would be met only if a plaintiff alleged a knowing violation of a statute that pertained exclusively to the sale or marketing of firearms.  *Id*. at 1134.  After reviewing the PLCAA's text, purpose, and legislative history, the Court concluded that "Congress clearly intended to preempt common-law claims, such as general tort theories of liability."  *Id*. at 1135.  However, it did not accept the *Ileto* defendants' arguments.  "We find it more likely that Congress had in mind only these types of statutes—statutes that regulate manufacturing, importing, selling, marketing, *and using firearms* or *that regulate the firearms industry*—rather than general tort theories that happened to have been codified by a given jurisdiction."  *Id*. at 1136 (emphasis added).  Accordingly, although the Ninth Circuit rejected the argument that nuisance claims would be sufficient, it acknowledged that predicate statutes that specifically mentioned firearms could satisfy the exception.  Importantly, the Ninth Circuit did not hold that only statutes mentioning the sale or manufacture of firearms would be sufficient, but concluded that a range of statutes mentioning firearms could be satisfactory.

The U.S. Court of Appeals for the Second Circuit reached the same conclusion.  In *City of New York v. Beretta USA Corp*., plaintiff, the City of New York, alleged that several firearm manufacturers could, but failed to, prevent the illegal sale of their firearms on the secondary market.  524 F.3d 384, 391 (2nd Cir. 2008).  The City predicated its claims on the manufacturers' alleged violation of New York Penal Law § 240.45, Criminal Nuisance in the Second Degree.  *Id*. at 390.  As in this case, "the core of the question [was] what Congress meant by the term 'applicable.'"  *Id*. at 399.  The Court rejected plaintiff's claim that a general nuisance law could satisfy the predicate exception, but cautioned that a statute that discussed firearms would certainly

meet the definition of the exception, as would certain statutes even if they were silent as to firearms altogether. *Id*. at 404 ("In sum, we hold that the exception created by 15 U.S.C. § 7903(5)(A)(iii): (1) does not encompass New York Penal Law § 240.45; (2) does encompass statutes (a) that expressly regulate firearms, or (b) that courts have applied to the sale and marketing of firearms").

Although my decision is directed by the text of the PLCAA, the guidance of the Supreme Court, previous decisions of this Court, and the jurisprudence cited by both parties in support of their positions, my decision is further supported by the federalism concerns and the PLCAA's purpose which sought to exclude cases of this type from its ambit. *See supra* sections I.B. and I.C.; *see also City of Gary*, 875 N.E.2d at 434 ("Based on the language of the predicate exception, the specific context of the predicate exception, and the broader context of the PLCAA, we conclude that the predicate exception is unambiguous.").

Having reviewed all of these authorities, I conclude, as the U.S. Court of Appeals for the Second Circuit, the U.S. Court of Appeals for the Ninth Circuit, the Connecticut Supreme Court, and various other courts have, that although a general tort statute may not provide a sufficient predicate for the purposes of 15 U.S.C. § 7903(5)(A)(iii), a statute that explicitly regulates firearms will satisfy the exception. There may be other types of statutes that do not specifically mention firearms that also satisfy the exception. Nonetheless, applying this rule to this case, it is clear that Md. Code Ann. Pub. Safety § 5-205(b)(6) is applicable to the sale of firearms. Although the text of the statute only mentions a prohibition on the possession of firearms by individuals who have a designated mental illness, as Plaintiffs highlight, Maryland holds parties liable who aid and abet the violation of the statute, which would include, in the context of this case, a party that knowingly provided a firearm to a person suffering from a designated mental illness.

Alternatively, Defendants argue that even if the predicate exception is satisfied by a federal or state statute that does not explicitly prohibit the sales of firearms, Md. Code. Ann. Pub. Safety §5-205(b)(6) is not applicable to the sale of firearms to individuals suffering from a mental illness. ECF No. 37, at 9.  Defendants fail to present any textual evidence in support of their position, but rely mainly on the Maryland legislature's subsequent enactment of a statute that explicitly prohibits the sale of a rifle or shotgun to an individual with a mental illness.  *Id.* (citing Md. Code Ann. Pub. Safety § 5-207(c)(6)).  Defendants reason that were Md. Code Ann. Pub. Safety § 5-205(b)(6) applicable to this case, there would have been no need for Maryland to enact the more recent statute.  ECF No. 37, at 9.  In support, Defendants cite *U.S. v. Jicarilla Apache Nation*, 564 U.S. 162 (2011).  ECF No. 37, at 9.  However, the decision in *Jicarilla Apache Nation* is of limited relevance to this case.  At issue in that case was whether a catch all provision of a statute could be read to "include a general common-law duty to disclose all information related to the administration of Indian trusts."  *Id.* at 185.  In response, the United States argued that the Apache Nation's interpretation was inconsistent with other parts of the statute which specifically created precise requirements as to what information the United States must provide.  *Id.*  The Court rejected the Apache Nation's interpretation explaining that "when Congress provides specific statutory obligations, we will not read a 'catchall' provision to impose general obligations that would include those specifically enumerated."  *Id.* at 185-86.  Md. Code Ann. Pub. Safety § 5-205(b)(6) statute is not a catch all provision, rather it is a concrete statute that creates specific prohibitions. Nor are Plaintiffs, in this case, akin to the plaintiffs in *Jicarilla Apache Nation*, asking the court to read a general provision to apply to all matters relevant to the subject of the statute – well beyond the statute's clear terms.  Rather, Plaintiffs simply ask that the statute be applied as written, even if it potentially creates some overlap with another statute in certain situations.

In passing, Defendants note that the fact that Md. Code Ann. Pub. Safety §§ 5-205(b)(6) creates criminal penalties further suggests that it is not meant to apply to the firearms industry.[4] ECF No. 31, at 11.  Defendants' argument harms as much – if not more than – it helps their position.  Because Md. Code Ann. Pub. Safety §§ 5-205(b)(6) and 5-207(c)(6), unlike the specific provision at issue in *Jicarilla Apache Nation*, 564 U.S. at 185-86 (discussing 25 U.S.C. §162a(d)), create criminal penalties, any potential overlap between the statutes is not a reason to interpret them contrary to their plain meaning.  Settled federal authority holds that:

> overlapping criminal statutes do not necessarily raise constitutional concerns or require courts to interpret the statutes so that any overlapping conduct is cognizable under only one statute.  To the contrary, the well-settled rule is that where two criminal statutes overlap, the government retains the discretion to prosecute under either statute, unless Congress manifests a clear intent otherwise.  In other words, unless there is evidence to the contrary, the case law reflects that the default rule is that Congress intends to give the government discretion to prosecute under either of two overlapping statutes. This default rule applies even in circumstances where one statute is more narrowly tailored than the other.

*U.S. v. Jenkins*, 745 F.Supp.2d 692, 695 (E.D. Va. 2010); *see also United States v. Hughes*, 626 F.2d 619, 623 (9th Cir. 1980) ("[W]here two statutes, each proscribing some conduct not covered by the other, overlap, a single act may violate both, at least where there is some distinction between the elements of each offense, and the violator may be prosecuted under either.").  Moreover, as to Defendants' larger point, the Maryland Court of Appeals has stated, the notion that a corporation cannot violate a criminal statute "has been completely repudiated in modern jurisprudence."  *Lewis v. Accelerated Transport Pony Express, Inc.*, 148 A.2d 783, 785 (Md. 1959).

---

[4] Although I have considered Defendants' argument, the court need not consider arguments raised only in passing.  *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).

Additionally, in reliance on the Maryland Court of Special Appeals' decision in *Thompson v. State*, 145 A.3d 105, 123 (Md. Ct. Spec. App. 2016), Defendants argue that the statute does not apply to the sale of a shotgun.   ECF No. 31, at 11-12.   *Thompson* provides no support for Defendants' position because it concerned whether a shotgun must be operable to fall within the ambit of § 5-205.   145 A.3d at 125.

Finally, Defendants argue that even if Md. Code Ann. Pub. Safety § 5-205(b)(6) satisfies the predicate exception, Defendants did not possess a sufficient scienter under the terms of the exception.   ECF No. 37, at 10.   Pursuant to 15 U.S.C. § 7903(5)(A)(iii), the predicate exception is satisfied if the Defendant "knowingly violated a State or Federal statute applicable to the sale or marketing of the product."   As noted, the PLCAA provides specific examples of circumstances in which the exception will apply, including, but not limited to, "any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition [under federal law]".   15 U.S.C. § 7903(5)(A)(iii)(II).   Accordingly, the relevant question is whether Plaintiffs have sufficiently alleged that Defendants knew or had reasonable cause to believe that Mr. Mace was prohibited from possessing a firearm under Maryland law.   For the purposes of a motion for judgment on the pleadings, Plaintiffs have met this standard.   As noted above, Mr. Mace's supervisor, as well as his co-workers, were aware that Mr. Mace suffered from a serious mental health illness which would have made his possession of a firearm illegal under Maryland law.   Mr. Mace, on multiple occasions, communicated with his co-workers regarding his impaired mental condition and on one occasion directly discussed his plans to engage in self-harm after acquiring a firearm.

Defendants' arguments that imputing the knowledge of Walmart's employees to the corporate bodies would be improper are unpersuasive.  Plaintiffs allege that Defendants maintain a list of individuals that are prohibited from possessing firearms and thus Defendants will not sell firearms to.  Accordingly, to the extent that Defendants claim that requiring the corporation to track the mental health history of individuals it may sell firearms to would implicate privacy concerns, their claims are undercut by Plaintiffs' allegations regarding their current actions.  Furthermore, Defendants could easily institute controls, to the extent that they do not already exist, barring an individual from being sold firearms, without specifying the reason for such, thus preserving the privacy of the individual, while ensuring that they do not violate state law.

Finally, although Defendants claim that the proper entity to impute knowledge to would be the individuals whom Mr. Mace informed of his mental illness and plans to self-harm, ECF No. 37, at 10, Defendants provide no basis in law for such a limitation.  Maryland courts have held that notice to an officer or agent is notice to the corporation "where the officer or agent in the line of his duty 'ought, and could reasonably be expected, to act upon or communicate the knowledge to the corporation.'"  *Hecht v. Resolution Trust Corp.*, 635 A.2d 394, 405 (Md. 1994).  As noted above, Plaintiffs allege that Mr. Mace informed his supervisor that he was suffering from a mental illness and that his supervisor knew he intended to harm himself.  In response, Mr. Mace's supervisor indicated that he would take appropriate action to ensure that Mr. Mace did not purchase a firearm.  Plaintiffs further allege that Defendants had created a system to ensure that this type of knowledge was shared among all employees so that certain individuals were not sold firearms.  Defendants may ultimately be able to show that, based on the specific facts of, and evidence presented in, this case, knowledge should not have been imputed to Defendants.  However, for the

purposes of a motion for judgment on the pleadings, Plaintiffs have alleged sufficient facts under which the knowledge of Walmart's employees may be imputed to Defendants.

### B.  The Negligent Entrustment Exception May Also Apply to Plaintiffs' Case.

Separately, the PLCAA also exempts from protection "an action brought against a seller for negligent entrustment or negligence per se."  15 U.S.C. § 7903(5)(A)(ii).  The Act goes on to define the term: "As used in subparagraph (A)(ii), the term 'negligent entrustment' means the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others."  15 U.S.C. §7903(5)(B).  Plaintiffs argue that the PLCAA's definition of negligent entrustment creates an independent basis to allow Plaintiffs' claim, regardless of whether a claim for negligent entrustment would lie under Maryland law.  ECF No. 34, at 16.  Defendants dispute this conclusion, arguing that although claims for negligent entrustment survive under the PLCAA, whether a claim is allowed depends on whether a claim for negligent entrustment would survive under applicable state law.  ECF No. 37, at 6.

Plaintiffs present no authority for their interpretation of the PLCAA beyond the PLCAA's definition of "negligent entrustment".  ECF No. 34, at 16.  As Defendants note, courts have conclusively rejected Plaintiffs' argument.  ECF No. 37, at 6.  While Plaintiffs emphasize the PLCAA's inclusion of a definition of negligent entrustment, they ignore that the PLCAA explicitly states that it does not create a public or private cause of action or remedy.  *See* 15 U.S.C. § 7903(5)(C) ("The exceptions enumerated under clauses (i) through (v) of subparagraph (A) shall be construed so as not to be in conflict, and no provision of this chapter shall be construed to create a public or private cause of action or remedy.").  As several courts have held, to accept Plaintiffs'

argument would directly conflict with this provision. *See Prescott*, 410 F.Supp.3d at 1132-33 ("Because the PLCAA does not 'create a public or private cause of action or remedy,' courts look to state law.") (internal citation omitted); *Phillips v. Lucky Gunner, LLC*, 84 F.Supp.3d 1216, 1225 (D. Colo. 2015) ("Although the PLCAA identifies negligent entrustment as an exception to immunity, it does not create a cause of action. Accordingly, the claim arises under state law.") (internal citation omitted); *Bryant-Bush v. Shawnee Gun Shop, Inc.*, No. 09-00397-CV-W-REL, 2011 WL 13177539, at *3 (W.D. Mo. Mar. 29, 2011) ("Because these exceptions are not to be construed 'to create a public or private cause of action or remedy,' the Court must look to state common law.") (citation omitted).  Accordingly, because the PLCAA does not "create a public or private cause of action or remedy," 15 U.S.C. § 7903(5)(C), I must look to state law.

Nonetheless, Plaintiffs argue that even if the PLCAA requires a valid claim under Maryland law, they have alleged a valid claim for negligent entrustment.  ECF No. 34, at 16. Defendants dispute this conclusion relying primarily on the Maryland Court of Appeals' decision in *Broadwater v. Dorsey*, 688 A.2d 436 (Md. 1997).  ECF No. 37, at 6.  In *Broadwater*, the Court of Appeals examined "whether the parents of an adult child who sell or who make a gift of an automobile to their adult child, with knowledge of the child's reckless conduct," may be liable under a theory of negligent entrustment "to a third person subsequently injured by the son's negligent operation of the automobile."  688 A.2d at 437.  The Broadwaters – the defendants in the case – filed a motion for summary judgment on the grounds that they had no power to control the vehicle at the time of the accident, and that they lacked sufficient knowledge to put them on notice that their son posed an unreasonable risk of harm to others.  *Id*.  The trial court denied their motion for summary judgment.  *Id*.  On appeal, the Court of Appeals reversed, concluding that "the paramount requirement for liability under a theory of negligent entrustment is whether or not

the defendant had a right to control the vehicle." *Id*. at 442.  Plaintiffs acknowledge the Court of Appeals' decision in *Broadwater*, but argue that it should be limited to the automobile context. ECF No. 34, at 17.

Plaintiffs correctly note that in *Valentine v. On Target, Inc.*, 727 A.2d 947 (Md. 1999), the Court of Appeals called into question the applicability of *Broadwater* outside of the automobile context.  ECF No. 34, at 17.  In *Valentine*, family members of a woman who was murdered with a firearm filed suit against the seller of the firearm, alleging that defendant, a firearms retailer, had negligently allowed the firearm to be stolen.  727 A. 2d at 948.  The respondent moved to dismiss based on an alleged failure to state a claim which the trial court granted.  *Id*. at 949.  On appeal, the Court of Appeals examined whether Plaintiff had sufficiently alleged a claim for negligence – specifically whether the store could be liable to a third party where a stolen firearm had been independently used to harm that third party.  The court ultimately concluded that in that case the store owed the third party no duty,[5] but cautioned that "does not mean that a gun store owner may never be held liable to another party for negligence in the display and sale of guns when that other party is injured as a result of the negligence." *Id*. at 953.  In the nearly two decades since, Maryland courts have not delineated the circumstances under which a store owner may be held liable to a third party for injuries arising out of the use of the firearm.

Meanwhile, courts outside of Maryland have called *Broadwater* into question.  As the Supreme Court of Tennessee explained, decisions such as *Broadwater* which require that the entruster of the chattel in question have had control of the chattel at the time the injury occurred

---

[5] As the concurrence in *Valentine* noted, "the majority stresses in several parts of its opinion that the rationale and decision in this case are limited to the facts presented, insufficient as they are." 353 Md. at 557.  (Raker, J., concurring).

confuse the concepts of negligent entrustment and vicarious liability.  *West v. East Tennessee Pioneer Oil Company*, 172 S.W.3d 545 (Tenn. 2005).  The court explained:

> negligent entrustment and vicarious liability are separate and distinct concepts.  Liability for negligent entrustment is founded upon the supplier's direct negligence in entrusting the chattel to an incompetent user.  Vicarious liability, on the other hand, relies upon the supplier's right to control the chattel at the time the entrustee misuses it.  A negligent entrustment is committed at the moment when control of a chattel is relinquished by an entrustor to an incompetent user.  Control therefore need only exist at the time of the entrustment for a prima facie case of negligent entrustment.

*Id*. at 555.

Furthermore, as Plaintiff notes, *Broadwater* is inconsistent with the Restatement of Torts § 390, upon which it supposedly relies.  *See Broadwater*, 688 A.2d at 439 (discussing § 390).  Section 390 states that:

> One who supplies directly or through a third person a chattel for use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts § 390 (1965).  Not only is the Restatement silent as to any requirement that the entruster of the chattel have controlled the chattel at the time the injury that led to the action occurred, it specifically includes an example of a successful claim analogous to this case which contradicts *Broadwater's* control requirement: "A gives a loaded gun to B, a feeble minded girl of ten, to be carried by her to C.  While B is carrying the gun, she tampers with the trigger and discharges it, harming C.  A is subject to liability to C."  *Id*.

For all of these reasons, there is significant cause to question whether *Broadwater* prohibits a finding that a seller of a firearm negligently entrusted a firearm.[6]  Ultimately, however, because I have found that Plaintiffs have satisfied the predicate exemption, I need not determine whether this exception has been satisfied, as well.[7]

### C.  The Negligence Per Se Exception Does Not Apply to Plaintiffs' Case.

Finally, the parties dispute whether Plaintiffs' claims are exempt from the PLCAA pursuant to 15 USC § 7903(5)(a)(ii), which explicitly excludes from the definition of qualified civil liability actions claims against a seller for negligence per se.  ECF No. 34, at 20; ECF No. 37, at 8.  The exception does not apply to Plaintiffs' case.  "The settled rule in Maryland is that a statutory violation is evidence of negligence.  It does not constitute negligence per se, unless a statute expressly makes it so."  *Absolon v. Dollohite*, 376 Md. 547, 557 (Md. 2003).  The statute on which Plaintiffs rely, while making the actions alleged in this case illegal, does not either expressly state that violation of such: 1) creates a civil cause of action; or 2) constitutes negligence per se.

---

[6] Defendants' argument regarding whether Plaintiffs have sufficiently pled a negligent entrustment claim is limited to whether Plaintiffs' case is barred by the PLCAA.  *See* ECF No. 31-1, at 7 ("The negligent entrustment exception of the PLCAA does not apply to Plaintiffs' claims because they have not sufficiently pled a negligent entrustment claim.").  Defendants do not specifically address or ask that the Court dismiss Count III of Plaintiffs' Complaint.  Although there is likely substantial overlap between the two questions, I hesitate to determine whether Count III of Plaintiffs' Complaint should be dismissed where the Defendants have not specifically raised the issue and Plaintiffs have not had the opportunity to explicitly address the issue outside of the context of the applicability of the PLCAA's negligent entrustment exception.  Regardless, the argument, even if it had been made, would have no effect on the viability of Counts I and II of Plaintiffs' Complaint.

[7] Going forward, beyond this case, whether *Broadwater* shields the seller of a firearm will likely be a moot point.  In 2021, as Defendants note and as discussed above, the Maryland General Assembly enacted additional criminal restrictions explicitly prohibiting the sale of a rifle or shotgun to an individual with a mental illness.  Md. Code Ann. Pub. Safety § 5-207(c)(6).  Although the statute does not apply to this case, if a defendant violates it in the future, it is clear that future Plaintiffs would be able to seek relief – via the predicate exception – against the sellers of these firearms in Maryland regardless of the PLCAA.

Accordingly, the PLCAA's negligence per se exception does not apply in this case. That said, as the Court of Appeals noted, the violation of the statute may be evidence submitted to the trier of fact at a later stage in this case to prove breach of a duty. *Id*. at 557.

### III.   Plaintiffs' Negligence Claims, as Stated, Are Sufficient to Survive a Motion for Judgment on the Pleadings.

Alternatively, Defendants argue that even if the PLCAA does not bar Plaintiffs' claims, Maryland judicial precedents 1) bar a negligence claim where the Defendants did not create the decedent's impaired mental state; and 2) bar a public nuisance claim where the Plaintiffs did not suffer a harm distinct from that experienced by the general public. ECF No. 37, at 11, 14. Accordingly, even if not barred by federal law, Defendants allege that Plaintiffs have failed to state viable claims for negligence and public nuisance under the facts of this case. *Id*.

#### A.  Plaintiffs Have Sufficiently Pled Proximate Cause.

It is a basic principle that "[n]egligence is not actionable unless it is a proximate cause of the harm alleged." *Stone v. Chicago Title Ins.*, 624 A.2d 496, 500 (Md. 1993). Proximate cause "involves a conclusion that someone will be held legally responsible for the consequences of an act or omission." *Peterson v. Underwood*, 264 A.2d 851, 855 (Md. 1970). To be a proximate cause for an injury, "the negligence must be 1) a cause in fact, and 2) a legally cognizable cause." *Hartford Ins. Co. v. Manor Inn*, 642 A.2d 219, 230 (Md. 1994). Maryland courts have described the proximate cause analysis as such:

> Once causation-in-fact is established . . . the proximate cause inquiry turns to whether the defendant's negligent actions constitute a legally cognizable cause of the complainant's injuries. This part of the causation analysis requires the court to consider whether the actual harm to a litigant falls within a general field of danger that the actor should have anticipated or expected. Legal causation is a policy-oriented doctrine designed to be a method for limiting liability after cause-in-fact has been established. The question of legal causation most often involves a determination of whether the

> injuries were a foreseeable result of the negligent conduct. Other
> public policy considerations that may play a role in determining
> legal causation include the remoteness of the injury from the
> negligence [and] the extent to which the injury is out of proportion
> to the negligent party's culpability . . . When multiple negligent acts
> or omissions are deemed a cause-in-fact of a plaintiff's injuries, the
> foreseeability analysis must involve an inquiry into whether a
> negligent defendant is relieved from liability by intervening
> negligent acts or omissions.

*Pittway v. Collins*, 973 A.2d 771, 787-88 (Md. 2009). Generally, proximate cause – both cause-in-fact and legal cause – analysis is reserved for the trier of fact; it only "becomes a question of law in cases where reasoning minds cannot differ." *Segerman v. Jones*, 259 A.2d 794, 806 (Md. 1969). It is well established that, "unless the facts admit of *but one inference* . . . the determination of proximate cause . . . is for the jury." *Caroline v. Reicher*, 304 A.2d 831, 835 (Md. 1973) (emphasis added).

In *Sindler v. Litman*, which Defendants primarily rely on, the Maryland Court of Special Appeals explicitly rejected a per se rule that a party may not seek relief against a defendant for the suicide of a third party which the defendant allegedly caused through its negligence. 887 A.2d 97, 112 (Md. Ct. Spec. App. 2005). In place of a per se rule, the court adopted the majority rule, under which "generally suicide is an independent superseding act or, in any event, not proximately caused by the negligent act, which precludes imposing liability on a third party for the suicide of another." *Id*. at 113. That said, there will be circumstances in which a defendant may be held liable for the suicide of a third party.

As the Court of Special Appeals explained in *Sindler*, there are two broad categories of cases in which a party may be liable for the suicide of another:

> One is when a party's conduct actually causes the suicide, and the
> other is when, because of a 'special relationship,' a party breaches a
> duty to prevent a foreseeable suicide. While the same general

31

> principles of tort law apply to the two categories, the analysis is different. In the first category, the focus is on the existence of a duty, and in the second category, the focus is on causation, assuming a duty and breach of that duty.

*Id*. at 111-12. In delineating what circumstances would satisfy the first situation, the Court in *Sindler* recognized "an important exception to the general rule that suicide is a superseding intervening act or, in any event, that the negligent act was not the legal or proximate cause of the suicide." *Id*. at 117. The Court concluded that where the negligent conduct caused delirium or insanity of another, the negligent actor could be liable for suicide committed by the person suffering from a mental illness. *Id*.

Defendants assert that *Sindler* held that the only circumstance in which a defendant may be held liable for negligence causing the suicide of a third party is when it causes the mental state that led to the decedent's suicide. ECF No. 37, at 11-12. Defendants are unable to identify any language in *Sindler* holding that this is the only circumstance in which a Defendant may be held liable. Rather, the specific dispute in *Sindler* was limited to whether the court should adopt a *per se* rule and second, if it did not, whether the court should specifically adopt Restatement (Second) of Torts § 455 ("Restatement § 455") pursuant to which a defendant may be held liable if it causes the insanity of a third party who commits suicide. *Sindler*, 887 A.2d at 109.

Defendants' interpretation is at odds with Maryland law for three additional reasons. First, Defendants' argument conflicts with more recent Maryland caselaw. In *Baker v. State*, the Court of Special Appeals reviewed the conviction of a defendant for causing the death of a 16-year-old. No. 2469, 2021 WL 3052916, at *1-2 (Md. Ct. Spec. App. July 20, 2021). The State's medical examiner determined the cause of death to be an overdose of Fentanyl, which the defendant had allegedly sold to the decedent just before his death. *Id*., at *1. "The State argued that its sole theory of the case was that appellant had distributed heroin laced with Fentanyl, that the act was

grossly negligent, and that the grossly negligent act caused J.K.'s death." *Id.* Before trial, the defendant informed the State that he intended to call several expert witnesses, one of whom had prepared a report indicating that the decedent had intended to harm himself, thus precluding a finding that the defendant was grossly negligent. *See id.* ("[D]efense counsel argued that the evidence was relevant to 'foreseeability' because 'you can't foresee suicide.'). The trial court granted the State's motion to exclude the testimony. *See id.* at 2 ("The court then clarified that the defense's expert, Dr. Arnall, could testify "as to other causes of death other than Fentanyl[,]' but could not 'opine as to the victim's intention or intent to commit suicide.'") (internal citations omitted).

Upon review, the Court of Special Appeals began by quoting *Sindler* for the proposition that an act of suicide may be considered an independent superseding act that, in the context of a wrongful death suit, "precludes imposing liability on a third party for the suicide of another." *Id.* at 4. However, the court went on to explain that the connection between the defendant's negligent act and the victim's suicide is not actually broken, and thus the defendant is not relieved of liability, "if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation." *Id.* at 4 (citations omitted). The court concluded that the trial court had properly excluded expert testimony regarding the decedent's motives to commit self-harm, explaining that such arguments, unless supported by evidence that they broke the causal chain, were insufficient to defeat the case against the defendant:

> Although appellant may not have anticipated J.K.'s motives for taking the heroin laced with Fentanyl, a reasonable person would have known that the natural and probable consequences of distributing heroin laced with Fentanyl to J.K. was that J.K. would take the heroin laced with Fentanyl and possibly overdose. In other words, J.K.'s subjective intent in taking the heroin laced with

> Fentanyl did not break the chain of causation between appellant's grossly negligent act of distributing heroin laced with Fentanyl and J.K.'s death. *Thus, evidence of J.K.'s possible suicide was irrelevant.*

*Id*. at 5 (emphasis added).

Given the higher standard required to find an individual grossly negligent, as opposed to merely civilly negligent, it is clear that *Baker* is equally applicable here. *Pagotto v. State*, 732 A.2d 920, 925 (Md. Ct. Spec. App. 1999) ("There are a number of cases where ordinary negligence has been established or assumed but where the evidence was nonetheless held, as a matter of law, to have been legally insufficient to have permitted the jury even to consider a manslaughter verdict based on gross criminal negligence."). Of course, an individual may still be held liable if they caused the insanity of a third party who commits suicide. As the Court explained in *Sindler*, Restatement § 455 is "simply a statement of proximate cause in a specific context." 887 A.2d at 112. However, as stated in *Baker*, where a reasonable person would have known the natural and probable consequences of providing a third party a firearm was that they would use the firearm against themselves, that defendant also may be held liable, unless they present some evidence breaking the causal chain between the provision of the firearm and the suicide. Whether Defendants have such evidence, and whether it is sufficient to break the causal chain are not proper questions at this stage of the case.

Second, to accept Defendants' argument, would in essence, adopt a *per se* rule – that a defendant is never liable for causing the suicide of a third party so long as they do not meet a singular exception. The Court in *Sindler* walked through, in detail, the reasons for rejecting the *per se* rule, including the fact that, as noted, in Maryland, it was, at the time, questionable whether suicide was a common law crime. *Id*. at 111. The basis for any reflexive rule has since further

decreased given Maryland's subsequent decriminalization of suicide.  MD Code, Criminal Law, § 3-101.1.

Third, the fact that this case involves the alleged violation of a statute, which prohibits individuals, from among other things, assisting with the acquisition of firearms by individuals who have a mental illness, may further support a finding of proximate cause under settled Maryland law.  Proximate cause, as the Maryland Court of Appeals has declared, in the context of a statutory violation, "is established by determining whether the plaintiff is within the class of persons sought to be protected [by the statute], and the harm suffered is of a kind which the drafters intended the statute to prevent."  *Polakoff v. Turner*, 869 A.2d 837, 847 (Md. 2005), quoting *Brooks v. Lewin Realty III, Inc.*, 835 A.2d 616, 621-22 (Md. 2003).  "[T]his cause and effect relationship," the Court of Appeals has explained, "makes the violation of a statute prima facie evidence of negligence."  *Id*. at 843. "Where there is evidence that the violation of the statute proximately caused the plaintiff's injury, evidence of such violation is sufficient evidence to warrant the court in submitting the case to the jury on the question of the [defendant's] negligence."  *Id*.  (internal citation and quotation marks omitted).  Other courts, outside of Maryland, have held that the violation of a similar statute supports a finding that a negligence claim could proceed.  *See Sogo v. Garcia's Nat. Gun, Inc.*, 615 So. 2d 184, 187 (Fl. Dist. Ct. App. 1993) (reversing trial court's dismissal of plaintiff's claim that defendant was negligent in selling the firearm to the decedent by suicide in violation of state ordinance which required a waiting period of three days); *Crown v. Raymond*, 764 P.2d 1146, 1149-50 (Ariz. Ct. App. 1988) (reversing grant of summary judgement to defendant firearm seller who violated state statute requiring parental consent before selling a firearm to a minor: "[I]n enacting the statute, the legislature declared that injury to themselves or others is foreseeable when guns are sold to minors without their parents' knowledge or consent.").

35

Defendants, in response, cite the Seventh Circuit's decision in *Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439 (7th Cir. 2009). ECF No. 37, at 13 (citing *Johnson* for the proposition that "suicide cases from other jurisdictions have found that suicide is an unforeseeable act that breaks the chain of causation in cases involving a retailer selling a firearm that is later used in a suicide."). The case is clearly distinguishable. As the Seventh Circuit emphasized, *Johnson* involved the limited question of whether "the alleged violation of a public safety statute *alone* can generate a reasonable inference of proximate cause in the presence of a suicide." *Id*. at 443 (emphasis added). The court did not hold that proximate cause could never exist under such circumstances, but rather that "courts remain entirely free to dismiss a claim supported by prima facie evidence where the pleadings do not permit a reasonable inference of proximate cause." *Id*. at 445. As discussed below, Plaintiffs, in this case, do not rely on the violation of the statute alone, but plead other facts which support a reasonable inference of proximate cause.

Applying these principles to this case, two things seem apparent. First, a defendant's liability, under a theory of negligence, is not limited to those situations in which a defendant causes the mental state of a third party who commits suicide. Although a defendant may be liable in that situation, it is not the only situation in which a defendant may be held liable for negligently contributing to the suicide of a third party. Second, whether a suicide may be an intervening cause is ultimately a case-specific inquiry dependent on the facts alleged, and later proven, in an individual case.[8] In this case, Plaintiffs have alleged several facts which, if true, are sufficient to

---

[8] The parties also dispute whether a special relationship is required between a third party who commits suicide and a defendant who allegedly is liable for the suicide of the third party. ECF No. 34, at 24; ECF No. 37, at 14. Maryland law is clear that where a plaintiff alleges that a defendant failed to prevent the death of a third party, a special relationship is required between the defendant and the third party. *Sindler*, 887 A.2d at 111-12. However, this is distinct from a situation in which the plaintiff argues that the defendant affirmatively causes the suicide of a third party. *Id*. In its Opposition to Defendants' Motion for Judgment on the Pleadings, Plaintiffs make

establish a reasonable inference that Mr. Mace's suicide, using the firearm sold to him, was foreseeable.  Plaintiffs allege that Mr. Mace's serious mental health illness was known to his supervisor, as well as multiple other co-workers.  Plaintiffs further allege that Mr. Mace's desire to purchase a firearm to harm himself was known to multiple employees of Defendants, including his supervisor.  In response, Mr. Mace's supervisor explicitly stated that he would take action to prohibit firearms from being sold to the decedent.  Defendants' employees, despite maintaining a list of names which should have included Mr. Mace and observing Mr. Mace's obvious inebriated state on the day of his death, sold him a firearm which he used to harm himself.  In doing so, Defendants violated Maryland law which prohibits the provision of a firearm to mentally ill individuals precisely because such harms may occur.  Although Defendants may ultimately be able to show that given the individual facts of this case the suicide constituted an intervening cause, I cannot determine, at this stage, drawing all inferences in Plaintiffs' favor, that Mr. Mace's suicide was not a foreseeable result of Defendants' alleged actions.  *See Williams v. United States*, No.: GJH-17-1125, 2018 WL 3655901, at *1, *7 (D. Md. Aug. 2, 2018) ("conduct is not a superseding cause where 'the actor at the time of his negligent conduct realized or should have realized that such situation might be created, and that the third person might avail himself of the opportunity to commit such a tort or crime.'" (quoting *Tucker v. KFC Nat'l Mgmt. Co.*, 689 F. Supp. 560, 564 (D. Md. 1988))); Restatement of Torts (Second) § 448 (stating that conduct is not a superseding cause where "the actor at the time of his negligent conduct realized or should have realized that such situation might be created, and that the third person might avail himself of the opportunity to commit such a tort or crime.")

---

clear that they are alleging that Defendants affirmatively caused the death of Mr. Mace.  ECF No. 34, at 24.  Accordingly, the arguments between the parties as to whether a special relationship is required are irrelevant.

**B.  Plaintiffs Do Not State a Viable Claim for Public Nuisance.**

Plaintiffs, in a footnote in their Opposition, concede that, in Maryland, creating and maintaining a public nuisance, is a criminal, as opposed to a civil offense.  ECF No. 34, at 20, n.2. While a private party may seek an injunction against a public nuisance, it must have an interest in property injured by the nuisance and have suffered damage distinct from that experienced by other citizens.  *Smith v. Shiebeck*, 24 A.2d 795, 801 (Md. 1942).

Plaintiffs concede that no property is at issue in this case, but argue that this limitation should be overturned as a matter of public policy.  ECF No. 34, at 20, n.2.  Although there may or may not be some merit to Plaintiffs' argument, it would be improper for the Court to rule on an argument not fully briefed.  *Grayson O Co.*, 856 F.3d at 316.  Accordingly, in light of applicable Maryland caselaw, and the lack of any detailed argument in support of Plaintiffs' position, Plaintiffs' claim for public nuisance is dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings regarding Plaintiffs' claims for negligence and negligent entrustment (Counts I, II, and III) is DENIED, and Defendants' Motion regarding Plaintiffs' claims for public nuisance (Counts IV) is GRANTED.

So ordered.

_____/s/_____

Date: July 28, 2022                                    Ajmel A. Quereshi
                                                       U.S. Magistrate Judge