# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KAYLA M. BRADY, *et al.*                     *

           Plaintiffs,         *     Civil Case No.: 8:21-cv-01412-AAQ

                      *

      v.                                          *

                      *

WALMART INC., *et al.*                        *

           Defendants.          *

## WALMART DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Kevin C. Schiferl, IN Atty #14138-49
Stephanie V. McGowan, IN Atty #30759-49
Adam S. Ira, IN Atty #32017-49
FROST BROWN TODD LLP
111 Monument Circle, Suite 4500
PO Box 44961
Indianapolis, IN 46244-0961
Telephone: (317) 237-3819
Fax: (317) 237-3900
kschiferl@fbtlaw.com
smcgowan@fbtlaw.com
aira@fbtlaw.com

Christopher R. Dunn, #8712010168
DeCARO, DORAN, SICILIANO,
GALLAGHER & DeBLASIS, LLP
17251 Melford Boulevard, Suite 200
Bowie, Maryland 20715
Telephone: (301) 352-4950
Fax: (301) 352-8691
cdunn@decarodoran.com
*Counsel for Defendants Walmart Inc. and
Wal-Mart Stores East, L.P.*

# TABLE OF CONTENTS

Table of Contents ................................................................................................. i

Table of Authorities.............................................................................................. ii

I.      Introduction....................................................................................1

II.     Argument .......................................................................................2

        A.      The PLCAA preempts Plaintiffs' claims..........................................2

                1.      This is a "qualified civil liability action"............................2

                2.      No PLCAA exception applies...........................................3

                        a.      The predicate exception is inapplicable.................3

                        b.      The negligent entrustment exception
                                does not apply ...........................................6

                3.      The PLCAA is constitutional. .............................................8

        B.      The contributory negligence bars Plaintiffs' claims. ......................9

                1.      Walmart is not the proximate cause of Mace's death...........9

                2.      Mace was contributorily negligent as a matter of law. ......12

                3.      Mace's family was contributorily negligent. ....................13

        C.      Plaintiffs cannot establish a genuine fact question on the duty
                element of their claims................................................................14

        D.      Walmart did not negligently entrust the firearm to Mace. .............17

        E.      The exclusivity of worker's compensation bars
                Plaintiffs' claims. .........................................................................17

III.    Conclusion ...........................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Ashburn v. Anne Arundel Co.*, 510 A.2d 1078 (Md. 1986) .................................................... 16

*Blake Const. Co. v. Wells*, 225 A.2d 857 (Md. 1967) ........................................................... 17

*Broadwater v. Dorsey*, 688 A.2d 436 (Md. 1997) ............................................................... 6, 7

*Bryant v. Winn-Dixie Stores, Inc.*, 786 S.W.2d 547 (Tex. App. 1990) ......................................... 16

*Chalhoub v. Dixon*, 788 N.E.2d 164 (Ill. App. Ct. 2003) ......................................................11, 16

*Chase v. Dep't of Pub. Safety & Correctional Servs.*, No. ELH-18-2182, 2020 WL 1914811 (D. Md. Apr. 20, 2020) ................................................................................................... 10

*Coates v. J.M. Bucheimer, Co.*, 218 A.2d 191 (Md. 1966) ...................................................... 17

*Crown v. Raymond*, 764 P.2d 1146 (Az. Ct. App. 1988) ..........................................................11

*Davis v. Regency Lane, LLC*, 245 A.3d 115 (Md. Ct. Spec. App. 2021) ......................................... 9

*Dist. of Columbia v. Heller*, 554 U.S. 570 (2008) ............................................................... 7

*Estate of Morris v. Goodwin*, No. DKC 13-3383, 2015 WL 132617 (D. Md. Jan. 8, 2015) ........ 12

*Gilmore v. Shell Oil Co.*, 613 So.2d 1272 (Ala. 1993) ......................................................... 9

*Graves v. Lioi*, 930 F.3d 307 (4th Cir. 2019) ............................................................... 4, 10

*Johnstone v. City of Albuquerque*, 145 P.3d 76 (N.M. Ct. App. 2006) ...................................11, 16

*Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. 1532 (S.D. Ga. 1995) ..........................................11

*Lashley v. Dawson*, 160 A. 738 (Md. 1932) ................................................................... 8

*Liscombe v. Potomac Edison Co.*, 495 A.2d 838 (Md. 1985) ................................................... 9

*Moore v. Jimel, Inc.*, 809 A.2d 10 (Md. Ct. Spec. App. 2002) ................................................. 8

*Nationwide Mut. Ins. Co. v. Anderson*, 864 A.2d 201 (Md. Ct. Spec. App. 2004) ...................... 14

*Owens v. Simon*, 226 A.2d 548 (Md. 1967) ................................................................... 9

*Pittway Corp. v. Collins*, 973 A.2d 771 (Md. 2009) ........................................................... 9

*Remburg v. Montgomery*, 831 A.2d 18 (Md. 2003) ........................................................... 16

*Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122 (D.C. Cir. 2012).....................................................11

*Segerman v. Jones*, 259 A.2d 794 (Md. 1969) ............................................................ 8

*Sindler v. Litman*, 887 A.2d 97 (Md. Ct. Spec. App. 2005) .................................10, 11, 12

*Sogo v. Garcia's Nat. Gun, Inc.*, 615 So2d 184 (Fla. Dist. Ct. App. 1993)....................................11

*Splawnik v. Di Caprio*, 146 A.D.2d 333 (N.Y. App. Div. 1989) .........................................11

*Stark v. U.S.*, No. 7:18-cv-115-M, 2020 WL 1970711 (E.D. N.C. Apr. 9, 2020) ........................ 9

*Trapnell v. U.S.*, 131 F.3d 136 (4th Cir. 1997) ........................................................ 16

*Valentine v. On Target, Inc.*, 727 A.2d 947 (Md. 1999) ............................................6, 11

*Wash. Metro. Area Transit Auth. V. Johnson*, 726 A.2d 172 (D.C. 1999)................................. 9

*Woolridge v. Price*, 966 A.2d 955 (Md. Ct. Spec. App. 2009)....................................... 9, 13

*Young v. Swiney*, 23 F.Supp.3d 596 (D. Md. 2014)........................................................ 12

## Statutes

15 U.S.C. § 7902...................................................................................... 2

15 U.S.C. § 7903................................................................................. 2, 3, 4, 5

MD. CODE ANN., CRIM. CODE § 4-108(a) ................................................................ 3

MD. CODE ANN., PUB. SAFETY § 5-205(b)(6) ......................................................... 4, 5

MD. CODE ANN., PUB. SAFETY § 5-207 ................................................................ 8

## Other Authorities

Second Restatement of Torts § 390.................................................................... 7

## Rules

FED. R. CIV. P. 30(b)(6) ............................................................................. 1

FED. R. CIV. P. 5.1(a)(1)(A)......................................................................... 9

Defendants Walmart Inc. and Walmart Stores East, L.P. (collectively, "Walmart"), by counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and the local rules of this Court, submit their Reply Brief in Support of Motion for Summary Judgment.

## I.        Introduction

Walmart's opening brief showed that summary judgment is required for several independent reasons, including that the case is preempted by federal law and that Plaintiffs cannot establish a genuine question of fact on several elements of their claims. In response, Plaintiffs' principal focus is to offer tendentious characterizations of the facts, principally claiming that Walmart managers knew about Mace's suicidality. Plaintiffs' elaborate factual inferences are wrong, resting on numerous uncited factual assertions and mischaracterizations of the record[1], all in violation of Rule 56 of the Federal Rule of Civil Procedure.

---

[1] For example, Plaintiffs cite Werner's testimony claiming that she and another employee named David Martin overheard a conversation about Mace several weeks after his death while they worked at the store. (ECF No. 79 at 12, Resp. Br.; ECF No. 79-12 at 5-7, Werner Dep. 28:1-29:21, 38:1-21, Aug. 22, 2023); (ECF No. 84-2 at 2-3, Werner Dep. 65:7-9, 70:19-21). But in fact neither Werner nor Martin were working at the store at that time. (ECF No. 84-3 at 1-2, Crowley Supp. Decl. at ¶ 4-5).

They claim that Wagner testified that O'Shea showed her Mace's text message. (ECF No. 79 at 8, Resp. Br.; ECF No. 79-5 at 2, Wagner Dep. 16:1-21, Oct. 31, 2023). In fact, Wagner said the exact opposite—that she *never* saw any text messages from Mace. (ECF No. 79-5 at 2, Wagner Dep. 16:15-19).

They claim that Wagner testified that O'Shea showed her Mace's text message. (ECF No. 79 at 8, Resp. Br.; ECF No. 79-5 at 2, Wagner Dep. 16:1-21). However, Wagner testified that she never saw any text messages from Mace, but was only going off O'Shea's word. (ECF No. 79-5 at 2, Wagner Dep. 16:15-19).

They claim that Jones responded to a request to place Mace on a list to avoid selling him a firearm by saying that he would 'take care of it.'" To the contrary, Jones was merely affirming that he would speak with Mace, not that he would place Mace on any list or otherwise prevent him from purchasing a firearm. (ECF No. 70-1 at 31, Summ. J. Br.; ECF No. 70-8 at 7, Jones Dep. 14:9-13, Feb. 8, 2023).

They cite testimony from McCreary about a conversation with Mace (ECF No. 79 at 12, Resp. Br.; ECF No. 79-11 at 18-21, McCreary Dep. 142:1-145:22, Feb. 2, 2023) even though she actually testified that she was not a participant to it and was merely reporting inadmissible hearsay reports of it. (ECF No. 79-11 at 21, McCreary Dep. 145:3-10); *see also* (ECF No. 70-1 at 23-24, Summ. J. Br.).

They cite to Walmart's corporate representative's testimony that regarding Walmart's "block list." (ECF No. 79 at 14-15, Resp. Br.; ECF No. 79-18 at 12-14, Colucci Dep. 90:1-92:21, 96:1-97:21, 101:1-102:21, Aug. 21, 2023). However, a review of the citied testimony indicates that Plaintiffs are confusing testimony on Walmart's violence free workplace policy with the "block list." (ECF No.79-18 at 13-14, Colucci Dep. 90:3-14, 91:9-17, 92:2-9); *see also* FED. R. CIV. P. 30(b)(6); (ECF No. 84-4 at 2, 3-13, Colucci Dep. 10:1-18, Ex. 1).

But at the end of the day, none of this matters. Plaintiffs offer no valid basis to connect their purported factual issues to the grounds on which Walmart showed summary judgment is required. When they eventually turn to the merits of Walmart's federal preemption and State law arguments, they offer little more than rhetoric, asking the Court to disregard most of them based on an incorrect reliance on the law of the case doctrine and waving away binding case law based on irrelevant *dictum* from other decisions or misguided policy arguments. None of this provides any genuine answer to Walmart's showings, and it should not allow Plaintiffs to evade summary judgment.

## II.    Argument

### A.    The PLCAA preempts Plaintiffs' claims.

Walmart's opening brief showed that this lawsuit fails at the threshold, because a federal statute called the Protection of Lawful Commerce in Arms Act contains a provision, 15 U.S.C. § 7902(a), that expressly preempts it. *See* (ECF No. 70-1 at 47-57, Summ. J. Br.). Plaintiffs offer no meritorious response to this showing. For this reason alone, the Court should grant summary judgment without even reaching the fact that Walmart is also entitled to summary judgment because Plaintiffs have failed to adduce evidence showing material fact questions on their claims.

### 1.    This is a "qualified civil liability action."

Walmart showed that this lawsuit is a "qualified civil liability action," meaning that the PLCAA preempts it unless one of the enumerated exceptions applies. (ECF No. 70-1 at 47-48, Summ. J. Br.). It falls squarely in the definition of that phrase set out in section 7903(5)(A); it is brought "against a seller" of a covered firearm seeking relief "resulting from [its] criminal or unlawful misuse." Mace's misuse of the firearm that he bought from Walmart was plainly

"unlawful"; it violated a Maryland statute that prohibits firing firearms on someone else's property without that owner's permission. MD. CODE ANN., CRIM. CODE § 4-108(a).

Plaintiffs' only response to this argument is to observe that the record does not reflect which property owner Mace failed to get permission from. (ECF No. 79 at 20, Resp. Br.). But, of course, that question cannot defeat application of the statute because Walmart demonstrated that Mace did not obtain permission from anyone; thus, the statute prohibited the discharge of the firearm without regard to who the owner was. (ECF No. 70-1 at 48, Summ. J. Br.) (collecting evidence showing the absence of permission). Plaintiffs do not dispute this showing or adduce any evidence that could create a fact question over whether Mace had received any permission from the property owner.[2] Thus, there is no question of material fact that this is a "qualified civil liability action" for purposes of the PLCAA. Plaintiffs thus must establish the applicability of an exception to avoid preemption. *See* PROTECTION OF LAWFUL COMMERCE IN ARMS ACT, 15 U.S.C. § 7903(5)(A) (2024).[3]

    2.    *No PLCAA exception applies.*

        a.    *The predicate exception is inapplicable.*

Walmart showed that the predicate exception set out in § 7903(5)(A)(iii) does not apply for three reasons. (ECF No. 70-1 at 49-55, Summ. J. Br.). Plaintiffs do not refute any of these showings, let alone all of them as they would have had to do to establish that the exception applies.

*First*, the predicate exception only applies where the defendant has committed a "knowing violat[ion]" of one of the statutes that the exception identifies. 15 U.S.C. § 7903(5)(A)(iii)

---

[2] Indeed, the property owner confirms that Mace did not have permission to discharge the firearm. (ECF No. 84-5 at 1-2, Brown Decl. at ¶¶ 4-9).
[3] Plaintiffs incorporate by reference their prior contention that the PLCAA only applies if the shooter was solely responsible. (ECF No. 79 at 20-21 n.5, Resp. Br.); *see also* (ECF No. 34 at 12-16, Pls.' Opp'n to Defs.' Mot. to Dismiss). This argument is inconsistent with the statutory text, and Walmart respectfully incorporates its response to it. (ECF No. 37 at 2-5, Defs.' Reply in Supp. of Mot. for J. on the Pleadings). The Court has already rejected Plaintiffs' argument.  (ECF No. 42 at 9-15, Mem. Op.).

(emphasis added). Even if someone at Walmart had known enough that they should have acted to prevent the sale of the firearm to Mace, that would at most establish Walmart's negligence; there is no evidence that anyone at Walmart knew that they were selling the firearm to Mace in violation of the statute. Thus, there was no "knowing" violation of MD. CODE ANN., PUB. SAFETY § 5-205(b)(6), the only statute Plaintiffs identify in their Response Brief as purportedly triggering the exception.

Plaintiffs claim that the Court's rejection of this argument at the motion to dismiss stage is law of the case. (ECF No. 79 at 21, Resp. Br.). But the question of whether a violation was knowing or not is a question of fact, not law, and so the law of the case is inapplicable; unlike at the motion to dismiss stage, Plaintiffs needed to adduce evidence to avoid summary judgment at this stage. *See, e.g.*, *Graves v. Lioi*, 930 F.3d 307, 317-18 (4th Cir. 2019).

Plaintiffs also argue that store managers "had knowledge of Mace's suicidal ideations and hospitalizations." (ECF No. 79 at 21-22, Resp. Br.). In the first place, this is wrong on the facts; Plaintiffs' effort to demonstrate prior knowledge of Mace's suicidality rests on exaggerated and incomplete characterizations of the record.[4]

But in any event, even if Plaintiffs had been right about that knowledge, that would not establish a fact question, because it would still not establish a knowing violation of section 5-205(b)(6). In order to do that, Plaintiffs would have needed to show not merely that Walmart

---

[4] Plaintiffs ignore, for example: that store manager Tim Crowley testified that he did not know about Mace's recent suicide attempts or hospitalizations (ECF No. 70-26 at 2-5, Crowley Dep. 15:6-16-1, 34:14-20, 35:7-17); that store manager Brennan Jones knew only that store employee Christina O'Shea had received a concerning text message, but did not know its contents (ECF No. 70-8, at 4-5, 9, 10, 14-16, Jones Dep. 10:14-11:10, 20:14-16, 21:1-4, 28:21-29:19; 39:14-17; ECF No. 70-24 at 5, Wagner Dep. 17:14-18); and that assistant manager Renard Mackell knew only about mental health issues when Mace was in high school (ECF No. 70-5 at 2, 8-10, Mackell Dep. 6:19-7:4, 32:20-35:15, 34:4-7). Further, neither O'Shea, Krebs, Barr, Werner, Wagner, nor McLaughlin were part of Walmart's salaried management team. (ECF No. 70-14 at 2, Barr Dep. 8:11-21; ECF No. 70-15 at 2, Krebs Dep. 8:6-8; ECF No. 70-23 at 2, O'Shea Decl. at ¶ 7; ECF No. 70-9 at 4, Crowley Decl. at ¶ 24; ECF No. 84-6 at 2-3, Wagner Dep. 8:8-14, 8:21-9:6, Oct. 31, 2023; ECF No. 84-3 at 2, Crowley Supp. Decl. at ¶ 6).

4

managers knew about the facts that should have prevented the sale, but also that they knew the sale was taking place and that the sale would violate section 5-205(b)(6). But Plaintiffs do *not* contend that Ida Randall, the only member of management who participated in the sale, had prior knowledge of Mace's suicidality, and she plainly did not. (ECF No. 70-27 at 4-6, Randall Dep. 11:1-6, 47:7-18, 48:12-15). Because Plaintiffs do not even purport to identify anyone who knowingly violated the statute (by selling a firearm to Mace while knowing that it would be unlawful to do so), they at most establish a fact question whether there is a *negligent* violation of the statute, because they knew facts that, Plaintiffs claim, should have led them to take actions to prevent a sale. But a negligent violation (even if, contrary to fact, one occurred) would not satisfy the predicate exception.

*Second*, even if there *had* been a knowing violation of section 5-205(b)(6), that would not have satisfied the predicate exception because it was not "the proximate cause of the harm for which relief is sought," as that exception requires. 15 U.S.C. § 7903(5)(A)(iii); *see* (ECF No. 70-1 at 53-54, Summ. J. Br.). As shown below, *see infra* § II.B.1, Plaintiffs' response to this showing has no merit.

*Third*, the predicate exception is also unavailable to Plaintiffs as a matter of law, because section 5-205(b)(6) is not, as the exception requires, a statute that is "applicable to the sale or marketing of" firearms. (ECF No. 70-1 at 54-55, Summ. J. Br.). Plaintiffs' only response to this showing is their observation that the Court rejected it for purposes of the motion to dismiss. (ECF No. 79 at 22, Resp. Br.). But Plaintiffs ignore that the Court did not then consider or address the new arguments Walmart briefed on summary judgment, showing that even on the reading of the "applicable to" phrase that the Court there adopted (and which Walmart respectfully believes is too broad), section 5-205(b)(6) would *still* not satisfy that requirement, because there is no fact

pattern under which that provision could even be applied to the sale or marketing of a firearm. Plaintiffs argue only that Walmart's sale facilitated a *different* person (Mace) violating the statute. Thus, even on the Court's interpretation of the statutory text, the exception does not apply.

In short, the predicate exception does not apply. Plaintiffs' arguments to the contrary all simply rest on misstatements of the law or baseless requests for the Court to ignore Walmart's arguments.

> b.    *The negligent entrustment exception does not apply.*

Walmart also showed that the only other PLCAA exception relied on by Plaintiffs – the negligent entrustment exception – is also inapplicable. (ECF No. 70-1 at 55-57, Summ. J. Br.) Plaintiffs offer no meritorious response to this showing.

Walmart showed that, under well settled law, negligent entrustment liability under governing Maryland State law requires that the defendant charged with negligent entrustment maintained control over the merchandise throughout the period of its misuse. *See, e.g.*, *Broadwater v. Dorsey*, 688 A.2d 436, 439 (Md. 1997). Relying on *dictum* in a case called *Valentine v. On Target, Inc.*, 727 A.2d 947 (Md. 1999), Plaintiffs assert that *Broadwater* is limited to the context of negligent entrustment claims involving automobiles. (ECF No. 79 at 23-24, Resp. Br.). But this purported limitation finds no support in *Valentine*, and it is flatly inconsistent with the language of *Broadwater*.

*Valentine* did not even involve any claim for negligent entrustment, and it does not mention that cause of action or the *Broadwater* decision. 727 A.2d at 948. Unsurprisingly, then Plaintiffs quote no language from *Valentine* that supports their argument. They quote the *Valentine* court's statement that it did not foreclose the possibility of liability "for negligence in the display and sale of guns" leading to someone being "injured as a result of the negligence." *Id.* at 953. But, in the

first place, *Valentine* never even hinted that any such liability could be cognizable in a negligent entrustment case. And, in the second place, even if it *had* addressed negligent entrustment, that statement is entirely consistent with *Broadwater* by its terms, because it could allow for liability when a firearm was entrusted to someone for a specified seller-directed purpose, where the recipient was charged with a task at the behest of the entity entrusting the firearm. In either event, there is no basis in the decision to support Plaintiffs' imagined cabining of the *Broadwater* decision to a particular negligently entrusted implement.

Plaintiffs' argument is also foreclosed by *Broadwater* itself. While the decision involved an automobile, the Court of Appeals' language made clear that its holding rested on the contours of the doctrine without regard to the particular product claimed to have been negligently entrusted; it held that the supplier must have the right to control *the chattel* at issue, without regard to what it is.[5] *See* 688 A.2d at 439.

Plaintiffs' reliance on an illustration in section 390 of the RESTATEMENT (SECOND) OF TORTS is also misplaced. Far from undermining the rule of *Broadwater*, that illustration reinforces it. The illustration indicates that there could be negligent entrustment liability if someone gives a person a firearm with instructions to carry it to a third person. But that is precisely the sort of ongoing control that *Broadwater* says is required, and that is absent when a retailer merely sells a firearm to a buyer with no ongoing control and direction.

This conclusion is strengthened by Plaintiffs' mention of a later-enacted statute imposing liability for certain shotgun sales without reference to an ongoing control requirement. *See* (ECF

---

[5] Plaintiffs also imagine a policy-based distinction based on their assertion that "[t]he primary purpose of a firearm is to injure or kill human beings." (ECF No. 79 at 24, Resp. Br.). But, of course, the actual primary purposes of firearms involve lawful uses like hunting and deterring unlawful attacks against the owner. *See, e.g.*, *Dist. of Columbia v. Heller*, 554 U.S. 570, 630 (2008) (noting "the core lawful purpose of self-defense" as well as "lawful recreational purposes") (internal quotation marks omitted).

No. 79 at 25-26, Resp. Br.) (citing Md. Code Ann., Pub. Safety § 5-207(c)(6)). The fact that the Maryland legislature passed this new law, which Plaintiffs concede does not apply to this case, just demonstrates that the law *did* contain the ongoing control limitation *before* the new enactment. Otherwise, the legislation would have been surplusage, and there would have been no rationale for enacting it.

Plaintiffs also err in their contention that foreseeability is an exclusive question for the jury. If Plaintiffs' argument were correct, then courts would never grant summary judgment in negligent entrustment cases or negligence cases in general. *See Segerman v. Jones*, 259 A.2d 794, 806 (Md. 1969) (holding that "[a]lthough foreseeability is usually a jury question, a jury should not be permitted to engage in speculation"); *cf. Moore v. Jimel, Inc.*, 809 A.2d 10, 17 (Md. Ct. Spec. App. 2002). Additionally, where, as here, the facts are undisputed or are susceptible to only one inference, then that is a question of law. *Lashley v. Dawson*, 160 A. 738, 743 (Md. 1932).

In short, binding case law from the Maryland Court of Appeals forecloses Plaintiffs' reliance on the negligent entrustment exception. The Court should reject Plaintiffs' effort to dismiss that law with irrelevant *dictum* from an unrelated case.

### 3.    The PLCAA is constitutional.

Plaintiffs mention in passing their previous challenge to the constitutionality of the PLCAA. (ECF No. 79 at 26, Resp. Br.). Yet they offer no argument in support of this assertion, merely referring back to briefing that Walmart and the Department of Justice have already fully answered. *See* (ECF No. 37 at 15-19, Defs.' Reply in Supp. of Mot. for J. on the Pleadings; ECF No. 40, Br. of U.S. in Resp. to Pls.' Fed. R. Civ. P. 5.1 Notice of Constitutional Challenge). Even apart from Plaintiffs' wholesale failure to address those extensive arguments, Plaintiffs have not validly raised the issue of the statute's constitutionality here because they do not recite that they

have provided the notice required by Rule 5.1. *See* FED. R. CIV. P. 5.1(a)(1)(A). Thus, the constitutional challenge is not only plainly wrong, but it is not even properly before the Court.

## B.    The contributory negligence bars Plaintiffs' claims.

Walmart showed that Plaintiffs cannot establish a fact question on the doctrine of contributory negligence[6] for three independent reasons: First, suicide is, as a matter of law, a superseding, intervening cause that forecloses proximate causation;[7] second, Mace was contributorily negligent; and, third, Mace's family was contributorily negligent. (ECF No. 70-1 at 58-67, Summ. J. Br.). Plaintiffs offer no response that affects these showings, any one of which is sufficient by itself to require summary judgment for Walmart.

### 1.    *Walmart is not the proximate cause of Mace's death.*

In the first place, Walmart showed that suicide is an intervening cause that defeats proximate causation unless the defendant itself caused the actor's suicidality, a claim that Plaintiffs do not make here. (ECF No. 70-1 at 59-64, Summ. J. Br.). "[S]uicide, as a consequence of a negligent act, is not legally cognizable under general principles of proximate causation, either

---

[6] Contrary to Plaintiffs' claim, (ECF No. 79 at 31, Resp. Br.), courts routinely grant summary judgment on the grounds that the plaintiff was contributorily negligent. *See, e.g., Woolridge v. Price*, 966 A.2d 955,957 (Md. Ct. Spec. App. 2009) (affirming the trial court's granting of summary judgment and finding the decedent was contributorily negligent); *Liscombe v. Potomac Edison Co.*, 495 A.2d 838, 842 (Md. 1985) (same). Indeed, other States that recognize the doctrine of contributory negligence—Alabama, North Carolina, and the District of Columbia—have recognized that when a decedent commits suicide, that act precludes a finding that a given defendant is responsible for the decedent's death. *See, e.g., Wash. Metro. Area Transit Auth. V. Johnson*, 726 A.2d 172, 177-78 (D.C. 1999) (noting "[t]he act of suicide generally is considered to be a deliberate, intentional, and intervening act which precludes a finding that a given defendant is, in fact, responsible for the decedent's death.") (citation omitted); *Gilmore v. Shell Oil Co.*, 613 So.2d 1272, 1278 (Ala. 1993) (holding "suicide and/or deliberate and intentional self-destruction is unforeseeable as a matter of law, and civil liability will not be imposed upon a defendant for a decedent's suicide"); *Stark v. U.S.*, No. 7:18-cv-115-M, 2020 WL 1970711, at *8 (E.D. N.C. Apr. 9, 2020) (holding "the decedent's suicide was a deliberate, intentional and intervening act, and this is not a case 'where the defendant caused the suicide or where the defendant had a duty to prevent the suicide from occurring'").

[7] Plaintiffs cite to *Pittway Corp. v. Collins*, 973 A.2d 771 (Md. 2009), for the premise that summary judgment on proximate cause cannot be sustained as long as facts allow for an inference that the intervening actions were sufficiently foreseeable so as to not count as superseding causes. (ECF No. 79 at 27). However, Maryland courts have held that when a plaintiff fails to meet his or her burden showing a viable theory of causation, summary judgment is proper. *See Davis v. Regency Lane, LLC*, 245 A.3d 115, 132 (Md. Ct. Spec. App. 2021); *Owens v. Simon*, 226 A.2d 548, 550-51 (Md. 1967).

because it is a superseding intervening cause or otherwise not a proximate cause." *Sindler v. Litman*, 887 A.2d 97, 109 (Md. Ct. Spec. App. 2005) (citations omitted). Walmart showed that numerous Maryland cases have applied this principle to hold that negligence claims predicated on deaths by suicide. (ECF No. 70-1 at 59-61, Summ. J. Br.). None of Plaintiffs' responses have merit.

Plaintiffs argue that this showing should be disregarded based on the law of the case doctrine. (ECF No. 79 at 27, Resp. Br.). But, particularly as it applies to a district court's reconsideration of its own ruling earlier in the case, the Fourth Circuit has "cautioned that it is merely a presumption against revising a prior ruling," and not an ironclad rule. *Chase v. Dep't of Pub. Safety & Correctional Servs.*, No. ELH-18-2182, 2020 WL 1914811, at *11 n.5 (D. Md. Apr. 20, 2020) (citations omitted) (Indeed, several other circuits have rejected the doctrine's application to interlocutory rulings altogether. *See id.* (collecting cases). It is merely "a flexible tool of judicial administration" rather than any "unyielding diktat." *Id.* at *13. And that is particularly true where, as here, the Court is asked to revisit questions at different procedural phases of the case. *See, e.g.*, *Graves*, 930 F.3d at 318. In short, Plaintiffs cannot simply dismiss this argument without regard to its merit; the Court has full authority to consider the issue.

Plaintiffs also argue that "*Valentine* implicitly recognized that an intervening third-party misuse of a negligently sold gun could be sufficiently foreseeable so as not to count as a superseding cause." (ECF No. 79 at 27, Resp. Br.). They quote no language from *Valentine* and offer no discussion of its facts or reasoning supporting this assertion, and they are wrong. Indeed, to the extent that *Valentine* is relevant to this question at all, it explained that, "although the inherent nature of guns suggests that their use may likely result in serious personal injury or death to another this does not create a duty of gun dealers to all persons who may be subject of the harm." 727 A.2d at 953. The unexceptional fact that it said that its ruling did not necessarily extend to

other fact patterns that were not raised by the case, *see id.*, does nothing to suggest that it disagreed with the longstanding rule articulated by *Sindler* and other cases, a question that had nothing to do with that case.

Plaintiffs also cite a handful of cases applying the law of *other* States. Those cases, of course, do nothing to abrogate binding caselaw addressing *Maryland* law, and, in any event, they are not even analogous to this one on their facts.[8] In any event, Plaintiffs ignore that numerous other cases from other States have embraced the rule adopted in *Sindler* and other cases.[9]

Plaintiffs reserve their response to the governing Maryland precedents on this issue – *Sindler* and its progeny – for the very end of their discussion of this issue. And they have little to say about them. Plaintiffs recite the facts of *Sindler* and merely assert that it did not hold "that causing insanity was the *only* means by which a third party can be held liable for suicide." (ECF No. 79 at 30, Resp. Br.).

This assertion finds no support in the text of the decision, which is why they quote no such language. As Walmart showed in its opening brief (ECF No. 70-1 at 59-61, Summ. J. Br.), the holding of *Sindler* squarely applies by its terms here. And any lingering doubt is eliminated by

---

[8] *Sogo v. Garcia's Nat. Gun, Inc.*, 615 So2d 184 (Fla. Dist. Ct. App. 1993), involved a claimed failure to abide by a local three-day waiting period ordinance. *Id.* at 185-86. The obligation was thus a creature of statute rather than the common law. *Crown v. Raymond*, 764 P.2d 1146 (Az. Ct. App. 1988), involved the sale of a firearm to a minor. *Id.* at 1147. It, too, focused on a statute prohibiting such sales. *Id.* at 1149. And indeed, it emphasized that its holding would not apply to a sale to an adult, where the statute in question did not apply. *Id. Splawnik v. Di Caprio*, 146 A.D.2d 333 (N.Y. App. Div. 1989), was a Rule 12(b)(6) decision that did not consider the question at issue here, namely, whether the plaintiff could establish a genuine question of fact sufficient to proceed to trial. And *Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. 1532 (S.D. Ga. 1995), involved a firearm sale to someone who: had numerous prior store-wide security alerts; had a store-wide security alert when he entered the store the day of the sale; was adjudicated mentally defective or committed to a mental institution; had a concerning physical appearance and demeanor the day of the sale; thought by someone who assisted in the firearm sale to be "mentally disturbed." *Id.* at 1534-35, 1539-40.

[9] *See, e.g., Johnstone v. City of Albuquerque*, 145 P.3d 76 (N.M. Ct. App. 2006) (holding that, subject to the exceptions recognized in *Sindler*, "[g]enerally, suicide is an independent intervening cause of death that is not foreseeable and absolves a defendant of civil liability"); *Chalhoub v. Dixon*, 788 N.E.2d 164, 539-40 (Ill. App. Ct. 2003) (holding decedent's suicide was an independent intervening event that broke the chain of causation); *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 127 (D.C. Cir. 2012) (Kavanaugh, J., concurring) (noting that, under District of Columbia law, "[t]he plaintiff must prove, as a result of the defendant's action, 'the decedent could not have decided against and refrained from killing himself, and because of such uncontrollable impulse, the decedent committed suicide'").

*other* Maryland cases *applying Sindler* that Plaintiffs simply ignore. *See, e.g.*, *Young v. Swiney*, 23 F.Supp.3d 596, 613 (D. Md. 2014) (applying *Sindler* to a proximate causation analysis of a Maryland wrongful death claim); *McDougald v. Spinnato*, No. ELH-17-2898, 2019 WL 1226344, at \*20 (D. Md. Mar. 15, 2019) (applying *Sindler* to when a person may be held liable for the suicide of another under Maryland law in a wrongful death claim); and *Estate of Morris v. Goodwin*, No. DKC 13-3383, 2015 WL 132617, at \*7-9 (D. Md. Jan. 8, 2015) (applying *Sindler* in the context of a Maryland wrongful death claim).

In short, Maryland law is unequivocal on this question, and Plaintiffs offer no basis to question or evade the rule articulated in *Sindler* and other cases.[10] Summary judgment is required for this reason alone.

### 2. *Mace was contributorily negligent as a matter of law.*

Plaintiffs can also not establish a genuine question of fact because Mace, not just by committing suicide but by his conduct in connection with the firearm purchase itself, was contributorily negligent as a matter of law. (ECF No. 70-1 at 64-66, Summ. J. Br.). Plaintiffs' response to this showing is without merit. (ECF No. 79 at 31-33, Resp. Br.).

Plaintiffs deny that Mace knew it was unlawful for him to buy the firearm from Walmart. But Mace obviously knew that he suffered from suicidal ideation, knew he had recently been in the hospital for suicidal ideation, and, most fundamentally, knew that he was attempting to buy the firearm in order to use it to commit suicide. There is no basis to dispute Walmart's showing that Mace plainly knew that he was not permitted to buy this firearm, which is why he did not disclose his suicidality during the course of the purchase.

---

[10] Plaintiffs' own expert supports the position that Walmart was not the proximate cause of Mace's suicide noting that Mace was "chronically suicidal." ECF No. 84-7 at 2-3, Bryan Dep. 120:7-121:15, Sept. 8, 2023).

Plaintiffs also contradict the sworn deposition testimony of their expert Vince, who testified under oath that Mace made affirmative misrepresentations on Form 4473. (ECF No. 70-1 at 65-66, Summ. J. Br.). They now claim—with no record citation—that Vince "was not factually accurate" and made a "mistake[]." (ECF No. 79 at 32, Resp. Br.). There is nothing in the record (deposition testimony, declaration, or errata sheet) from Vince stating under oath that he misstated any fact or that he needed to correct the record. Plaintiffs' unsupported, self-serving claims about "mistakes" their own expert made cannot be considered on summary judgment.

In addition, Plaintiffs also attempt reliance on Vince's other opinions "that Walmart had reason to believe Mace would use the firearm to harm himself and thus should not have proceeded with the sale" do not include a citation to Vince's report. (ECF No. 79 at 32, Resp. Br.). In any event, this opinion is irrelevant to whether Mace was also contributorily negligent, which is established by Vince's *other* opinion.

Finally, Plaintiffs' attempt to argue the last clear chance doctrine applies, asserting that even if Mace did deliberately participate in an unlawful firearm purchase, including making false statements in connection with it, Walmart had the last chance to avoid the sale. To the contrary, the purported negligence with which Plaintiffs (wrongfully) charge Walmart occurred temporally *before* Mace's own final conduct, when (they claim) Walmart personnel should have taken prior acts to prevent a firearm sale to Mace. The last clear chance doctrine is thus inapplicable. *See, e.g.*, *Woolridge*, 966 A.2d at 961.

### 3.    *Mace's family was contributorily negligent.*

Walmart also showed that Mace's family was contributorily negligent by failing to warn Walmart or to get an extreme risk protective order. (ECF No. 70-1 at 66-67, Summ. J. Br.). Plaintiffs offer no meritorious response. (ECF No. 79 at 33-36, Resp. Br.).

First, Plaintiffs ignore that Brady admittedly saw Mace's Facebook conversation with McLaughlin where Mace was asking McLaughlin about purchasing her a shotgun as gift. (ECF No. 70-1 at 66; ECF No. 70-11 at 8, 36, 57, Brady Dep. 30:7-15, 89:2-7, Ex. A). Brady did not respond to this by taking any preventive action. (ECF No. 70-1 at 34-35, 66). Had she reached out to McLaughlin, then he would not have sold Mace the firearm. (ECF No. 70-1 at 35).

Instead, Plaintiffs claim that they did not need to inform Walmart of Mace's recent suicide attempts or hospitalizations for suicidal ideation because, they contend, Walmart already knew. But their elaborate efforts to piece together evidence of Walmart's purported knowledge retrospectively, on the basis of a full litigation record, just reinforces that they had no basis to assume such knowledge at the time they failed to act.

Plaintiffs cite Dr. Bryan's testimony that access to firearms correlates with a higher likelihood of death by suicide. But they ignore that it follows from this testimony that, because Brady knew Mace wanted to purchase a firearm, this merely exacerbates their own culpability in failing to act.

Finally, Plaintiffs claim that their contributory negligence is absolved because Walmart sold him the firearm and had the last clear chance to prevent the injury. But, as shown above, it was Mace who took the last negligent act in connection with his purchase of the firearm. Thus, the last clear chance doctrine cannot be invoked against Walmart. *Nationwide Mut. Ins. Co. v. Anderson*, 864 A.2d 201, 207 (Md. Ct. Spec. App. 2004) (citation omitted).

**C.    Plaintiffs cannot establish a genuine fact question on the duty element of their claims.**

Walmart showed that Plaintiffs cannot satisfy the duty element of their claims because employers do not owe duties in tort to employees for mental health crises, and because Walmart

14

obeyed all federal and State firearm sale laws. (ECF No. 70-1 at 67-72, Summ. J. Br.). Plaintiffs'
response, ECF No. 79 at 36-39, does not meaningfully address or answer this showing.

Plaintiffs did not dispute Walmart's showing that employers do not owe a tort duty to their
employees to intercede in their mental health. (ECF No. 70-1 at 68-71, Summ. J. Br.). Nor do
Plaintiffs identify legal authority supporting their claim that, under Maryland law, Walmart owed
Mace a duty on any other basis. Indeed, their arguments would, even if, contrary to fact, they had
been correct, would establish only a federal law duty; but Plaintiffs do not assert the violation of
any federal law, and they assert only State law claims under Maryland law.

Plaintiffs argue that Walmart owed Mace a duty not to sell him a firearm "when it knew or
had reason to believe that the firearm would be used to harm the purchaser or a third party. (ECF
No. 79 at 36, Resp. Br.). Plaintiffs provide no legal citation in support of this claim; instead,
Plaintiffs reference Abramson's testimony. But Abramson noted that, on the issue of duty, he was
not offering opinions of any regard with respect to Maryland state law and his opinions were
limited to federal regulations. (ECF No. 84-8 at 2-3, Abramson Dep. 73:5-74:7, Sept. 6, 2023).
Plaintiffs have not claimed that Walmart violated any federal law, but rather a Maryland state law.

What is more, Plaintiffs failed to rebut Walmart's argument that it does not owe a duty,
beyond what is required under federal and State law, to screen customers for suicidal ideation or
mental health issues prior to approving a firearms transaction.

Plaintiffs do not address, let alone refute, Walmart's showing that, as relates to duty in the
context of suicide, "[u]nder Maryland tort law, a person generally does not have a duty to prevent
another's suicide, even when that suicide is foreseeable, unless the person has a special relationship
with the potential victim." *Trapnell v. U.S.*, 131 F.3d 136, at *1 (4th Cir. 1997) (unreported) (citing
*Eisel*, 597 A.2d at 450), *aff'g Trapnell v. U.S.*, 926 F.Supp. 534, 535-36 (D. Md. 1996)). This is

true wholly apart from an employment relationship, and thus refutes Plaintiffs' claim that they can evade the law showing that employers lack a duty in this area by using more general principles of duty.

Even considering foreseeability, "the fact that a result may be foreseeable does not itself impose a duty in negligence terms." *Remburg v. Montgomery*, 831 A.2d 18, 26 (Md. 2003) (citing *Ashburn v. Anne Arundel Co.*, 510 A.2d 1078, 1083 (Md. 1986)). Here, Plaintiffs have presented no admissible evidence that Mace's suicide was foreseeable. None of the Walmart management, which was required to approve the sale, or McLaughlin, knew of Mace's recent suicidal attempts and hospitalizations for suicidal ideation. (ECF No. 70-1 at 72, Summ. J. Br.). Nor did McLaughlin or Randall suspect anything was amiss. (*Id.*).

When it comes to firearms sales no law requires that retailers become mental health experts. *See Johnstone*, 145 P.3d at 81 ("[L]aypeople cannot be reasonably expected to anticipate the mental health consequences of their acts or omissions.") (citing *Chalhoub v. Dixon*, 788 N.E.2d 164, 167 (2003)); *Phillips v. K-Mart Corp.*, 588 So.2d 142, 145 (La. Ct. App. 1991) (holding the Gun Control Act does not impose a duty on FFLs to train employees to recognize mental incompetency); *Bryant v. Winn-Dixie Stores, Inc.*, 786 S.W.2d 547, 549 (Tex. App. 1990) (holding that nothing in the Gun Control Act "indicates a duty of inquiry on the part of the seller").

Mace provided a legitimate reason for wanting to purchase the shotgun, had previously purchased a firearm from Walmart, had spoken previously with McLaughlin before about firearms, did not appear intoxicated or inebriated in anyway, and appeared in good spirts and "just seemed like the normal Jake to [McLaughlin]," and there were otherwise no "red flags" that indicated that the transaction should not proceed. (ECF No. 70-1 at 72, Summ. J. Br.).

**D.    Walmart did not negligently entrust the firearm to Mace.**

Plaintiffs have not come forward with a genuine issue of material fact that would preclude summary judgment on their negligent entrustment claim. As shown above, *see supra* § II.A.2.b, Walmart did not negligently entrust the firearm to Mace, Walmart Bid not have control over the firearm at the time of Mace's suicide, and Mace's suicide was not foreseeable.

**E.    The exclusivity of worker's compensation bars Plaintiffs' claims.**

Walmart showed that Plaintiffs' tort claims are foreclosed by the exclusivity provision of the State workers' compensation statute. (ECF No. 70-1 at 73-75, Summ. J. Br.). Plaintiffs respond (ECF No. 79 at 40-44, Resp. Br.) that, because Mace committed suicide on his lunch break, his injury is not covered by workers' compensation. This is contrary to Plaintiffs' own arguments that the injury to Mace occurred when Walmart sold him the firearm.

That sale occurred while Mace was still inside the Walmart store on his lunch break. The fact that Mace remained in the store at the time of purchase distinguishes the facts at bar from *Coates v. J.M. Bucheimer, Co.*, 218 A.2d 191 (Md. 1966), and *Blake Const. Co. v. Wells*, 225 A.2d 857 (Md. 1967). Furthermore, any knowledge that Walmart allegedly had regarding Mace's suicide attempts and hospitalizations for suicidal ideation, according to Plaintiffs, arose through Mace's status as a Walmart employee.

Moreover, Plaintiffs have attempted to argue that Mace's purchase of the firearm, leaving the store, driving to a different parking lot, and committing suicide over an hour later was one negligent act on the part of Walmart. Assuming Plaintiffs argument, that would mean their claims would be barred by workers' compensation. Yet, in response to Walmart's workers' compensation argument, Plaintiffs now argue that each of these acts should be considered a separate event, breaking the chain of causation. Either Walmart is not liable under a common law theory of

17

negligence because Walmart did not owe Mace a duty and the sale of the firearm was not a proximate cause of his suicide, or Plaintiffs' claims fall under the purview of the Maryland Worker's Compensation Act.

### III.    Conclusion

For all the foregoing reasons, Plaintiffs cannot establish a genuine question of fact allowing their claims to proceed to trial. The Court should grant summary judgment in favor of Walmart.

Respectfully submitted,

By:  */s/ Stephanie V. McGowan*

Kevin C. Schiferl, IN Atty #14138-49
Stephanie V. McGowan, IN Atty #30759-49
Adam S. Ira, IN Atty #32017-49
FROST BROWN TODD LLP
111 Monument Circle, Suite 4500
PO Box 44961
Indianapolis, IN 46244-0961
Telephone: (317) 237-3819
Fax: (317) 237-3900
kschiferl@fbtlaw.com
smcgowan@fbtlaw.com
aira@fbtlaw.com

Christopher R. Dunn, #8712010168
DeCARO, DORAN, SICILIANO,
GALLAGHER & DeBLASIS, LLP
17251 Melford Boulevard, Suite 200
Bowie, Maryland 20715
Telephone: (301) 352-4950
Fax: (301) 352-8691
cdunn@decarodoran.com
*Counsel for Defendants Walmart Inc. and
Wal-Mart Stores East, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of March, 2023, a copy of the foregoing document was filed electronically with this Court's ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Kevin P. Sullivan
Daniel P. Stringer
SALSBURY SULLIVAN, LLC
100 N. Charles Street, Suite 900
Baltimore, MD 21201
ksullivan@salsburysullivanlaw.com
dstringer@salsburysullivanlaw.com

*Attorneys for Plaintiffs*

/s/ Stephanie V. McGowan

FROST BROWN TODD LLP
111 Monument Circle, Suite 4500
PO Box 44961
Indianapolis, IN 46244-0961
317-237-3800
Fax: 317-237-3900
kschiferl@fbtlaw.com
smcgowan@fbtlaw.com
aira@fbtlaw.com

LR08000.0745228  4881-4663-1082v1

19