**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

KAYLA M. BRADY, *et al*. *

Plaintiffs, *

v. * Civil Case No. 8:21-1412-AAQ

WALMART INC. *et al*., *

Defendants. *

**MEMORANDUM OPINION AND ORDER**

This is a case concerning a Walmart store's sale of a firearm to a man, Jacob Mace, who was experiencing a mental health crisis and subsequently ended his life using that firearm. Pending before the Court is Defendants' Motion to Certify Order Denying Summary Judgment for Interlocutory Appeal, ECF No. 87. For the reasons explained below, the Court shall deny the Motion.

**BACKGROUND**

The facts of this case are detailed in the Court's May 20, 2024, Memorandum Opinion, ECF No. 86. In brief, Jacob Mace worked as a part-time maintenance associate at the Walmart Supercenter in California, Maryland for several months in 2018 and 2019. ECF No. 86, at 1-2. Mr. Mace experienced an acute mental health crisis at the beginning of November 2019. *Id.* at 5. On November 15, 2019, Mr. Mace arrived for work at Walmart. *Id.* at 9. During his lunch break, he purchased a shotgun from the store. *Id.* at 9. Later that day, police found Mr. Mace's body inside his truck and determined that he had died from a self-inflicted gunshot wound produced by the shotgun he had purchased earlier from Walmart. *Id.* at 10.

Plaintiffs—family members of Mr. Mace—filed suit against Walmart Inc. and its subsidiary Wal-Mart Stores East, LP ("Walmart" or "Defendants") alleging negligence in the sale of the firearm to Mr. Mace, as well as negligent entrustment of the same.[1] *Id.* at 10-11; ECF No. 3, at 13, 16-19. In September 2021, Defendants moved for judgment on the pleadings arguing, among other things, that the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. §§ 7901-7903, barred the lawsuit. ECF No. 86, at 11; ECF No. 42, at 7 (explaining the PLCAA prohibits certain types of civil liability actions brought against firearm manufactures and dealers). The Court granted, in part, and denied, in part, Defendants' Motion. ECF No. 43. The Court could not conclude at that stage of the proceedings that the PLCAA applied to Plaintiffs' lawsuit, but held that even if it did, the lawsuit could proceed under at least one of the law's exceptions. ECF No. 42, at 6-7.

Defendants later filed a Motion for Summary Judgment, ECF No. 70, that the Court denied, ECF No. 86. Defendants again argued that the PLCAA barred Plaintiffs' lawsuit and that none of the PLCAA's exceptions apply. ECF No. 70-1, at 38-48; ECF No. 84, at 2-8. First, the Court concluded that this lawsuit is a qualified civil liability action to which the PLCAA applies. ECF No. 86, at 15. Then, it determined that Plaintiffs had put forth sufficient evidence to establish genuine issues of fact regarding the applicability of two exceptions under the PLCAA: (1) the predicate exception, which allows for liability on the part of a manufacturer or seller of a firearm if it "knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm," 15 U.S.C. § 7903(5)(A)(iii); and (2) the negligent entrustment exception, which allows suits for negligent entrustment to proceed

[1] Plaintiffs also included a claim of public nuisance in their Complaint but conceded its inapplicability in their Opposition to Defendants' Motion for Judgement on the Pleadings. The Court subsequently dismissed that count. ECF No. 42, at 38.

free from the PLCAA's limitations, *id.* § 7903(5)(b). ECF No. 86, at 16-37. The Court accordingly allowed the lawsuit to proceed.

Defendants subsequently filed the present Motion seeking to certify for interlocutory appeal the question of "[w]hether the federal Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7901 *et seq*., . . . preempts Plaintiffs' State law claims." ECF No. 87-2. The Motion has been fully briefed and is now ripe for decision. ECF Nos. 87, 88, 90.

**STANDARD OF REVIEW**

"[A] party must ordinarily raise all claims of error in a single appeal following final judgment on the merits." *Flanagan v. United States*, 465 U.S. 259, 263 (1984) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)). This "final judgment rule serves several important interests" like "minimizing appellate-court interference" and ensuring "efficient administration of justice." *Id.* at 263-64. The Supreme Court has long made clear that courts should avoid "piecemeal appellate review of trial court decisions which do not terminate the litigation." *Id.* (quoting *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 (1982)).

An exception arises under 28 U.S.C. § 1292(b), which "provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 623 (D. Md. 2013) (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982)). A district court may, in its discretion, certify an interlocutory order for appeal that (1) "involves a controlling question of law" (2) as to "which there is a substantial ground for difference of opinion" (3) where "an immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *In re Trump*, 958 F.3d 274, 282-83 (4th Cir. 2020). "The party moving for certification of the interlocutory order bears the burden of proving each element, and

'[f]ailing to meet even one of the statutory requirements will defeat a litigant's request for an interlocutory appeal.'" *Franklin v. Cleo AI Inc.*, JMC-24-146, 2024 WL 4457975, at *1 (D. Md. Oct. 10, 2024) (quoting *Ekstrom v. Cong. Bank*, No. ELH-20-1501, 2021 WL 119000, at *2 (D. Md. Jan. 13, 2021)); *see also Hall v. Greystar Mgmt. Servs., L.P.*, 193 F. Supp. 3d 522, 525 (D. Md. 2016) (explaining that to certify appeal under § 1292, a district court must be assured that "*all* of the statutory criteria are satisfied") (quoting *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015)). The Fourth Circuit has "cautioned 'that § 1292(b) should be used sparingly and thus that its requirements must be strictly construed.'" *United States ex rel. Michaels v. Agape Senior Cmty, Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (quoting *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989)); *see also Randolph v. ADT Sec. Servs., Inc.*, No. DKC-09-1790, 2012 WL 273722, at *5 (D. Md. Jan. 30, 2012) ("Indeed, it is axiomatic that the district court should grant this 'extraordinary remedy' only in 'exceptional circumstances' where early appellate review would avoid a 'protracted and expensive litigation' process.") (quoting *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, at *2 (4th Cir. 1989) (per curiam and unpublished)).

## DISCUSSION

The question of "[w]hether the federal Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7901 *et seq*., . . . preempts Plaintiffs' State law claims" is not appropriate for interlocutory review. ECF No. 87-2. Defendants have not established two of the three required elements of Section 1292(b); accordingly, exercising its discretion, the Court declines to certify the proposed question for interlocutory review.

### I. Whether the PLCAA Preempts Plaintiffs' State Claims Involves Controlling Questions of Law.

"For purposes of the § 1292(b) analysis, a 'controlling question of law' is a question directed to the 'meaning of a statutory or constitutional provision, regulation, or common law

doctrine,' as opposed to a question heavily freighted with the need for factual assessment." *Hall*, 193 F. Supp. 3d at 525 (quoting *Butler*, 307 F.R.D. at 452). Typically, "the court of appeals [can] decide [a question of law] quickly and cleanly without having to study the record." *Butler*, 307 F.R.D. at 452 (quoting *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010)). "[A] question is 'controlling' if its incorrect disposition would require reversal of a final judgment." 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3930 (3d ed. 2024); *Hall*, 193 F. Supp. 3d at 526 ("A question of law is not controlling if litigation will 'necessarily continue regardless of how that question [is] decided.'" (quoting *LaFleur v. Dollar Tree Stores, Inc.*, No. 12-CV-363, 2014 WL 2121721, at *2 (E.D. Va. May 20, 2014)).

Defendants seek certification of one question: whether the PLCAA preempts Plaintiffs' state law claims. They have met their burden as to Section 1292(b)'s first element because the applicability of the predicate and negligent entrustment exceptions turns on several issues of law that the Court of Appeals could resolve "without having to study the record." *Butler*, 307 F.R.D. at 452. The predicate exception provides that a manufacturer or seller of a firearm may be held liable in a qualified civil liability action if it "knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm" that is the subject of the lawsuit. 15 U.S.C. § 7903(5)(A)(iii). Plaintiffs claim that by selling a gun to Mr. Mace on November 15, 2019, Walmart, "either directly or as an accomplice," knowingly violated Section 5-205(b)(6) of the Public Safety Article of the Maryland Code, ECF No. 79, at 20, which prohibits a person who "suffers from a mental disorder . . . and has a history of violent behavior against the person or another" from possessing certain firearms, Md. Code Ann., Pub. Safety § 5-205(b)(6) (West 2024). The Court decided three issues of law related to this exception in its opinion on Defendants' Motion for Judgment on the Pleadings and further

reiterated them in its Opinion on Defendants' Motion for Summary Judgment: (1) Section 5-205(b)(6) of the Maryland Code is applicable to the sale of firearms; (2) the scienter required to establish a knowing violation of Section 5-205(b)(6) is knowledge or reasonable cause to believe that Mr. Mace was prohibited from possessing a firearm under Maryland law; and (3) whether suicide is an intervening cause is a case-specific inquiry dependent on the facts alleged, and later proven, in an individual case. ECF No. 86, at 18. All three issues do not require particular attention to the record—instead, these are determinations that turn on interpretation of the common law and statutory language. *Hall*, 193 F. Supp. 3d at 525.

Application of the negligent entrustment exception also turns on a question of law: whether Maryland law requires that "the seller maintain ongoing control of the thing that caused the injury." ECF No. 87, at 4. The Court's holding on that issue relied on a reading of case law and other binding authorities, not on the facts of the case. ECF No. 86, at 31-37.

Plaintiffs argue that the application of both exceptions turns, at least in part, on factual findings. ECF No. 88, at 7-8. To be sure, with respect to the predicate exception, the Court has made clear that "even if [Plaintiffs] must demonstrate that the sale was 'knowing,' [they] have presented sufficient evidence to create a genuine issue of material fact" sufficient to survive summary judgment. ECF No. 86, at 25. Nevertheless, the three legal questions discussed earlier are all antecedent to the factual inquiry. If the Court of Appeals reverses this Court's holding on the first or third issue, any factual assessment would be immaterial, because the predicate exception would not apply. Plaintiffs encounter similar issues with the negligent entrustment exception. Plaintiffs define the relevant disagreement there as "whether Defendants' actions were a proximate cause of Mace's suicide" as a matter of fact. ECF No. 88, at 8. Defendants raise a different, purely legal point: "whether Maryland law requires that the seller maintain ongoing control of the thing

that caused the injury." ECF No. 87, at 4-5; ECF No. 89, at 3. To answer this question, a court need not consider the facts of this case.

Finally, these questions of law are controlling. If the Court's holdings under the PLCAA are "erroneous" they would constitute "reversible error on final appeal." *Lynn*, 953 F. Supp. 2d at 623 (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)). Reversal on any of the legal issues could extinguish some of Plaintiffs' claims pursuant to the PLCAA's bar or end this case—indicators that these questions are controlling. *See* 16 Charles Alan Wright & Arthur R, Miller, *Federal Practice & Procedure* § 3930 (3d ed. 2024); *Coal. for Equity & Excellence in Md. Higher Educ. v. Md. Higher Educ. Comm'n*, No. CCB-06-2773, 2015 WL 4040425, at *4-5 (D. Md. June 29, 2015) (explaining that a question may be controlling if reversal would save time for the district court). Accordingly, Defendants have met their burden as to Section 1292(b)'s first element.

## II. There Is Not a Substantial Difference of Opinion Among Courts Regarding the Legal Issues for Which Defendants Seek Interlocutory Review.

"[T]he statutory requirement of a 'substantial ground for difference of opinion' is satisfied only where 'courts, as opposed to parties, disagree on a controlling legal issue.'" *Hall*, 193 F. Supp. 3d at 525-26 (quoting *Randolph*, 2012 WL 273722, at *6). "[C]ourts find substantial grounds 'where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Int'l Refugee Assistance Project v. Trump*, 404 F. Supp. 3d 946, 950 (D. Md. 2019) (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)). The split must be meaningful—"[l]ack of unanimity among courts . . . do[es] not suffice," nor does "a question of first impression[] standing alone." *Id.* (citations omitted). "'In other words, for interlocutory appeals, it matters not whether the lower court simply got the law

wrong,' but 'whether courts themselves disagree as to what the law is.'" *Goodman v. Archbishop Curley High Sch., Inc.*, 195 F. Supp. 3d 767, 774 (D. Md. 2016) (quoting *In re Nichols*, No. TDC-14-625, 2014 WL 4094340, at *3 (D. Md. Aug. 15, 2014)).

Defendants have failed to identify case law demonstrating sufficient disagreement on the issues for which they seek interlocutory review. As to each issue, either the weight of authority supports the Court's conclusion or the holding involves a question of first impression, which is insufficient to justify interlocutory review. *See Goodman*, 195 F. Supp. 3d at 774-76.

Defendants first argue that "there is substantial ground for disagreement" as to how to interpret the predicate exception's use of the phrase "applicable to the sale or marketing of a firearm." ECF No. 87, at 5; ECF No. 90, at 3-4. In its previous decisions, the Court concluded that "although a general tort statute may not provide sufficient predicate for purposes of [the PLCAA], a statute that explicitly regulates firearms will satisfy the exception." ECF No. 42, at 20. The Court then explained that Maryland Code Section 5-205(b)(6), which explicitly prohibits possession of a rule or shotgun by a person that "suffers from a mental disorder . . . and has a history of violent behavior against the person," qualifies as a predicate statute because "aiding and abetting" such possession through a sale satisfies the statute. ECF No. 42, at 15-16. That conclusion was based on "the text of the PLCAA, the guidance of the Supreme Court, previous decisions of this Court, and the jurisprudence cited by both parties in support of their positions"—including the cases Defendants cite in their present Motion, *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009), and *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008). *Id.* at 20; ECF No. 87, at 5; ECF No. 90, at 3. As previously explained, these cases support the Court's conclusion that a statute like Maryland Code Section 5-205(b)(6) that expressly regulates firearms falls within the predicate exception. ECF No. 42, at 18-20 (citing *City of New York*, 524 F.3d at

404 ("In sum, we hold that the [predicate] exception . . . does encompass statutes (a) that expressly regulate firearms, or (b) that courts have applied to the sale and marketing of firearms."); *Ileto*, 565 F.3d at 1135 (concluding that the PLCAA predicate exception likely applies to "statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry" as opposed to general, common-law tort theories)). Defendants do not identify new case law, respond to the Court's reasoning, or propose an alternative reading of these cases that would indicate substantial disagreement.

Next, Defendants argue that the "text of the PLCAA itself supplies reasonable grounds for disagreement" as to their contention that a violation of a predicate statute must be knowing. ECF No. 87, at 5-6. This misunderstands the legal standard. The inquiry is whether "courts, as opposed to parties, disagree" on a legal issue. *Goodman*, 195 F. Supp. 3d at 774 (quoting *Randolph*, 2012 WL 273722, at *6). Defendants identify no court that has taken its position on the PLCAA's text. Mere disagreement on this question, without any precedent in support, does not meet the Section 1292(b) standard. *See Int'l Refugee Assistance Project*, 404 F. Supp. 3d at 950.

Defendants also fail to meet the standard regarding their contention that "there was no predicate violation because the act of suicide constitutes an intervening cause as a matter of law." ECF No. 87, at 6. Defendants' disagreement relies on the Maryland Court of Appeals' decision in *Sindler v. Litman*, 887 A.2d 97 (Md. 2005), which the Court previously addressed in significant detail. ECF No. 42, at 31-37; ECF No. 86 at 27-30. The Court does not read *Sindler* to preclude all negligence claims arising out of a decedent's suicide unless a plaintiff alleges that a defendant's conduct caused the decedent's mental state or that the defendant had a special relationship with the decedent. ECF No. 86, at 20; *see also* ECF No. 42, at 31-32. While causing the decedent's mental state will be sufficient to establish proximate cause, ultimately, the assessment of whether

a plaintiff has alleged and then established such is a case-specific inquiry dependent on the facts of each individual case. ECF No. 42, at 36. Defendants, in contrast, propose a categorical reading of *Sindler* pursuant to which suicide *always* constitutes an intervening cause as a matter of law, barring liability unless one of the two exceptions discussed in that case apply. ECF No. 87, at 6; ECF No. 90, at 4. Again, Defendants fail to identify substantial case law conflicting with the Court's conclusion. In their Reply, Defendants cite three cases in which courts have applied *Sindler* to a wrongful death claim. ECF No. 90, at 4. These cases do not address the relevant point of disagreement. The Court did not hold that *Sindler* does not remain good law. ECF No. 86, at 20. Rather, the Court disagreed with Defendants' interpretation of the scope of the Maryland Court of Appeals' holding in *Sindler*. *Id.* at 18-20. None of the cases Defendants cite holds that a plaintiff must always meet one of the two exceptions discussed in *Sindler* to prevail in a case involving suicide, particularly where, as in this case, the plaintiff alleges that Defendants had knowledge of the decedent's mental state and possession of a firearm. *See id.* at 18-20 (distinguishing the three cases citing *Sindler* on which Defendants rely). Rather, in *Young v. Swiney*, 23 F.Supp.3d 596 (D. Md. 2014), the sole published case of the three that Defendants cite, "[t]he parties agree[d] that, *in the context of th[at] case*, the relevant standards regarding proof of causation are found in the case of *Sindler*". *Id.* at 613 (emphasis added). "[A] party's disagreement with the decision of the district court, no matter how strong, does not create substantial grounds" for appeal. *Int'l Refugee Assistance Project*, 404 F. Supp. 3d at 950.

Finally, Defendants argue that there is substantial disagreement as to whether Maryland law, as established in *Broadwater v. Dorsey*, 688 A.2d 436 (Md. 1997), prohibits liability for negligent entrustment if the chattel's supplier did not have the right to permit or prohibit its use at the time of the accident. ECF No. 86, at 32-35; ECF No. 87, at 6-7. In prior opinions, the Court

analyzed Maryland law and ultimately concluded that "ongoing control is not a necessary element of a negligent entrustment claim outside of the automobile context." ECF No. 86, at 33. In support of their Motion for Summary Judgment, "Defendants [did] not identify any caselaw requiring ongoing control in the context of firearm sales." ECF No. 86, at 35. The same is true now. Both Maryland law and case law from other jurisdictions support the Court's conclusion. Although Defendants suggest otherwise, ECF No. 90, at 4-5, their request that the Court apply *Broadwater* beyond its context does not indicate substantial disagreement as to whether ongoing control is required in the firearm context. It is undisputed that Defendants have failed to cite any caselaw adopting their proposed reading. Rather, the substance of the precedent not only fails to establish a substantial ground for difference, but supports the Court's conclusion.

In sum, "Defendants cite no case authority demonstrating a substantial ground for difference of opinion on th[ese] issue[s]," and as a result, do not fulfill this element of Section 1292(b). *Goodman*, 195 F. Supp. 3d at 776.

### III. An Immediate Appeal Would Not Materially Advance the Ultimate Termination of this Litigation.

The final prong of Section 1292(b) allows for "certification of an interlocutory appeal . . . only 'in exceptional situations in which doing so would avoid protracted and expensive litigation.'" *Int'l Refugee Assistance Project*, 404 F. Supp. 3d at 950 (quoting *Fannin*, 873 F.2d 1438, 1989 WL 42583, at *2). In conducting this assessment, the district court should consider "whether an immediate appeal would: eliminate the need for trial . . . or eliminate issues to make discovery easier and less costly." *Hammons v. Univ. of Md. Med. Sys. Corp.*, No. DKC-20-2088, 2021 WL 4951921, at *6 (D. Md. Oct. 25, 2021) (quoting *Lynn*, 953 F. Supp. 2d at 626). The age of the case influences this determination—a litigant is more likely to satisfy this requirement at the beginning of a lawsuit. *Bezek v. First Nat'l Bank of Pa.*, No. SAG-17-2902, 2023 WL 2571508,

at *5 (D. Md. March 20, 2023) (noting in analysis of this factor that the case was "already quite old," that "the parties [had] completed discovery," and that they "finally [stood] on the precipice of trial"). Ultimately, the Court has "unfettered discretion to decline to certify an interlocutory appeal" if it determines "exceptional circumstances are absent." *Hall*, 193 F. Supp. 3d at 525 (quoting *Manion v. Spectrum Healthcare Res.*, 966 F. Supp. 2d 561, 567 (E.D.N.C. 2013)).

Given that the parties have already incurred substantial costs in completing discovery, as well as twice briefing the issues of which Defendants seek appellate review, Defendants have failed to demonstrate that this case involves exceptional circumstances warranting interlocutory appeal. More than two years have passed since the Court ruled on the same PLCAA arguments that Defendants raise now. *See* ECF No. 42 (Memorandum Opinion deciding Defendants' Motion for Judgement on the Pleadings in July 2022). The parties have completed discovery, and as a result, incurred significant financial and time-related burdens. ECF No. 67, at 1; ECF No. 88, at 15 (noting that the parties conducted over twenty depositions). "[M]aterial advancement of a case through interlocutory appeal is more likely to occur at earlier stages in the litigation, when . . . appeal can obviate the need for a lengthy or costly discovery process." *Feinberg v. T. Rowe Price Grp., Inc.*, No. JKB-17-427, 2021 WL 2784614, at *4 (D. Md. July 2, 2021). Had Defendants sought interlocutory appeal when the Court ruled on their Motion for Judgment on the Pleadings—before such extensive discovery occurred—their argument on this prong would have been stronger. *See Lynn*, 953 F. Supp. 2d at 626.

While an immediate appeal and eventual reversal by the Court of Appeals on the issue of PLCAA preemption could eliminate the need for trial, at this late stage, it is unlikely that an appeal would resolve the case faster than continuing to proceed with district court proceedings. In contrast, if the Court of Appeals upholds the Court's rulings—which it may well do, given the

analysis above—Plaintiffs' day in court will only have been further delayed. *See* 16 Wright et al., *Federal Practice & Procedure* § 3930 (3d ed. 2024) ("Delay may be a particularly strong ground for denying appeal if certification is sought from a ruling made shortly before a trial"). Moreover, if the Fourth Circuit upholds the Court's holdings, the case will nonetheless proceed to trial because final resolution of case turns on several factual disputes. *See generally* ECF No. 86. For those reasons, "[u]ltimately, th[e] Court concludes that the best way to move this years-old case toward eventual disposition is to" exercise its unfettered discretion and "proceed to trial." *Bezek*, 2023 WL 2571508, at *5.

**CONCLUSION**

For the aforementioned reasons, Defendants' Motion to Certify Order Denying Summary Judgment for Interlocutory Appeal shall be denied.

So ordered.

Date: December 11, 2024

______/s/____________________
Ajmel A. Quereshi
U.S. Magistrate Judge