UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KAYLA M. BRADY, *et al.* | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. 8:21-1412-AAQ |
| WALMART INC. *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM OPINION AND ORDER**

This is a case concerning a Walmart store's sale of a firearm to a man, Jacob Mace, who was experiencing a mental health crisis and subsequently ended his life using that firearm. Pending before the Court is Defendants' Motion to Exclude or Limit Plaintiffs' Experts Joseph J. Vince Jr., Mark Chad Abramson, and Craig J. Bryan, Psy.D, ABPP. ECF No. 96. The Motion has been fully briefed, ECF Nos. 99, 100, and a hearing is not necessary under this Court's Local Rules. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons discussed below, Defendants' Motion is granted, in part, and denied, in part. Each expert shall be permitted to testify within the limits the Court specifies below.

BACKGROUND

The facts of this case are detailed in the Court's May 20, 2024, Memorandum Opinion, ECF No. 86. In brief, Jacob Mace worked as a part-time maintenance associate at the Walmart Supercenter in California, Maryland for several months in 2018 and 2019. ECF No. 86, at 1-2. Mr. Mace experienced an acute mental health crisis at the beginning of November 2019. *Id.* at 5. On November 12, 2019, Mr. Mace arrived for work at Walmart. *Id.* at 9. During his lunch break, he purchased a shotgun from the store. *Id.* at 9. Later that day, police found Mr. Mace's body

1

inside his truck and determined that he had died from a self-inflicted gunshot wound produced by the same shotgun he had purchased earlier that day. *Id.* at 10.

Plaintiffs—family members of Mr. Mace—filed suit against Walmart Inc. and its subsidiary Wal-Mart Stores East, LP ("Walmart" or "Defendants"), alleging negligence in the sale of the firearm to Mr. Mace, as well as negligent entrustment for the same. *Id.* at 10-11. The Court previously denied Defendants' Motion for Judgement on the Pleadings, ECF Nos. 42, 43, and Motion for Summary Judgment, ECF No. 86. Thereafter, the Court scheduled trial to begin in January of 2026. ECF No. 94.

During discovery, Plaintiffs designated three expert witnesses. Two witnesses—Joesph Vince, Jr. and Mark Chad Abramson—will testify regarding the commercial sale of firearms and more specifically, Walmart's sale of a firearm to Mr. Mace on November 15, 2019. ECF No. 96-3, at 1-2.

Mr. Vince is a professor at Mount St. Mary's University and the President of Crime Gun Solutions, "a company devoted to assisting law enforcement in the collection, access, management, analysis, training, and dissemination of crime-gun information." ECF No. 96-3, at 14; ECF No. 99-1, at 1. Mr. Vince worked within the United States Bureau of Alcohol, Tobacco, and Firearms ("ATF") for over twenty years, including several years as Chief of the Firearms division. ECF No. 99-1, at 1. Mr. Vince currently serves on the International Association of Chiefs of Police ("IACP") Firearms Committee, a group that examines firearms related crime and then recommends best practices to the IACP's membership. ECF No. 96-3, at 2, 14-15. Plaintiffs retained Mr. Vince to share his opinion on, among other things: how Defendants' sale of a firearm to Mr. Mace compares with best practices in the firearms industry, how Defendants' training and

policies related to firearm sales compares to the relevant national standards, and the duty of care applicable to firearms dealers.  ECF No. 96-3, at 11-12.

Mr. Abramson is a federally licensed firearms dealer and the owner of Maccabees Guns, LLC, a gun shop located in Albuquerque, New Mexico.  ECF No. 96-3, at 2; ECF No. 99-4, at 1; ECF No. 99-5, at 1.  He has operated the shop since 2015, and manages "all facets of the business, including compliance" with federal and local regulations.  ECF No. 99-4, at 1; *see* ECF No. 99-5, at 1-2.  Like Mr. Vince, Mr. Abramson was retained to review Defendants' sale of a gun to Mr. Mace, providing an opinion on how it compares to the standard practice among firearms dealers.

The third expert, Dr. Craig J. Bryan, has been retained to testify on the link between firearm access and suicide.  ECF No. 96-3, at 2-3; ECF No. 99, at 12.  He will offer opinions explaining how or why Mr. Mace may have acted differently had Walmart not sold him the firearm on November 15, 2019.  ECF No. 99, at 12.  Dr. Bryan is a licensed clinical psychologist and professor in the department of psychiatry and behavioral health at The Ohio State University.  ECF No. 96-3, at 62.  He has conducted extensive research on suicide and authored numerous articles and book chapters examining the issue.  *Id.* at 62-100.  Relevant to this case, his research has focused on suicide risk among firearm owners and the role that firearm access plays in suicide mortality.  *Id.*

In February 2023, Plaintiffs provided Defendants the required Rule 26(a)(2) designations, identifying Mr. Vince, Mr. Abramson, and Dr. Bryan as expert witnesses.  ECF No. 96-3, at 1-4.  Plaintiffs attached each expert's curriculum vitae and expert report to their disclosure.[1]  ECF No. 96-3.

---

[1] Plaintiffs further provided lists of all the cases in which Dr. Bryan has testified over the last four years.  ECF No. 96-3, at 3, 130-33.

On March 3, 2025, Defendants filed this Motion to Exclude or Limit Plaintiffs' Experts, ECF No. 96, which has been fully briefed, ECF Nos. 99, 100.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) [their] . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 imposes on district courts the responsibility to act as gatekeepers of expert evidence, "ensur[ing] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (emphasis omitted) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). Nonetheless, "Rule 702 was intended to liberalize the introduction of relevant expert evidence." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). District courts "'need not determine that the proffered expert testimony is irrefutable or certainly correct' because '[a]s with all other admissible evidence, expert testimony is subject to testing by [v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Peters-Martin v. Navistar Int'l Transp. Corp.*, 410 Fed. App'x 612, 618 (4th Cir. 2011) (alterations in original) (quoting *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006)). "[T]he rejection of expert testimony is the exception rather than the rule." *United States v. Parks*, 849 Fed. App'x 400, 403 (4th Cir. 2021) (quoting *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019)).

## ANALYSIS

Defendants levy similar attacks against Mr. Vince and Mr. Abramson, arguing that both should be excluded because they are not qualified to give expert opinions in this case, their opinions will not assist the trier of fact, and they offer impermissible legal conclusions. ECF No. 96-1, at 8-22. Defendants argue that at minimum, each expert's testimony should be limited to Walmart's firearms sales practices. *Id.* at 17, 22. With respect to Dr. Bryan, Defendants request that the Court limit his testimony to exclude any opinion related to the sale of the firearm because he lacks qualifications in that area and his conclusions invade the province of the jury. *Id.* at 22-2. Each expert will be permitted to testify, but within the confines allowed by the Federal Rules of Evidence, as detailed below.

**I.      Mr. Vince & Mr. Abramson**

Plaintiffs retained Mr. Vince and Mr. Abramson to "examine the firearm sales practices of [Defendants] . . . against quality practices found within the firearms industry." ECF No. 96-3, at 11; ECF No. 99, at 17. Mr. Vince's proposed testimony draws on decades of experience in Federal firearm law enforcement, peer-reviewed studies in this field, and case-related documents. ECF No. 96-3, at 11. Mr. Abramson's opinions arise out of his experience as the owner and operator of Maccabee Guns, a federally licensed firearms dealer, as well as review of the record in this case. ECF. No. 96-3, at 46. Both will be permitted to testify within the confines detailed below.[2]

---

[2] Defendants argue the "Court should not allow both Vince and Abramson to testify" on the topic of firearm sales "so as to avoid cumulative testimony." ECF No. 96-1, at 22 n.1. Although the Court has discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence," such a consideration is premature and better considered closer to—or during—trial. Fed. R. Evid. 403; *see May v. Stahl*, No. 95-2371, 1996 WL 380263, at *1-2 (4th Cir. June 27, 1996) (affirming district court's decision to limit expert testimony mid-trial because it was cumulative with other expert witnesses).

**A. Both Mr. Vince and Mr. Abramson Are Qualified in the Field of Firearm Sales.**

The report or testimony of an unqualified witness is inadmissible. Fed. R. Evid. 702 ("A witness who is qualified as an expert . . . may testify in the form of an opinion"). In the Fourth Circuit, a "witness'[s] qualifications to render an expert opinion are . . . liberally judged by Rule 702." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). A witness's qualifications can be based on experience, knowledge, skill, training, or education, but "an expert 'may not offer an opinion where the subject matter goes beyond [their] area of expertise.'" *J.F. v. Correct Care Sols., LLC*, No. GJH-16-2177, 2019 WL 1057401, at *5 (D. Md. Mar. 6, 2019) (quoting *Young v. Swiney*, 23 F. Supp. 3d 596, 611 (D. Md. 2014)). Nonetheless, "the fit between an expert's specialized knowledge and experience and the issues before the court need not be exact." *Smith v. Cent. Admixture Pharmacy Servs., Inc.*, No. AW-07-3196, 2010 WL 1137507, at *2 (D. Md. Mar. 19, 2010) (quoting *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 392-393 (D. Md. 2001)).

Mr. Vince readily meets Rule 702's requirements for expertise in firearms sales, based on decades of service within ATF, ongoing involvement as a member of IACP, and extensive teaching experience on the topic. ECF No. 96-3, at 13-15; ECF No. 99-1. Mr. Abramson is similarly qualified based on his practical experience as the owner and operator of a federally licensed full-service gun shop. ECF No. 96-3, at 42, 46.

Defendants do not challenge either expert's qualifications on the topic of firearm sales, but rather argue neither is qualified to opine on mental health issues. ECF No. 96-1, at 15-17, 21. This is true, but the argument misses the mark because "[Mr.] Vince is not being offered as an expert in mental health or human resources[;]" nor is Mr. Abramson. ECF No. 99, at 16, 17-18. Both will testify solely on the topic of firearm sales. *Id.* Accordingly, Defendants' arguments

6

challenging their qualifications on issues related to mental health do not support exclusion, as both will be instructed to limit testimony to the topics on which he is a qualified expert.[3]

B. **Both Experts' Testimony May Be Useful to the Jury and Can be Presented Without Usurping Its Role.**

A court must allow expert testimony when the expert's "knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "Courts presume expert testimony to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." *Joaquim v. Buzzuro*, No. CDA-22-50, 2024 WL 3936925, at *10 (D. Md. Aug. 26, 2024); *id.* ("testimony about how difficult it is to lift heavy things is not 'helpful' and is thus excludable" (quoting *Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990))).

Mr. Vince's and Mr. Abramson's opinions, as proposed, would be useful to the jury because the average lay person is unfamiliar with the common practices in firearm sales; accordingly, their testimony would allow the jury to better understand typical procedure in the industry and how Defendants' operations compare. *See Ortiz v. Ben Strong Trucking, Inc.*, 624 F. Supp. 3d 567, 588-89 (D. Md. 2022) (explaining that a proposed expert's testimony could be

---

[3] Defendants take issue with Mr. Vince's reference to a fact sheet the White House issued on the topic of mental health and access to firearms. ECF No. 96-1, at 16. Because Mr. Vince will not testify on this subject, the argument is irrelevant. However, to the extent Defendants take issue with a citation to a fact sheet—as opposed to a peer-reviewed study—the issue goes to weight of the expert's testimony rather than admissibility. *See Jordan v. Fairmount Heights*, No. AAQ-22-2680, 2024 WL 732011, at *5 (D. Md. Feb. 21, 2024) (allowing an expert to testify despite opposing party's concern that "most of his information came from publicly available news articles" because the "sources of an expert's opinion affect the weight to be assigned [to] that opinion rather than its admissibility" (quoting *Bresler v. Wilmington Tr. Co.*, Nos. PJM-09-2957, 2015 WL 1396265, at *3 (D. Md. Mar. 24, 2015) *aff'd* 855 F.3d 178, 202 (4th Cir. 2017))).
.

helpful to a jury where he "appl[ied] his understanding of the industry standard based on his knowledge and experience" and compared it to the facts in the case).

The subject matter of firearm sales is not inherently intuitive to a lay person. This case differs from, for example, a situation like that in *Morgan v. Dick's Sporting Goods, Inc.*, 2024 WL 3819127, at *6 (D. Md. Aug. 14, 2024), where a display sign fell on a customer's head while she was shopping in the store. This Court concluded that an expert was not needed in *Morgan* because laypeople "know that objects placed in high places can fall down if not properly secured," and that "falling objects can cause injury." *Id.* In contrast, Mr. Vince and Mr. Abramson's proposed testimony offers useful insight regarding a complex web of firearm sales regulations, the best practices of firearms dealers, the policies Walmart had in place, and the level of training provided to employees—information that is beyond the common knowledge of a lay person. ECF No. 96-3, at 11-41 (Mr. Vince's report); 46-60 (Mr. Abramson's report).

Defendants further argue that both expert's testimony will not be useful because "[i]n formulating [their] opinions, [they] weighed the credibility of the witnesses" and such credibility determinations are within the province of the jury.[4] ECF No. 96-1, at 14-15 (argument as to Mr. Vince), 19-21 (argument as to Mr. Abramson). It is true that "expert opinions that constitute evaluations of witness credibility . . . are inadmissible under Rule 702." *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 513 (D. Md. 2014) (quoting *United States v. Allen*, 716 F.3d 98, 105-06 (4th Cir. 2013)). For example, an expert may not testify as to whether a party is "telling . . . the truth about what she says happened to her." *Elat*, 993 F. Supp. 2d at 513-14. Applied here, Mr. Vince and

---

[4] Defendants cite the Fourth Circuit's decision in *United States v. Allen*, 716 F.3d 98 (4th Cir. 2013), in support of the general proposition that an expert's testimony must be excluded if his opinion is based, in part, on credibility determinations. ECF No. 100, at 4. The Fourth Circuit's ruling was not so broad, but rather held that expert testimony may not be introduced "solely for the purpose of undermining the credibility of the [other] witnesses." *Allen*, 716 F.3d at 106.

Mr. Abramson may not testify as to which witnesses are credible, or express opinions which are essentially credibility determinations, such as, for example, which Walmart employees knew what when, because these are findings reserved for the jury.[5]

However, the fact that they may have given more credence to certain evidence, as opposed to other evidence, in the process of developing their opinion on the firearm sale to Mr. Mace does not require those opinions' exclusion. "[Q]uestions regarding the factual underpinnings of the expert witness'[s] opinions affect the weight and credibility of the witness'[s] assessment, not its admissibility." *Mountain Valley Pipeline, LLC v. 9.89 Acres of Land*, 127 F.4th 437, 445 (4th Cir. 2025) (quoting *Bresler*, 855 F.3d at 195). As the Advisory Committee Notes for the Federal Rules of Evidence acknowledge:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts . . . [Rule 702's requirement for] "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

Fed. R. Evid. 702 advisory committee's note to the 2000 amendment. This Court has reinforced this conclusion, explaining that "[w]hen 'the parties' experts rely on conflicting sets of facts, . . . it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony.'" *Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CCB-13-617, 2016 WL 524279, at *3 (D. Md. Feb. 10, 2016) (quoting *Galaxy Comput. Servs., Inc. v. Baker*, 325 B.R. 544, 561 (E.D. Va. 2005)). "The fact that [the expert witness] reached expert opinions by deciding who to believe provides no basis for exclusion by a court acting as a gatekeeper pursuant to *Daubert*." *Riddick v. Norfolk S. Ry. Co.*, No. RJK-21-297, 2022 WL 1180018, at *5 (E.D. Va. Apr. 20, 2022); *see also*

---

[5] For example, in his deposition, Mr. Vince characterized certain testimony as "credible"—such a statement would not be permissible on the witness stand. ECF No. 96-4, at 2.

9

*Maggard v. Essar Glob. Ltd.*, No. JPJ-12-31, 2015 WL 1498965, at *3 (W.D. Va. 2015) ("[T]he jury must decide the disputed facts in this case, and if it disagrees with [an expert's] interpretation of the facts, that is an issue of the weight and impeachability of his testimony, and not its admissibility."). In fact, courts have failed to exclude an expert even when he failed to consider certain evidence, contrary to his conclusion. *See Burns v. Anderson*, 123 F. App'x 543, 549 (4th Cir. 2004) (holding expert testimony was properly admitted where expert "failed to review certain documents" in the record because such arguments "address the proper weight to afford [the expert's] testimony, not its admissibility"); *Baker*, 325 B.R. at 560-61 (refusing to exclude an expert because he ignored particular findings); *United States v. Smithers*, No. 1:17-CR-27, 2024 WL 4880398, at *2-3 (W.D. Va. Nov. 24, 2024) (rejecting the argument that an expert be excluded because he had failed to review nine of the fifty patient records at issue); *Barnett v. United States*, No. DCN-20-2517, 2021 WL 5713962, at *3 (D.S.C. Oct. 28, 2021) (citing the commentary to Rule 702 and explaining that the expert could "permissibly render an opinion . . . even if he did not consider all the evidence to the contrary.").

Both Mr. Vince and Mr. Abramson reviewed the record and developed opinions regarding the sale of the firearm to Mr. Mace accordingly. ECF No. 96-3, at 11, 37, 41 (Mr. Vince), 46 (Mr. Abramson); ECF No. 96-5, at 1-2 (Mr. Abramson's supplemental report); ECF No. 99, at 16 (Mr. Vince), 17 (Mr. Abramson). Thus, each opinion is "based on sufficient facts." *Bresler*, 855 F.3d at 195 (quoting Fed. R. Evid. 702); *Vertellus Holdings LLC v. W.R. Grace & Co.-Conn.*, No. SAG-18-3298, 2021 WL 3883597, at *10-11 (D. Md. Aug. 12, 2021) (allowing expert to testify where opinion was based on documents and depositions in the record). The Court cannot exclude either expert's testimony simply because he may have credited Plaintiffs' version of the facts over Defendants'. *See Hobbs v. Kelly*, No. 1:23-CV-3, 2025 WL 877129, at *17 (W.D. Va. Mar. 20,

2025) (refusing to exclude an expert because their "opinion could only be formed by . . . making a credibility determination in favor of a witness who testified that" a disputed event occurred); *Ford v. Torres*, No. JFA-08-1153, 2009 WL 10687787, at *4 (E.D. Va. Oct. 16, 2009) ("It is true that the plaintiffs, as the proponent of [the expert's] report, have the burden of demonstrating that the report rests on sufficient facts. But that analysis is different from an analysis of whether the report rests on facts agreeable to the defendants . . . This is exactly the type of preclusion that the Advisory Committee Notes to Fed. R. Evid. 702 instruct the court not to make.").

Instead, the proper manner to challenge the factual basis of their conclusions is cross-examination or presentation of contrary evidence.[6]  *See Vertellus Holdings LLC*, 2021 WL 3883597, at *11 (allowing expert to testify where opposing party "suggest[ed] that other documents and deposition testimony . . . contradict[ed] the materials that [the expert] relied upon" to develop expert's understanding of the facts, because such concerns could be addressed through "cross examination and presentation of . . . contrary evidence").  For example, Defendants note "Vince ignored testimony from Walmart management that it had no knowledge of Mace's recent suicidal ideation and hospitalizations." ECF No. 100, at 4.  Defendants may raise such concerns at trial by asking Mr. Vince about the basis for his opinions and allowing the jury to weigh his opinion accordingly.

---

[6] Leaving it to Defendants to question Plaintiffs' experts as to whether they may have considered certain evidence, and not other evidence, does not flip the burden of proof from Plaintiffs to Defendants to establish the admissibility of the testimony. Defendants' argument to the contrary mischaracterizes the relevant standard for admissibility. *See* ECF No. 100, at 4. For testimony to be admissible, a plaintiff must only establish that the proposed testimony is supported by sufficient facts. Once testimony is admitted, the question of how much weight should be afforded to it remains. To the extent that a party wants the jury to attach less weight to testimony, it remains that party's responsibility to demonstrate why. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996).

11

## C. Mr. Vince & Mr. Abramson May Not Testify as to Legal Conclusions.

"[E]xpert testimony as to legal conclusions is generally inadmissible." *Peters v. Balt. City Bd. of Sch. Comm'rs*, No. WMN-13-3114, 2014 WL 4187307, at *7 (D. Md. Aug. 21, 2014) (citing *Sun Yung Lee v. Clarendon*, 453 F. App'x 270, 278 (4th Cir. 2011); *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)). While Fed. R. Evid. 704(a) permits experts to "testify as to the ultimate matter at issue, this refers to testimony on ultimate facts; testimony on ultimate questions of law . . . is not favored." *Sun Yung Lee*, 453 F. App'x at 278 (quoting *Anderson v. Suiters*, 499 F.3d 1228, 1237 (10th Cir. 2007) (internal citations omitted)). To determine whether an expert's "opinion proffers an improper legal conclusion, the Court must consider whether 'the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.'" *Peters*, 2014 WL 4187307, at *7 (quoting *McIver*, 470 F.3d at 562). Expert testimony and reports that employ "the use of terms with considerable legal baggage" such as 'negligent,' or 'reckless' "nearly always invades the province of the jury." *United States v. Perkins*, 470 F.3d 150, 158 (4th Cir. 2006).

Both expert's reports impermissibly offer legal conclusions, but this does not require that the Court bar either from testifying entirely. For example, the Conclusion section of Mr. Vince's report presents several problematic statements, including:

- "Walmart aided and abetted Mace's unlawful possession of a shotgun in violation of Maryland law because it had actual or constructive knowledge that Mace had been (a) diagnosed with a mental illness, (b) had a history of harmful acts directed towards himself [or] others, and (c) intended to use the firearm to take his own life." ECF No. 96-3, at 35-36.

- "Walmart negligently entrusted the shotgun to Mace in violation of its duty of reasonable care." *Id.* at 36.

- "[O]n November 15, 2019, the Walmart Store . . . negligently sold a firearm to Jacob Mace, knowing or having reasonable cause to believe that he was prohibited from such a purchase . . . because he was mentally ill." *Id.*

12

- "The negligent in-action by the store management caused the death of Jacob Mace." *Id.* at 37.

Mr. Abramson's report also includes legal conclusions, though fewer than those present in Mr. Vince's. For example, in his amended report, Mr. Abramson states "[i]f management had knowledge" of Mr. Mace's suicide attempts "and took no action, this would . . . constitute a breach of duty to Mr. Mace." ECF No. 96-5, at 2. He also utilizes the term "duty," which has a "distinct and specialized meaning in the law." *McIver*, 470 F.3d at 562, *see id.* (listing examples of impermissible testimony including "that a product was 'unreasonably dangerous'" and "that a dog bite constituted 'deadly force'"); ECF No. 96-3, at 54, 59; ECF No. 96-5, at 2.

Mr. Vince and Mr. Abramson may not present legal conclusions and must avoid any specialized legal terminology in their testimony. *See McIver*, 470 F.3d at 561–62 ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible."). It is the Court's role to instruct the jury on the law, and it is the jury's role to apply the legal standard to the facts of the case. *See, e.g.*, *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) ("[W]hen a witness gives an opinion about the meaning of a specialized legal term, the witness is giving a legal conclusion that is better handled by the judge."). An expert may not usurp that role.

However, "the inadmissibility of the expert's ultimate opinion does not necessarily banish him from the stand altogether, because his specialized knowledge may still assist the trier of fact in other ways." *Kopf*, 993 F.2d at 378. Mr. Vince and Mr. Abramson have specialized knowledge that may assist a jury in reaching its own conclusions about numerous issues, including information relevant to whether Defendants breached the applicable standard of care when they sold Mr. Mace a shotgun. As previously explained, both are experts in firearms sales. They can, for example, testify about and explain federal firearms regulations, as well as the typical standards and

13

procedures firearms dealers utilize when making sales. Such testimony will assist the jury in understanding the standard of care applicable to Walmart, and whether a breach occurred. *See Ortiz*, 624 F. Supp. 3d at 588-89.

Accordingly, the Court will allow both Mr. Vince and Mr. Abramson to testify, but with clear instructions and limitations.[7] *See Joaquim*, 2024 WL 3936925, at *12 (discussing limitations courts imposed on expert witnesses to avoid impermissible legal conclusions). Mr. Vince may not testify as to whether Defendants were negligent or aided and abetted Mr. Mace's unlawful possession of a firearm. Mr. Abramson may not testify as to whether Defendants breached a duty to Mr. Mace. Both may, however, testify about the applicable standards of conduct for firearm dealers, including model policies and regular practices regarding the training of employees, among other matters. *See, e.g.*, ECF No. 96-3 at 27-29 (Mr. Vince's summary of best practices for federally licensed firearms dealers), 36 (Mr. Vince stating "Walmart failed to appropriately train its employees that they had discretion to deny firearms sales . . . including concerns regarding a gun being misused in an act of self-harm"), 58 (Mr. Abramson stating the sale occurred "in accordance with Walmart policy"), 59 (Mr. Abramson stating that the record does not suggest Walmart trained "its employees as to the discretion they could exercise in connection to a sale). *See also e.g.*, *Weigle v. Pifer*, No. JTC-14-15087, 2015 WL 1980737, at *5-6 (S.D. W.Va. Apr. 30, 2015) (precluding an expert witness from testifying about certain matters that were "mere legal conclusions" but permitting his testimony on limited matters).

II.     **Dr. Bryan**

---

[7] Plaintiffs have agreed to such limitations, making clear that they "do <u>not</u> intend to solicit testimony from [either expert] at trial that uses legal buzz words" like "aided and abetted, negligently entrusted, negligently sold or that Walmart breached its duty of reasonable care." ECF No. 99, at 14 (as to Mr. Vince), 17 (as to Mr. Abramson).

Plaintiffs intend to present testimony from Dr. Bryan on issues relevant to causation, specifically the link between suicide risk and access to firearms. ECF No. 96-3, at 3; ECF No. 99, at 18. Dr. Bryan readily qualifies as an expert on mental health and suicide risk. He is a licensed clinical psychologist, serves as Director of a suicide prevention program at a university, and has published many studies and book chapters examining the causes of suicide. ECF No. 96-3, at 61-96.

However, Dr. Bryan's report includes opinions outside of his expertise as to whether the sale of the firearm to Mr. Mace was proper. ECF No. 96-3, at 125-26 (stating "[t]he shotgun sale to Jacob Mace . . . should not have occurred"). Defendants argue any testimony related to the firearm sale should be excluded, ECF No. 96-1, at 22-24, and take particular issue with the following conclusion in Dr. Bryan's report:

> Had Walmart management taken steps to enact the Walmart procedures and policies described by [Walmart's senior director for Alcohol, Tobacco, and Firearms compliance] that restrict or block the sale of firearm sales to people with elevated risk of suicide, Mr. Mace would not have been able to acquire the shotgun that he used to kill himself less than two hours later.

ECF No. 100, at 7 (quoting ECF No. 96-7 at 1). Such a statement improperly opines on the adequacy of Defendants' policies and procedures, going to the issue of the firearm sale. Plaintiffs agree, making clear that "Dr. Bryan's testimony will be limited to the causal connection between the sale of the firearm to Mace and his death." ECF No. 99, at 18. Such a limitation is appropriate. Dr. Bryan shall solely testify as to the link between Mr. Mace's access to the firearm and his death by suicide. This shall include the increased suicide risk associated with easy access to firearms in general and as it relates to Mr. Mace. ECF No. 96-3, at 126 ("Research shows that firearm access significantly increases the risk of suicide . . . when access to highly lethal suicide attempt methods

is restricted or delayed, the risk of death by suicide is significantly reduced," "[b]ut for the sale of the firearm to Jacob Mace, he would not have taken his life that day.").

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Exclude or Limit Experts is GRANTED, in part, and DENIED, in part. Mr. Vince, Mr. Abramson, and Dr. Bryan are precluded from testifying to the extent discussed above.

So ordered.

Date: June 3, 2025                                               /s/
                                                        Ajmel A. Quereshi
                                                        U.S. Magistrate Judge